# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Docket No. 24-50149

UNITED STATES OF AMERICA,

*Plaintiffs – Appellees*

v.

STATE OF TEXAS; GREG ABBOTT, Governor of the State of Texas, in his Official Capacity,

*Defendants – Appellants*

---

LAS AMERICAS IMMIGRANT ADVOCACY CENTER, AMERICAN GATEWAYS, and EL PASO COUNTY, TEXAS,

*Plaintiffs – Appellees*

v.

STEVEN MCCRAW, in his official capacity as Director of the Texas Department of Public Safety; and BILL D. HICKS, in his official capacity as District Attorney for the 34th District,

*Defendants – Appellants*

---

On Appeal from the United States District Court for the Western District of Texas, Austin Division, Nos. 1:24-cv-00008-DAE (lead case), 1:23-cv-01537

---

**PLAINTIFFS-APPELLEES' OPPOSITION TO DEFENDANTS-APPELLANTS' MOTION FOR ADMINISTRATIVE STAY**

David A. Donatti
(TX Bar No. 24097612)
Adriana C. Piñon
(TX Bar No. 24089768)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 942-8146
Facsimile: (713) 942-8966
ddonatti@aclutx.org
apinon@aclutx.org

*For Plaintiffs-Appellees*
*Las Americas Immigrant Advocacy*
*Center, American Gateways, and*
*County of El Paso*

Tamara F. Goodlette
(TX Bar No. 24117561)
Daniel Hatoum
(TX Bar No. 24099136)
Erin D. Thorn
(TX Bar No. 24093261)
TEXAS CIVIL RIGHTS PROJECT
1017 W. Hackberry Ave.
Alamo, TX 78516
Telephone: (512) 474-5073, ext. 207
Facsimile: (956) 787-6348
tami@texascivilrightsproject.org
daniel@texascivilrightsproject.org
erin@texascivilrightsproject.org

*For Plaintiffs-Appellees*
*Las Americas Immigrant Advocacy*
*Center and American Gateways*

Jo Anne Bernal
(TX Bar No. 02208720)
El Paso County Attorney

Cody Wofsy
Spencer Amdur
Hannah Schoen
Morgan Russell
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, 7thFloor
San Francisco, CA 94104
T: (415) 343-0770
F: (415) 395-0950
cwofsy@aclu.org
samdur@aclu.org
hschoen@aclu.org
mrussell@aclu.org

Anand Balakrishnan
Omar Jadwat
Lee Gelernt
Wafa Junaid
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
abalakrishnan@aclu.org
ojadwat@aclu.org
lgelernt@aclu.org
wjunaid@aclu.org

*For Plaintiffs-Appellees*
*Las Americas Immigrant Advocacy*
*Center, American Gateways, and*
*County of El Paso*

320 S. Campbell St., Suite 200
El Paso, Texas 79901
Tel: (915) 273-3247
joanneb@epcounty.com

Bernardo Rafael Cruz,
(TX Bar No. 24109774)
Assistant County Attorney
320 S. Campbell St., Suite 200
El Paso, Texas 79901
Tel: (915) 273-3247
b.cruz@epcounty.com

*For Plaintiff County of El Paso*

For 150 years, the law has been crystal clear: States may not regulate immigration. But in S.B. 4, Texas has established its own state immigration system, which regulates entry into the United States and allows state officers to issue deportation orders to Mexico. As the district court rightly held, this new law is obviously preempted. Yet Texas now seeks an administrative stay that would *upend* the longstanding status quo and allow it to begin enforcing this blatantly unlawful state immigration system and to unilaterally expel people from the United States.

Plaintiffs will respond more fully to the request for a stay pending appeal in due course, but for now write to oppose any period of administrative stay of the preliminary injunction. Such a mechanism is totally inappropriate where, as here, "the status quo would be seriously disrupted by an immediate stay." *Nat'l Urban League v. Ross*, 977 F.3d 698, 701 (9th Cir. 2020) (denying administrative stay). Indeed, in the case the State cites to support an administrative stay, Mot. 1, this Court emphasized the need to "preserve[] the status quo." *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604, 610 n.7 (5th Cir. 2021) (discussing that case's "unusual procedural posture").

Permitting this law to go into effect will be highly disruptive: Defendant Steven McCraw, Director of the Texas Department of Public Safety, projected some 80,000 additional arrests annually under the law, Carrillo Decl. ¶ 10, Dist. Ct. ECF No. 30-3, *Las Americas Immigrant Advocacy Ctr. v. McCraw*, No. 1:23-cv-01537,

and Texas officials could issue deportation orders to noncitizens as soon as the first day the law is in effect. In contrast, leaving the district court's order in place preserves the status quo under which Texas has been operating for 150 years.

