No. 24-50149

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

THE STATE OF TEXAS; GREG ABBOTT IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; TEXAS DEPARTMENT OF PUBLIC SAFETY; STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF TEXAS DEPARTMENT OF PUBLIC SAFETY,
*Defendants-Appellants.*

---

LAS AMERICAS IMMIGRANT ADVOCACY CENTER; AMERICAN GATEWAYS; COUNTY OF EL PASO, TEXAS,
*Plaintiffs-Appellees*

v.

STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF TEXAS DEPARTMENT OF PUBLIC SAFETY; BILL D. HICKS, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR THE 34TH DISTRICT,
*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

---

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' OPPOSED EMERGENCY MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL AND FOR AN ADMINISTRATIVE STAY**

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Aaron L. Nielson
Solicitor General

Kateland R. Jackson
Joseph N. Mazzara
Assistant Solicitors General
Kateland.Jackson@oag.texas.gov

Coy Allen Westbrook
Assistant Attorney General

Counsel for State of Texas

## INTRODUCTION

Plaintiffs argue *Arizona* dooms S.B.4. But Plaintiffs cannot bring their claims at all, certainly not in the context of a pre-enforcement facial challenge. And even if Plaintiffs could pursue such extraordinary relief, *Arizona* supports Texas. In *Arizona*, the Supreme Court explained State law *can* mirror federal law, and States *can* cooperate with the federal government to create and enforce State crimes for violations of federal immigration law. *Arizona v. United States*, 567 U.S. 387, 402, 414-15 (2012). Unlike the law in *Arizona*, no provision of S.B.4 intrudes on an exclusively federal field—let alone the field of alien registration. Not only is that conclusion compelled by *Arizona* and S.B.4's plain language, but it follows directly from basic principles of constitutional avoidance and federalism. The Court should grant Texas's Motion.

## ARGUMENT

### I. Texas Will Likely Prevail on Appeal.

#### A. Plaintiffs Cannot Pursue a Pre-Enforcement Facial Injunction.

**1.** As explained in Texas's Motion (at 5-10), the Coalition Plaintiffs lack standing and *Ex Parte Young* does not apply. Because this is a pre-enforcement facial challenge, Organizational Plaintiffs must show an imminent judicially cognizable injury through the test described in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), but they cannot and have not because nothing in the law proscribes their own conduct. As to El Paso County, because there is no claim that Congress "interfere[d] with a state's internal political organization" by bestowing on El Paso a federal

statutory right that Texas undermines, *Brockette* does not apply and El Paso has no standing to sue Texas. *Rogers v. Brockette*, 588 F.2d 1057, 1070 (5th Cir. 1979).

Sovereign immunity also bars the Coalition Plaintiffs' suit against McCraw because "such a suit is actually one against the state itself." *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011). And none of the Coalition Plaintiffs can invoke *Ex Parte Young*'s exception to immunity. *See* Texas Mot. 7-8. Lastly, their sole purported cause of action is the Supremacy Clause itself, yet they have no real answer for *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), which rejects such a theory.

**2.** Nor does the federal government have a cause of action. Absent legislation creating a cause of action, "the equity jurisdiction of the federal courts is the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789." *Grupo Mexicano de Desarrollo S.A. V. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 (1999). The federal government does not identify such a case. The federal judiciary thus should not imply a new federal cause of action given its "traditionally cautious approach to equitable powers." *Id.* at 329. Indeed, in recent years the Supreme Court has made clear—repeatedly—that it does not recognize causes of action that Congress has not seen fit to enact. *E.g.*, *Hernandez v. Mesa*, 140 S.Ct. 735, 742 (2020).

The federal government thus falls back on *Debs*. But this reliance fails for at least three reasons. *First*, *Debs* arose from a bill in equity to abate a public nuisance connected with the United States's proprietary interests, a well-recognized equitable cause of action. *See* Aditya Bamzai & Samuel L. Bray, Debs *and the Federal Equity*

2

*Jurisdiction*, 98 Notre Dame L. Rev. 699, 737 (2022); 2 Joseph Story, *Commentaries on the Constitution of the United States*, §§ 921-23 (1833). In other words, "[t]he crux of the *Debs* decision" was "that the Government may invoke judicial power to abate what is in effect a nuisance detrimental to the public interest." *United Steelworkers of Am. v. United States*, 80 S. Ct. 177, 186 (1959) (Frankfurter, J., concurring). The federal government does not contend its claim here falls within that traditional equitable cause of action, nor could it.