"SB 4 criminalizes at the state level unauthorized entry or re-entry of noncitizens into Texas from outside the country, authorizes noncitizen removals to Mexico, and instructs state court judges not to abate proceedings on the basis of a pending federal determination of admissibility." Order Granting Preliminary Injunction, Dist. Ct. ECF No. 42 ("Op.") at 7; *see id*. at 7-9 (describing law's provisions in more detail). Following conviction for either the new state entry or re-entry crimes, state judges are required to order noncitizens to return to Mexico. *Id*. at 9. Failure to comply with such an order carries a potential 20 year prison sentence. *Id*. at 43. But a state deportation order may issue long before that point: As early as arraignment, state judges may offer noncitizens the "choice" to accept a deportation order in lieu of prosecution and jail time. *Id*. at 8-9; Tex. Code of Crim. Proc art. 5(B).002.

Thus, state removals could begin as soon as any stay, even an administrative stay, is entered. On the very first day the law goes into effect, and each day thereafter, state officers can make arrests and state judges can "offer" removals. And it is quite likely noncitizens will acquiesce to those removal orders under the pressure S.B. 4 establishes. Noncitizens will be faced with the prospect of extremely likely

conviction for unlawful entry or re-entry, with the accompanying prison term, *plus* a mandatory state removal order. They will thus be confronted with a false choice between an illegal state deportation order plus an illegal prison term on one hand, or just an illegal state deportation order on the other. Many noncitizens are likely to "choose" to accept the state deportation orders that state law makes inevitable. In this way, S.B. 4 is poised to immediately start churning out state arrests and deportation orders as soon as it springs into effect, without waiting for criminal proceedings to run their course.

The result would be chaotic, cruel, and legally indefensible from the first day the law becomes effective. Texas officers will (according to the State) be escorting noncitizens to ports of entry to effectuate these removals, *see* Op. 42-43, creating confusion among federal officials, Mexican officials, and noncitizens. Organizations and local governments will have to scramble to respond to the law and protect their clients and residents. And people who the federal government would ultimately permit to remain in the United States—for example by a grant of asylum—will instead be issued conflicting state deportation orders backed by 20-year prison terms.

If this Court grants an administrative stay but later denies the state's motion for a stay pending appeal—or if the Supreme Court vacates this Court's administrative stay or stay pending appeal, *see, e.g.*, *DHS v. Texas*, No. 23A607,

2024 WL 222180 (U.S. Jan. 22, 2024)—the administrative stay would cause yet *more* confusion and *more* chaos, leaving in its wake individuals illegally incarcerated in jails and outstanding state deportation orders carrying the threat of long prison terms for those who received them. For those illegally forced out of the country during this period, the administrative stay will require potentially complex remedial efforts to return noncitizens in Mexico or elsewhere and address harms inflicted on those noncitizens.

There is no reason to permit this law to go into immediate effect: Whatever Texas may think of immigration policy, it has been settled for 150 years that it is solely the federal government's power and responsibility to regulate entry and removal. *See, e.g.*, *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1875) ("The passage of laws which concern the admission of citizens and subjects of foreign nations to our shores belongs to Congress, and not to the States."); *Truax v. Raich*, 239 U.S. 33, 42 (1915) ("The authority to control immigration—to admit or exclude aliens—is vested solely in the Federal government."); *Hines v. Davidowitz*, 312 U.S. 52, 62 & n.10 (1941) (noting the "continuous recognition by this Court" of "the supremacy of the national power . . . over immigration . . . and deportation"); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948) ("The Federal Government has broad constitutional powers in determining what aliens shall be admitted to the United States [and] the period they may remain," and "the states are granted no such

powers"); *De Canas v. Bica*, 424 U.S. 351, 354 (1976) ("Power to regulate immigration is unquestionably exclusively a federal power."); *Arizona v. United States*, 567 U.S. 387, 409 (2012) ("the removal process is entrusted to the discretion of the Federal Government"). The status quo here is one of exceptional length and durability: States can exercise no immigration power.

Consistent with that longstanding principle, the district court rightly held on the merits that SB 4 is entirely preempted by federal law.

*First*, states are preempted from regulating in the field of entry and removal. Op. 29-53. The federal interest in that field is "overwhelmingly dominant." *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1265 (11th Cir. 2012). As noted, the Supreme Court has explained for over 150 years that States are excluded from regulating such matters. Op. at 30-31 (collecting cases). That is because entry and removal are core sovereign immigration powers, *see Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892); *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893), which are deeply entwined with the federal government's exclusive authority over foreign affairs, *see Chy Lung*, 92 U.S. at 280; *Hines*, 312 U.S. at 63; *United States v. Texas*, 599 U.S. 670, 679 (2023).