*Second*, *Wyandotte* describes *Debs* as removing nuisances obstructing interstate commerce. *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967) (citing *Debs*, 158 U.S. at 586). And *Wyandotte* was about the relief available to the U.S. not the existence of a cause of action. *Id.* at 193. Finally, the cases *Wyandotte* cites stand for the proposition that "the United States may sue to protect its interests" *under an available cause of action*—a right Texas does not dispute. *Id.* at 201 (citing *Cotton v. United States*, 52 U.S. (11 How.) 229 (1850) (action in trespass), *United States v. San Jacinto Tin Co.*, 125 U.S. 273 (1888) (action to quiet title), *Sanitary Dist. of Chicago v. United States*, 266 U.S. 405 (1925) (statutory cause of action)). Where the federal government has a cause of action in equity, it can obtain an injunction. But it has no such cause of action here.

*Third*, the fact that the federal government relied on a non-existent cause of action in *Arizona* is irrelevant because no one raised the issue of whether the Supremacy Clause is self-executing. That is unsurprising because the legal landscape at the time *Arizona* was decided was undoubtedly different: Not only was *Arizona* pre-*Armstrong*, but it also predated the Supreme Court's recent cases emphasizing that it is

3

for Congress—not courts—to create causes of action. *See, e.g.*, *Hernandez*, 140 S.Ct. at 742. Regardless, "[i]n our adversarial system of adjudication, we follow the principle of party presentation," *United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1579 (2020), and "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents," *Gann v. United States*, 142 S.Ct. 1, 2 (2021) (mem) (Sotomayer, J., concurring in denial of certiorari).

Moreover, *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247 (2011) does not give the federal government a cause of action under *Ex Parte Young*. 563 U.S. 247 (2011). As the Supreme Court has emphasized, *Ex Parte Young* creates an exception to the Eleventh Amendment that "allows *certain private parties* to seek judicial orders in federal court" enjoining unconstitutional acts by State officials. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (emphasis added). It says nothing about whether the federal government can sue State officials acting in their official capacities without congressional authorization.

### B. S.B.4 Is Not Preempted.

The federal government claims (at 5) that under *Arizona* "field and conflict preemption principles preclude Texas from enforcing SB 4." Yet Plaintiffs cannot identify a preempted field relevant to S.B.4, and the federal government acknowledges (at 2) that S.B.4's criminal provisions mirror federal law.

In *Arizona*, the Court considered four state-law provisions, holding that one (§3) was field preempted, two (§§5(C) and 6) were conflict preempted, and one (§2(B)) was not preempted at all. This Court must consider each provision in turn.

Section 3 would have created a state crime for failing to carry an alien registration card. *Arizona*, 567 U.S. at 400. The Supreme Court explained that although a State "may make violation of federal law a crime… it cannot do so in a field (like the field of alien registration) that has been occupied by federal law." *Id.* at 402. Because §3 attempted to regulate within a preempted field, it too was preempted. *Id.* at 403-04. Had §3 merely mirrored federal law without intruding on an exclusive federal field—like the criminal provisions of S.B.4—§3 would not have been field preempted.

As to §5(C), the Supreme Court explained that "Congress made a deliberate choice not to impose [the] criminal penalties" that §5(C) created. *Id.* at 405. Because Congress rejected the very penalties §5(C) would impose, the state law was an "obstacle" to Congress's objectives. *Id.* at 406.

Similarly, the Supreme Court determined that §6 was conflict preempted because it allowed a State officer to arrest a person based on probable cause of removability alone. *Id.* at 407-10. But the Court explained that because "it is not a crime for an alien to remain present in the United States," "the usual predicate for an arrest [under §6] is absent." *Id.* at 407. So §6 provided State officers "even greater authority to arrest aliens… than Congress has given to trained federal immigration officers," *id.* at 408, "defeating any need for real cooperation," *id.* at 410.