This Court has recognized this bedrock principle. "Policies pertaining to the entry of aliens and their right to remain here are entrusted exclusively to Congress," so any attempt to regulate such matters "would be preempted." *Texas v. United*

5

*States*, 50 F.4th 498, 516 (5th Cir. 2022) (cleaned up). Indeed, every member of the en banc Court in *Villas at Parkside Partners v. City of Farmers Branch,* agreed with "the longstanding, unremarkable principle that the federal government's authority to exclude or remove foreign nationals . . . is necessarily exclusive of infringement by state or local legislation." 726 F.3d 524, 545 (5th Cir. 2013) (en banc) (Dennis, J., specially concurring); *see id.* at 536-37 (plurality opinion); *id.* at 557 (Owen, J., concurring in part) ("the federal government undeniably has the exclusive power to determine questions of removal and deportation"); *id.* at 559 & n.77 (similar); *id.* at 567 (Jones, J., dissenting) (the Constitution "vests exclusive control over the 'authority to control immigration—to admit or exclude aliens— . . . solely in the Federal government'") (quotation omitted).

Further, Congress has "enacted a 'framework of regulation so pervasive that Congress left no room for the States to supplement it.'" Op. 33 (quoting *Arizona*, 567 U.S. at 399). "The country's immigration laws are massive, sprawling, detailed, complex, and pervasive." *Id.* at 35. And "Congress has explicitly stated that federal immigration law is the 'sole and exclusive' means of determining admissibility." *Id.* at 42 (quoting 8 U.S.C. § 1229a(a)(3)). In particular, Congress has extensively regulated individuals who enter between ports of entry—those whom Texas is attempting regulate through S.B. 4. *Id.* at 34-35. Congress has created multiple removal pathways, with detailed procedures and layers of review by federal officials.

*See, e.g.*, 8 U.S.C. §§ 1225(b)(1) (expedited removal procedures), 1229, 1229a (regular removal procedures), 1231(a)(5) (reinstatement of removal). Congress has also criminalized entry and re-entry between ports of entry, along with efforts to assist or facilitate entry between ports. *See id.* §§ 1325, 1326, 1323, 1324, 1327, 1328, 1329. But Congress has also established numerous forms of relief from removal for people who enter between ports: For example, asylum is available "whether or not" a noncitizen arrives "at a designated port of arrival," 8 U.S.C. § 1158(a)(1), and can be accessed through multiple procedural channels, *see id.* § 1225(b)(1)(B), 1158(d); 8 C.F.R. § 208.4. In short, S.B. 4 is clearly field preempted.

*Second*, as the district court explained, S.B. 4 is also conflict preempted. Op. 53-62. Among other things, S.B. 4 eliminates the federal government's "broad discretion" and control over entry and removal, which Congress enshrined as a "principle feature" of the federal system. *Arizona*, 567 U.S. at 396. By placing all decisions about arrest, prosecution, conviction, and deportation in state hands, it blatantly "violates the principle that the removal process is entrusted to the discretion of the Federal Government." *Id.* at 409.

That discretion "implicates not only 'normal domestic law enforcement priorities' but also 'foreign-policy objectives.'" *Texas*, 599 U.S. at 679 (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490-91 (1999)). Indeed, Texas plans to issue thousands of orders to non-Mexicans to return *to Mexico*

7

or face decades in prison. Mexico strongly opposes this. Op. 44. As the Supreme Court recently explained, efforts to negotiate similar returns to Mexico have, in the past, "played a particularly outsized role in diplomatic engagements with Mexico, diverting attention from more productive efforts to fight transnational criminal and smuggling networks and address the root causes of migration." *Biden v. Texas*, 597 U.S. 785, 806 (2022) (internal quotation marks omitted). This time, Texas is not merely advancing a statutory interpretation which would "tie the hands of the Executive" by allowing a court to supervise foreign policy negotiations. *Id*. Here, Texas is acting *unilaterally* to force noncitizens onto Mexico's sovereign territory, with potentially extreme consequences for the *national* government's relationship and agreements with Mexico. S.B. 4's interference with the federal government's foreign policy powers is extreme. *See id*.; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 380-86 (2000).

S.B. 4 also subjects non-citizens to state removal orders that directly conflict with federal permission to remain in the United States. Under S.B. 4, a person can be ordered removed—and, if convicted, *must* be ordered removed—even if they are seeking asylum or other federal relief from removal. *See* Tex. Code of Crim. Proc. art. 5(B).003. But under federal law, such persons have a right to remain in the United States while their federal applications are adjudicated. Indeed, the expedited removal system specifically diverts noncitizens out of the removal process while

8

their asylum claims are considered: If noncitizens pass an initial screening, they have an opportunity to make their case in full removal proceedings with access to counsel and appellate rights—and are not subject to removal until that asylum claim is ultimately resolved. 8 U.S.C. § 1225(b)(1)(A)(ii), (B). Texas cannot negate the legal protections that Congress has created, and it cannot subject individuals to legal requirements that squarely conflict with federal law.