Yet the Supreme Court held that §2(B), which requires State officers to determine an arrested or detained individual's immigration status, was neither field nor conflict preempted. *Id.* at 411. Assessing immigration status requires consultation between State and federal officials, so "[t]he federal scheme thus leaves room" for

State action. *Id.* at 413. The Supreme Court buttressed that holding with the recognition that "[t]he nature and timing" of a pre-enforcement facial challenge "counsel caution in evaluating the validity" of a State-law "provision even before the law has gone into effect." *Id.* at 415. The Court held that "without the benefit of a definitive interpretation from the state courts, it would be inappropriate to assume §2(B) will be construed in a way that creates a conflict with federal law." *Id.*

So too here. The federal government acknowledges (at 2) that S.B.4's criminal provisions mirror federal law. And S.B.4's return orders merely require an alien be transported to a port of entry, at which point potential removal is a question for federal immigration officers. Art. 5B.002(e). And an alien may voluntarily depart pursuant to a return order in lieu of prosecution—something that no federal law prohibits, and which aliens are free to do themselves. Art. 5B.002(b)-(c). Nothing in S.B.4 prevents an alien from seeking asylum or any other federal relief with a federal immigration officer, and S.B.4 does not require State officials to make removal determinations, assess an alien's defenses, or interfere with the federal removal process. ROA.316. Simply put, S.B.4 does not grant State officers additional removal authority beyond what Congress has provided federal immigration officers.

Critically, S.B.4 is unlike *Arizona*'s §3 because it does not intrude on a recognized, exclusive federal field; it certainly has nothing to do with the only federal field—alien registration—in *Arizona*. Nor is S.B.4 like §5(C) or §6: Even the federal government acknowledges (at 2) that S.B.4 has *existing* federal law analogues, unlike §5(C). And unlike §6, S.B.4 does not grant State officers the power to arrest or detain that is greater than federal immigration officers' authority (for example, arrest

6

without probable cause that a crime has been committed). S.B.4 is most like *Arizona*'s §2(B), which the Court upheld because it requires States to cooperate with the federal government to enforce existing federal laws.

Echoing the district court's legal error, the federal government and Coalition Plaintiffs respectively assert (at 5-12; 2-12) that Texas has no authority whatsoever to enforce immigration law. This contradicts *Arizona*, and it disregards Texas's police powers. *Arizona* itself counsels caution in preempting State law in a pre-enforcement facial challenge, particularly when the challenged regulation can be applied in a way to avoid constitutional conflicts. *See infra* 8-9. In all events, the district court misapplied the standard for a facial injunction and failed to meaningfully engage with S.B.4's severability clause. That clause requires that "every provision, section, subsection, sentence, clause, phrase, [and] word" be severed, if necessary, to preserve the remainder of the law. Act of Nov. 14, 2023, 88th Leg., 4th C.S., ch. 2, §8 (2023).

## C. S.B.4 Does Not Violate the Foreign Commerce Clause.

The federal government says essentially nothing in response to Texas's argument that illegal border crossings are not "commerce" and that even if they were, the dormant Foreign Commerce Clause could not apply because Congress has affirmatively enacted legislation inviting laws like S.B.4. Cases such as *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744 (5th Cir. 2006), are thus irrelevant because S.B.4 does not regulate commerce in the first place, *see, e.g.*, *Mayor of New York v. Miln*, 36 U.S. 102, 132 (1837), and, regardless, there is nothing "dormant" about Congress's conclusion that States may help enforce immigration law.