More broadly, S.B. 4 jettisons Congress's careful balance between providing enforcement tools while also enshrining humanitarian protections for noncitizens who enter between ports. *See* Op. 55-58. Asylum is specifically available "whether or not" a noncitizen arrives "at a designated port of arrival," 8 U.S.C. § 1158(a)(1), and withholding of removal bars a person's removal to any country where they face persecution or torture, *see* 8 U.S.C. § 1231(b)(3) and Note. Yet S.B. 4 not only fails to provide a defense to allow noncitizens to seek this relief from removal—it specifically provides that a state "'court may not abate the prosecution' of one of these offenses 'on the basis that a federal determination regarding the immigration status of the defendant is pending or will be initiated.'" Op. 9 (quoting Tex. Code of Crim. Proc. art. 5(B).003); *see id.* at 55-56.

This is not a case for an administrative stay. The longstanding status quo is clear that Texas may not regulate immigration. Allowing the law to go into effect even for a matter of days will upend this longstanding status quo and will be hugely

disruptive and chaotic. Rather, the Court should deny the administrative stay and set an expeditious briefing schedule regarding a stay pending appeal to accommodate the State's expressed interest in a prompt decision. If the Court enters either an administrative stay or (after briefing) a stay pending appeal, it should stay its own stay order for at least seven days to permit plaintiffs to seek intervention from the U.S. Supreme Court.

Dated: March 2, 2024

David A. Donatti
(TX Bar No. 24097612)
Adriana C. Piñon
(TX Bar No. 24089768)
AMERICAN CIVIL LIBERTIES
UNION OF TEXAS
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 942-8146
Facsimile: (713) 942-8966
ddonatti@aclutx.org
apinon@aclutx.org

*For Plaintiffs-Appellees*
*Las Americas Immigrant Advocacy*
*Center, American Gateways,*
*and County of El Paso*

Tamara F. Goodlette
(TX Bar No. 24117561)
Daniel Hatoum
(TX Bar No. 24099136)
Erin D. Thorn
(TX Bar No. 24093261)
TEXAS CIVIL RIGHTS PROJECT
1017 W. Hackberry Ave.
Alamo, TX 78516
Telephone: (512) 474-5073, ext. 207
Facsimile: (956) 787-6348
tami@texascivilrightsproject.org
daniel@texascivilrightsproject.org

*For Plaintiffs-Appellees*
*Las Americas Immigrant Advocacy*
*Center and American Gateways*

Jo Anne Bernal
(TX Bar No. 02208720)
El Paso County Attorney
320 S. Campbell St., Suite 200

Respectfully Submitted,

*/s/ Cody Wofsy*
Cody Wofsy
Spencer Amdur
Hannah Schoen
Morgan Russell
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, 7thFloor
San Francisco, CA 94104
T: (415) 343-0770
F: (415) 395-0950
cwofsy@aclu.org
samdur@aclu.org
hschoen@aclu.org
mrussell@aclu.org

Anand Balakrishnan
Omar Jadwat
Lee Gelernt
Wafa Junaid
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
abalakrishnan@aclu.org
ojadwat@aclu.org
lgelernt@aclu.org
wjunaid@aclu.org

*For Plaintiffs-Appellees*
*Las Americas Immigrant Advocacy*
*Center, American Gateways, and*
*County of El Paso*

El Paso, Texas 79901
Tel: (915) 273-3247
joanneb@epcounty.com

Bernardo Rafael Cruz,
(TX Bar No. 24109774)
Assistant County Attorney
320 S. Campbell St., Suite 200
El Paso, Texas 79901
Tel: (915) 273-3247
b.cruz@epcounty.com

*For Plaintiff County of El Paso*

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the type-volume limitation of Rule 27(d)(2) because it contains no more than 2318 words, and complies with the typeface and style requirements of Rule 32(a)(5) and (a)(6) because it was prepared in Microsoft Word using 14-point Times New Roman typeface.

*/s/ Cody Wofsy*
Cody Wofsy

**CERIFICATE OF SERVICE**

I certify that, on March 2, 2024, a true and correct copy of this document was transmitted to the Clerk of the United States Court of Appeals for the Fifth Circuit via the Court's CM/ECF document filing system, and on all counsel of record.

*/s/ Cody Wofsy*
Cody Wofsy