### D. S.B.4 Cannot Be Facially Enjoined Because It Has Constitutional Applications.

The federal government argues (at 14) that the Invasion Clause is "very narrow." In fact, the Clause is broad. *See, e.g.*, *United States v. Abbott*, 92 F.4th 570, 579-80 (5th Cir. 2024) (per curiam) (Ho, J., dissenting); *United States v. Abbott*, 87 F.4th 616, 631 (5th Cir. 2023) (acknowledging it is a "plausible defense" that the Clause allows Texas to place buoys in the Rio Grande), *vacated on reh'g en banc*, 90 F.4th 870 (5th Cir. 2024). The precise scope, however, is irrelevant here; it is enough that some applications of S.B.4 are constitutional under any plausible reading. The federal government also argues (at 16) that "smuggling" can't be an invasion. James Madison thought otherwise, and, in any event, armed incursions across the border by violent transnational cartels engaged in gunrunning and human trafficking are not mere "smuggling." As the President of the United States recognized, it's a highly lucrative enterprise: "people pay these smugglers $8,000 to get across the border" to avoid federal immigration laws, and the cartels regularly exploit lapses in immigration enforcement to carry out their goals through dangerous means.[1] And Congress's Special Committee on the "Texas Frontier Troubles" endorsed Governor Sam Houston's view that an "*invasion*" of non-state actors from Mexico justified Texas's use of violent force. H. Rep. No. 343, at 15 (Feb. 29, 1876) (emphasis

---

[1] Transcript of President Joseph Biden's State of the Union Address, ASSOCIATED PRESS (Mar. 8, 2024), https://tinyurl.com/ypsxhuju.

added).² Such broad authority surely includes, at a minimum, using S.B.4 to combat cartel members within Texas.

Plaintiffs fall back on their argument that S.B.4 is not a "war" measure. Yet they ignore that the Supreme Court has held that the greater power to wage war includes the lesser power of "arrest[]." *Moyer v. Peabody*, 212 U.S. 78, 84-85 (1909). The federal government also says (at 15) Texas can only defend itself for a short time—a proposition nowhere found in the Constitution and irrelevant to whether S.B.4 can *ever* be constitutionally applied. And as Judge Ho explains, "it's unfathomable that any State would have ratified a Constitution that conditioned its right to self-defense" on congressional action. *Abbott*, 92 F.4th at 580 (Ho., J. dissenting).

## II. Equitable Considerations Favor a Stay Pending Appeal.

Because S.B.4 is not preempted, Plaintiffs suffer no irreparable harm. The federal government can enforce federal immigration law with S.B.4 in effect, and the Coalition Plaintiffs can continue their existing activities. Alleged harms regarding foreign relations are wholly speculative, and, just as in prior cases filed against Texas with respect to the border, no injunction will remedy speculative diplomatic harms. *United States v. Abbott*, 87 F.4th at 642 (Willett, J. dissenting). On the other hand, enjoining Texas from enforcing its constitutional law constitutes a *per se* irreparable

---

² The federal government observes (at 16) that the United States did not rely on the Invasion Clause when it itself entered Mexico to pursue armed marauders. But the United States has a constitutional duty to protect States "against Invasion[]." U.S. Const. art. IV, §4. That the United States concluded that incursions by armed non-state bandits into Texas warranted a military response is highly relevant.

injury. *See, e.g.*, *Vote.org v. Callanen*, 39 F.4th 297, 308 (5th Cir. 2022). And the public interest in reducing illegal border crossings heavily tips in Texas's favor.

Given these equities, the district court issued an overbroad injunction. ROA.587. At a minimum the court should have engaged in a true severability analysis and enjoined only those provisions, if any, that do not survive preemption. *See Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 328-29 (2006).

## Conclusion

The Court should grant a stay pending appeal.

Respectfully submitted.

| | |
|---|---|
| Ken Paxton<br>Attorney General of Texas | Aaron L. Nielson<br>Solicitor General |
| Brent Webster<br>First Assistant Attorney General | /s/ Kateland R. Jackson<br>Kateland R. Jackson<br>Joseph N. Mazzara<br>Assistant Solicitors General<br>Kateland.Jackson@oag.texas.gov |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1700<br>Fax: (512) 474-2697 | Coy Allen Westbrook<br>Assistant Attorney General<br><br>Counsel for State of Texas |

## Certificate of Service

On March 11, 2024, this Motion was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Kateland R. Jackson
KATELAND R. JACKSON

## Certificate of Compliance

This Motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,598 words, excluding the parts of the brief exempted by rule; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Kateland R. Jackson
KATELAND R. JACKSON