No. 24-50149

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STATE OF TEXAS; GREG ABBOTT IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; TEXAS DEPARTMENT OF PUBLIC SAFETY; STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF TEXAS DEPARTMENT OF PUBLIC SAFETY,

*Defendants-Appellants.*

LAS AMERICAS IMMIGRANT ADVOCACY CENTER; AMERICAN GATEWAYS; COUNTY OF EL PASO, TEXAS,

*Plaintiffs-Appellees,*

*v.*

STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF TEXAS DEPARTMENT OF PUBLIC SAFETY; BILL D. HICKS, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR THE 34TH DISTRICT,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
No. 1:24-CV-8-DAE (lead case)
No. 1:23-CV-1537-DAE (consolidated case)

## BRIEF OF APPELLANT BILL HICKS

**FRANCISCO J. ORTEGA**
Texas Bar No. 24060365
**SCOTTHULSE, P.C.**
One San Jacinto Plaza
201 E. Main Drive, Suite 1100
El Paso, Texas  79901
(915) 533-2493
(915) 546-8333 Telecopier
Attorney for Appellant Bill Hicks

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5th Cir. R. 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **United States of America, Plaintiff-Appellee**
   Attorneys:
   Daniel Bentele Hahs Tenny, U.S. Department of Justice
   Maxwell A. Baldi, U.S. Department of Justice
   Brian Boynton, U.S. Department of Justice
   Jean Lin, U.S. Department of Justice
   Leif Eric Overvold, U.S. Department of Justice
   Samuel M. Shapiro, NTC Government
   Attorneys from District Court Case:
   Kuntal Cholera, DOJ-Civ
   Stephen Ehrlich, U.S. Department of Justice

2. **American Gateways, Plaintiff-Appellee**
   Attorneys:
   Cody Wofsy, American Civil Liberties Union Foundation, Immigrant Rights Project
   Spencer Amdur. American Civil Liberties Union Foundation, Immigrant Rights Project
   Anand Balakrishnan, American Civil Liberties Union Foundation
   Lee P. Gelernt, American Civil Liberties Union Foundation, Immigrant Rights Project
   Tamara Goodlette, Texas Civil Rights Project, Beyond Borders
   Daniel Hatoum, Texas Civil Rights Project, Beyond Borders
   Omar C. Jadwat, American Civil Liberties Union Foundation, Immigrants' Rights Project
   Adriana Cecilia Pinion, American Civil Liberties Union of Texas
   Erin D. Thorn, Texas Civil Rights Project, Beyond Borders
   Attorneys from District Court Case:

Hannah Schoen, ACLU Immigrants' Rights Project
Morgan Russell, American Civil Liberties Union Foundation
Wafa Junaid, American Civil Liberties Union Foundation
David A. Donatti, ACLU of Texas

3.  **<u>County of El Paso, Texas, Plaintiff-Appellee</u>**
    <u>Attorneys:</u>
    Cody Wofsy
    Spencer Amdur
    Anand Balakrishnan
    JoAnne Bernal, County Attorney's Office for the County of El Paso
    Bernardo Rafael Cruz, El Paso County Attorney's Office, Civil Litigation Unit
    Lee P. Gelernt
    Omar C. Jadwat
    Adriana Cecilia Pinon
    <u>Attorneys from District Court Case:</u>
    Morgan Russell
    Wafa Junaid
    David A. Donatti

4.  **<u>Las Americas Immigrant Advocacy Center, Plaintiff-Appellee</u>**
    <u>Attorneys:</u>
    Cody Wofsy
    Spencer Amdur
    Anand Balakrishnan
    Lee P. Gelernt
    Tamara Goodlette
    Daniel Hatoum
    Omar C. Jadwat
    Adriana Cecilia Pinon
    Erin D. Thorn
    <u>Attorneys from District Court Case:</u>
    Hannah Schoen
    Morgan Russell
    Wafa Junaid
    David a. Donatti

5. **State of Texas, Defendant-Appellant**
   <u>Attorneys:</u>
   Aaron Lloyd Nielson, Office of the Texas Attorney General, Solicitor General Division
   Munera Al-Fuhaid, Office of the Attorney General of Texas
   Susanna Dokupil, Office of the Attorney General, Special Litigation Division
   Heather Lee Dyer, Office of the Attorney General, General Litigation Division
   Amy Snow Hilton, Assistant Attorney General, Office of the Attorney General, Special Litigation Division
   Katelan R. Jackson, Office of the Attorney General, Office of the Solicitor General
   Joseph N. Mazzara, Office of the Texas Attorney General, Special Litigation Division
   Kyle Tebo, Office of the Attorney General
   Ryan Daniel Walters, Office of the Texas Attorney General, Special Litigation Division
   Coy Allen Westbrook, Office of the Attorney General of Texas, Office of the Solicitor General
   <u>Attorneys from District Court Case:</u>
   Monroe David Bryant, Jr., Office of the Texas Attorney General, Special Litigation Unit

6. **Greg Abbott, in his office capacity as Governor of Texas, Defendant-Appellant**
   <u>Attorneys:</u>
   Aaron Lloyd Nielson
   Munera Al-Fuhaid
   Susanna Dokupil
   Heather Lee Dyer
   Amy Snow Hilton, Assistant Attorney General
   Kateland R. Jackson
   Joseph N. Mazzara
   Jacob Przada
   Kyle Tebo
   Ryan Daniel Walters
   Coy Allen Westbrook
   <u>Attorneys from District Court Case:</u>
   Monroe David Bryant, Jr.

7. **Texas Department of Public Safety, Defendant-Appellant**
   <u>Attorneys:</u>
   Aaron Lloyd Nielson
   Munera Al-Fuhaid
   Susanna Dokupil
   Heather Lee Dyer
   Amy Snow Hilton, Assistant Attorney General
   Kateland R. Jackson
   Joseph N. Mazzara
   Jacob Przada
   Kyle Tebo
   Ryan Daniel Walters
   Coy Allen Westbrook
   <u>Attorneys from District Court Case:</u>
   Monroe David Bryant, Jr.

8. **Steven C. McCraw, in his official capacity as Director of Texas Department of Public Safety, Defendant-Appellant**
   <u>Attorneys:</u>
   Aaron Lloyd Nielson
   Munera Al-Fuhaid
   Susanna Dokupil
   Heather Lee Dyer
   Amy Snow Hilton, Assistant Attorney General
   Kateland R. Jackson
   Joseph N. Mazzara
   Jacob Przada
   Kyle Tebo
   Ryan Daniel Walters
   Coy Allen Westbrook
   <u>Attorneys from District Court Case:</u>
   Monroe David Bryant, Jr.

9. **Bill D. Hicks, Defendant-Appellant**
   <u>Attorney:</u>
   Francisco Javier Ortega
   <u>Attorneys from District Court Case:</u>
   Evan W. Weltge, Office of the Attorney General

10. **Amicus, Advocates for Victims of Illegal Alien Crime**
    Attorney: Paul M. Davis

11. **Amicus, U.S. Representatives Arrington, et al.**

12. **Amicus, Harris County, Texas**

13. **Judge David A. Ezra, U.S. District Judge, Western District of Texas**


/s/ *Francisco J. Ortega*
**FRANCISCO J. ORTEGA**

## STATEMENT REGARDING ORAL ARGUMENT

On March 11, 2024, pursuant to an order entered on March 2, 2024, expediting this appeal, the Court scheduled oral argument for April 3, 2024.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................................... i

STATEMENT REGARDING ORAL ARGUMENT .................................... vi

STATEMENT OF JURISDICTION .................................................. 1

ISSUES PRESENTED FOR REVIEW .............................................. 2

STATEMENT OF CASE ................................................................... 3

    A.    Course of Proceedings and Disposition Below ................................ 3

STANDARD OF REVIEW .............................................................. 4

SUMMARY OF ARGUMENT ......................................................... 5

    A.    DISTRICT ATTORNEY HICKS IS ENTITLED TO SOVEREIGN IMMUNITY UNDER THE ELEVENTH AMENDMENT ................................. 5

    B.    EL PASO COUNTY AND ORGANIZATIONAL PLAINTIFFS LACK STANDING TO BRING CLAIMS AGAINST DISTRICT ATTORNEY HICKS ..................................................................................... 7

    C.    EL PASO COUNTY AND THE ORGANIZATIONAL PLAINTIFFS DO NOT HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS .. 8

ARGUMENT ................................................................................. 8

I.    BILL HICKS IS ENTITLED TO SOVEREIGN IMMUNITY UNDER THE ELEVENTH AMENDMENT OF THE U.S. CONSTITUTION ......................................................................... 8

    A.    DISTRICT ATTORNEYS ARE OFFICIALS OF THE STATE OF TEXAS .... 9

        1.    *The Laws of the State of Texas Treat District Attorneys as State Officials* ....................................................................... 12

        2.    *The State of Texas is a Source of Funding for District Attorneys* ................................................................................. 13

        3.    *The Autonomy of Texas District Attorneys is Not Confined to County Lines* ................................................................ 16

        4.    *Texas District Attorneys are Concerned with Statewide Problems* ................................................................................. 18

        5.    *Texas District Attorneys Represent the State of Texas in All Criminal Cases* ............................................................... 19

      6.    *Texas Law is Silent Over Whether District Attorneys Can Hold and Use Property in their Own Name* ........................................20

  **B.**   **ALTHOUGH DISTRICT ATTORNEY HICKS IS A STATE OFFICIAL, *EX PARTE YOUNG* DOES NOT APPLY TO HIM** ........................................21

**II.**  **EL PASO COUNTY AND THE ORGANIZATIONAL PLAINTIFFS LACK STANDING**........................................................................26

  **A.**   **EL PASO COUNTY LACKS STANDING TO ASSERT A CLAIM FOR INJUNCTIVE RELIEF AGAINST DISTRICT ATTORNEY HICKS** .........26

      1.    *El Paso County Failed to Establish an Injury-in-fact That is Fairly Traceable to District Attorney Hicks*.............................28

         a.   *El Paso County also Fails to Satisfy the Test for a Pre-enforcement Challenge* ........................................36

      2.    *El Paso County has Failed to Establish that a Favorable Decision will Remedy an Alleged Injury* ...................................37

  **B.**   **THE ORGANIZATIONAL PLAINTIFFS EQUALLY FALL SHORT OF DEMONSTRATING STANDING** ........................................39

**III.** **EL PASO COUNTY AND ORGANIZATIONAL PLAINTIFFS DO NOT HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS**..........................................................................43

**CONCLUSION** ........................................................................44

**CERTIFICATE OF COMPLIANCE** ..............................................46

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ............................................................... 39

*Allen v. Wright,*
468 U.S. 737 (1984) ............................................................... 37

*Allied Marketing Group, Inc. v. CDL Marketing, Inc.,*
878 F.2d 806 (5th Cir. 1989) ....................................................... 4

*Apple Barrel Productions, Inc. v. Beard,*
730 F.2d 384 (5th Cir. 1984) ..................................................... 4-5

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler,*
178 F.3d 350 (5th Cir. 1999) .................................................. 31, 34

*Babbitt v. United Farm Workers Nat. Union,*
442 U.S. 289 (1979) .......................................................... 30, 36

*Baker v. Wade,*
743 F.2d 236 (5th Cir. 1984) ................................................. 24, 35

*Bd. of Trs. of the Univ. of Ala. v. Garrett,*
531 U.S. 356 (2001) ................................................................ 9

*Blake v. Kline,*
612 F.2d 718 (3rd Cir. 1979) .................................................... 12

*Bonin v. Sabine River Auth.,*
65 F.4th 249 (5th Cir. 2023) .................................................... 10

*Bruni v. Hughs,*
468 F. Supp. 3d 817 (S.D. Tex. 2020) ........................................ 33-34

*California v. Texas,*
141 S. Ct. 2104 (2021) ........................................................... 37

*Canal Auth. of State of Fla. v. Callaway,*
489 F.2d 567 (5th Cir. 1974) ..................................................... 4

*CASA de Maryland, Inc. v. Trump*,
  971 F.3d 220 (4th Cir. 2020) .................................................. 41

*City of Trenton v. New Jersey*,
  262 U.S. 182 (1923) ............................................................. 31

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................. 29

*Clark v. Tarrant County.*,
  798 F.2d 736 (5th Cir. 1986) ........................................ *passim*

*Commonwealth Life Ins. Co. v. Neal*,
  669 F.2d 300 (5th Cir. 1982) ................................................. 5

*Cory v. White*,
  457 U.S. 85 (1982)................................................................ 22

*Cousin v. Small*,
  325 F.3d 627 (5th Cir. 2003) .............................................. 25

*Daves v. Dallas Cnty.*,
  22 F.4th 522 (5th Cir. 2022) (en banc) .................... 11, 13-14

*Def. Distributed v. U.S. Dep't of State*,
  No. 1:15-cv-372, 2018 WL 3614221 (W.D. Tex. July 27, 2018) .............. 42

*Diamond v. Charles*,
  476 U.S. 54 (1986)................................................................ 38

*Earles v. State Bd. of Certified Public Accountants of La.*,
  139 F.3d 1033 (5th Cir. 1998)............................................. 10

*Esteves v. Brock*,
  106 F.3d 674 (5th Cir. 1997) .............................................. 25

*Ford Motor Co. v. Dept. of Treasury*,
  323 U.S. 459 (1945)............................................................. 21

*FW/PBS, Inc. v. Dallas*,
  493 U.S. 215 (1990)............................................................. 27

*Griffin v. Box*,
910 F.2d 255 (5th Cir. 1990) ..................................................... 5

*Haddix v. Texas*,
448 F. App'x 498 (5th Cir. 2011) .......................................... 25

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ................................................................. 29

*Hawaii v. Gordon*,
373 U.S. 57 (1963) (per curiam ) ........................................... 22

*Hollingsworth v. Perry*,
570 U.S. 693 (2013) ................................................................. 38

*Hudson v. City of New Orleans*,
174 F.3d 677 (5th Cir. 1999) ........................................... 9-11, 13

*Imbler v. Pachtman*,
424 U.S. 409 (1976) ................................................................. 25

*In re Abbott*,
956 F.3d 696 (5th Cir. 2020) ............................................. 22-23

*Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*,
762 F.2d 435 (5th Cir. 1985), *cert. denied*, 474 U.S. 1057 (1986) ............... 12

*Jagnandan v. Giles*,
538 F.2d 1166 (5th Cir. 1976) ............................................... 14

*K.P. v. LeBlanc*,
627 F.3d 115 (5th Cir. 2010) ............................................. 22-23

*Laje v. R.E. Thomason Gen. Hosp.*,
665 F.2d 724 (5th Cir. 1982) ................................................. 12

*Lane v. Holder*,
703 F.3d 668 (4th Cir. 2012) ............................................. 41-42

*Las Americas Immigrant Advocacy Ctr. v. McCraw et al.*,
1:23-CV-1537 (W.D. Tex.) ................................................... 3, 21

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ...............................................27-28, 37, 40

*Mazurek v. Armstrong*,
 520 U.S. 968 (1997) (per curiam) ......................................5, 39

*McCarthy ex rel. Travis v. Hawkins*,
 381 F.3d 407 (5th Cir. 2004) ....................................... 9

*Meshell v. State*,
 739 S.W.2d 246 (Tex. Crim. App. 1987) ...........................24-25

*Minton v. St. Bernard Par. Sch. Bd.*,
 803 F.2d 129 (5th Cir. 1986) ................................. 10

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
 760 F.2d 618 (5th Cir. 1985) ................................. 4

*Moore v. La. Bd. of Elementary & Secondary Educ.*,
 743 F.3d 959 (5th Cir. 2014) ................................. 39

*Morris v. Livingston*,
 739 F.3d 740 (5th Cir. 2014) ................................. 23

*Nat'l Taxpayers Union, Inc. v. United States*,
 68 F.3d 1428 (D.C. Cir. 1995) ................................. 42

*Nat'l Press Photographers Ass'n v. McCraw*,
 90 F.4th 770 (5th Cir. 2024) ....................... 21, 26-27

*Okpalobi v. Foster*,
 244 F.3d 405 (5th Cir. 2001) (en banc) ................... 22

*Pennhurst State Sch. & Hosp. v. Halderman*,
 465 U.S. 89 (1984) ...............................................21-22

*Quinn v. Roach*,
 326 F. App'x 280 (5th Cir. 2009) ......................... 25

*Regents of the Univ. of Cal. v. Doe*,
 519 U.S. 425 (1997) ................................. 9

*Renne v. Geary*,
    501 U.S. 312 (1991) ............................................................. 35

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ............................................................. 30

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ............................................................... 42

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020) ............................................ 39

*Spikes v. Phelps*,
    131 F. App'x 47 (5th Cir. 2005) ........................................ 25

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ......................................................27, 29

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
    554 U.S. 269 (2008) ............................................................. 26

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................... 38

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ......................................................36, 40

*Texas Democratic Party v. Abbott*,
    978 F.3d 168 (5th Cir. 2020) ....................................22-23, 26

*Town of Ball v. Rapides Par. Police Jury*,
    746 F.2d 1049 (5th Cir. 1984) ........................................... 31

*United Carolina Bank v. Bd. of Regents*,
    665 F.2d 553 (5th Cir. 1982) ............................................. 12

*United States v. Abbott et al.*,
    1:24-CV-8 (W.D. Tex.) ......................................................... 3

*United States v. Texas*,
    No. 21-CV-173, 2022 WL 868717 (W.D. Tex. Feb. 17, 2022)................. 39

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982) .................................................................... 30

*Vogt v. Board of Com'rs of Orleans Levee Dist.*,
294 F.3d 684 (5th Cir. 2002) ...................................................... 10

*Women's Med. Ctr. of Nw. Hous. v. Bell*,
248 F.3d 411 (5th Cir. 2001) ........................................................ 5

*Zimmerman v. City of Austin*,
881 F.3d 378 (5th Cir. 2018) ...................................................... 40

**Rules**

FED. R. APP. P. 32(a)(5) .............................................................. 46

FED. R. APP. P. 32(a)(6) .............................................................. 46

FED. R. APP. P. 32(a)(7)(B) ......................................................... 46

FED. R. APP. P. 32(a)(7)(B)(iii) .................................................... 46

FED. R. APP. P. 32(a)(7)(C) ......................................................... 46

FED. R. CIV. P. 52(a) .................................................................... 5

**Statutes**

28 U.S.C. § 1292(a)(1) .................................................................. 1

TEX. CODE CRIM. PROC. ANN art. 2.021 ................................... 19

TEX. CODE CRIM. PROC. ANN. arts. 2.024(a)(1), 2.07(d) ............. 13

TEX. GOV'T CODE ANN. § 41.005(a) ........................................... 19

TEX. GOV'T CODE ANN. § 41.006 ................................................ 18

TEX. GOV'T CODE ANN. § 41.010 ................................................ 13

TEX. GOV'T CODE ANN. § 41.015(a) ............................................ 13

TEX. GOV'T CODE ANN. §§ 41.0102(b)-(c) .................................. 19

TEX. GOV'T CODE ANN. § 41.202(a) ............................................................ 14

TEX. GOV'T CODE ANN. §§ 43.002(a)-(b) ................................................. 13

TEX. GOV'T CODE ANN. § 43.003 ................................................................ 15

TEX. GOV'T CODE ANN. §§ 43.004(a)-(b) ............................................15-16

TEX. GOV'T CODE ANN. §§ 43.120(a), (c) .............................................. 19

TEX. GOV'T CODE ANN. § 43.120(c) ........................................................ 34

TEX. GOV'T CODE ANN. §§ 46.006(a)-(b) ............................................... 15

TEX. GOV'T CODE ANN. § 660.001 *et seq.* ........................................... 15

TEX. GOV'T CODE ANN. § 41.013(a) ......................................................... 14

TEX. CODE CRIM. PROC. ANN. art. 2.01 ..............................................19-20

## Other Authorities

TEX. CONST. art. 2, § 1 ......................................................................24, 35

TEX. CONST. arts. V § 7 & IX § 1 ............................................................ 17

TEX. CONST. art. V, § 21 .....................................................................13, 18

U.S. CONST. art. III, § 2, cl. 1 .................................................................. 26

## STATEMENT OF JURISDICTION

On February 29, 2024, the U.S. District Court for the Western District of Texas, Austin Division entered its Order Granting Preliminary Injunction. Appellant Bill D. Hicks, in his official capacity as the District Attorney for the 34th District of Texas, timely appealed this order from the district court on March 8, 2024. An order granting a preliminary injunction is an interlocutory order made appealable pursuant to 28 U.S.C. § 1292(a)(1).

# ISSUES PRESENTED FOR REVIEW

1.  To determine whether an actor is a state official entitled to sovereign immunity under the Eleventh Amendment of the U.S. Constitution, this Court has employed the six-factor test outlined in *Clark v. Tarrant County.*, 798 F.2d 736 (5th Cir. 1986). The district court, however, did not apply the *Clark* test. Did the district court err in failing to find that District Attorney Hicks is a state official, even though he satisfies all the *Clark* factors because:

    (a)  the laws of the State of Texas view district attorneys as state officials;

    (b)  their funding and most of their salaries derive from the State;

    (c)  district attorneys are bound in elections to judicial district—not county—lines;

    (d)  as prosecuting officers, district attorneys are concerned with the prosecution of state—not local—laws; and

    (e)  district attorneys represent the State of Texas—not the counties—in all criminal proceedings?

2.  To invoke a federal court's jurisdiction, plaintiffs must establish three elements: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Did the district court err in finding that El Paso County and the Organizational Plaintiffs have standing to enjoin District Attorney Hicks, despite claiming speculative injuries and failing to allege or prove that District Attorney Hicks will actually enforce or prosecute cases under SB4.

3.  To obtain a preliminary injunction, the moving party must establish four factors, among them, a substantial likelihood of success on the merits. Did the district court err in entering a preliminary injunction and determining that Appellees have a substantial likelihood to succeed on the merits, even though SB4 does not run afoul of the U.S. Constitution?

# STATEMENT OF THE CASE

## A.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW

On December 19, 2023, Las Americas Immigrant Advocacy Center and American Gateways (the "Organizational Plaintiffs") and the County of El Paso ("El Paso County") filed suit against Steven C. McCraw, in his official capacity as Director of the Texas Department of Public Safety, and Bill D. Hicks, in his official capacity as District Attorney for the 34th Judicial District of Texas, in the United States District Court for the Western District of Texas, Austin Division. *See Las Americas Immigrant Advocacy Ctr. v. McCraw et al.*, 1:23-CV-1537 (W.D. Tex.). (ROA.24-50149.792). On January 3, 2024, the United States filed suit against the State of Texas; Greg Abbott, in his official capacity as Governor of Texas; the Texas Department of Public Safety; and Director McCraw in his official capacity, in the same federal district court. *See United States v. Abbott et al.*, 1:24-CV-8 (W.D. Tex.). (ROA.24-50149.17). Thereafter, on January 12, 2024, El Paso County, and Organizational Plaintiffs filed motions for preliminary injunction in their separate cases, ROA.24-50149.82. On January 30, 2024, the case was reassigned to the Honorable David Ezra. (ROA.24-50149.187). The next day, the district court consolidated both cases. (ROA.24-50149.1614).

Appellees seek to enjoin the enforcement of Texas's recently enacted Senate Bill 4 ("SB4") which, among other things, creates criminal offenses related to

illegal entry or reentry into the State of Texas from a foreign nation and authorizes magistrates and judges to issue return orders. This law was to go into effect on March 5, 2024; however, the district court entered a preliminary injunction on February 29, 2024. (ROA.24-50149.478).

On March 7, 2024, District Attorney Hicks timely appealed this order from the district court, seeking the reversal of the district court's decision to enter a preliminary injunction over the enforcement of SB4.

## STANDARD OF REVIEW

A preliminary injunction is an extraordinary remedy. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). To obtain a preliminary injunction, the moving party must establish four factors: (1) a substantial likelihood of success on the merits, (2) a substantial threat that failure to grant the injunction will result in irreparable injury, (3) the threatened injury outweighs any damage that the injunction may cause the opposing party, and (4) the injunction will not disserve the public interest. *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir. 1989). These four prerequisites for preliminary injunctive relief are "mixed questions of fact and law." *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984). Ultimately, "[t]he burden of persuasion on all of the four requirements for a preliminary injunction is at all times upon the plaintiff." *Canal Auth. of State of Fla. v.*

*Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). This is a steep burden, indeed, and it requires a "*a clear showing*" as to each element. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis added). If the movant fails to establish any one of the four prerequisites to injunctive relief, relief will not be granted. *Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 419 n.15 (5th Cir. 2001).

The decision to grant or deny a preliminary injunction lies within the discretion of the district court. *See, e.g.*, *Apple Barrel Productions, Inc.*, 730 F.2d at 386. In reviewing the actions of the district court for abuse of discretion, this Court upholds a district court's findings of fact unless clearly erroneous. FED. R. CIV. P. 52(a). The district court's conclusions of law, however, "are subject to broad review and will be reversed if incorrect." *See, e.g.*, *Commonwealth Life Ins. Co. v. Neal*, 669 F.2d 300, 304 (5th Cir. 1982). Any legal determinations are subject to plenary review on appeal. *Griffin v. Box*, 910 F.2d 255, 259 (5th Cir. 1990).

## SUMMARY OF ARGUMENT

The district court erred in entering an order granting Appellees' motions for preliminary injunction for several reasons.

### A. DISTRICT ATTORNEY HICKS IS ENTITLED TO SOVEREIGN IMMUNITY UNDER THE ELEVENTH AMENDMENT

First, the district court erred in finding that District Attorney Hicks is a county official not entitled to sovereign immunity protection under the Eleventh

Amendment to the U.S. Constitution. In reaching this conclusion, the district court did not employ the six-factor test under *Clark v. Tarrant County.*, 798 F.2d 736 (5th Cir. 1986). District Attorney Hicks satisfies all six *Clark* factors. The laws of the State of Texas view district attorneys as state officials. Their funding and most of their salaries derive from the State. District attorneys, like him, are bound to judicial district—not county—lines in elections. As prosecuting officers, district attorneys are concerned with the prosecution of state—not local—laws and represent the State of Texas in all criminal proceedings. Because all *Clark* factors militate in favor of District Attorney Hicks, he is a state official entitled to sovereign immunity under the Eleventh Amendment.

Furthermore, District Attorney Hicks does not fall under the *Ex parte Young* exception, which allows suits for injunctive or declaratory relief against a state official acting in violation of federal law. For El Paso County and the Organizational Plaintiffs to prevail under this exception, they must show that District Attorney Hicks has a "sufficient connection" with enforcing SB4. However, despite his prosecutorial role, he is not specially charged with the *duty* to enforce SB4. More importantly, the record is devoid of any evidence suggesting that District Attorney Hicks has threatened to enforce or prosecute any prospective defendant under SB4. Indeed, the complaint filed by El Paso County and the Organizational Plaintiffs alleges that Steven C. McCraw, the

Director of the Texas Department of Public Safety "has stated that DPS will enforce S.B.4." However, no such allegation is made against District Attorney Hicks. Appellees' motions for preliminary injunction and their exhibits are equally silent. El Paso County and the Organizational Plaintiffs must show that District Attorney Hicks has "a demonstrated willingness to exercise" his prosecutorial discretion to enforce SB4, but they have failed to do so. In light of this failure, they cannot satisfy their burden of proof to show an actual or imminent injury caused by District Attorney Hicks for injunctive relief.

**B. EL PASO COUNTY AND ORGANIZATIONAL PLAINTIFFS LACK STANDING TO BRING CLAIMS AGAINST DISTRICT ATTORNEY HICKS**

Second, the district court erred in finding that El Paso County and the Organizational Plaintiffs had the requisite standing to enjoin District Attorney Hicks over the enforcement of SB4. However, the district court's analysis did not consider all the elements of standing. Not only do El Paso County and the Organizational Plaintiffs lack an injury in fact, they are unable to demonstrate that their alleged injury is fairly traceable to the challenged conduct of District Attorney Hicks that is likely to be redressed by a favorable judicial decision. Their claims of injury are highly suspect and speculative, deprived of any reliable foundation or basis. El Paso County and the Organizational Plaintiffs failed to allege or prove that District Attorney Hicks will, in fact, prosecute cases under SB4. As a state prosecutor, District Attorney Hicks has prosecutorial discretion

to decline to prosecute SB4 cases, if the circumstances warrant. Texas district attorneys cannot be compelled by any other branch of government to determine which cases to prosecute. Their prosecutorial discretion is safeguarded by the separation-of-powers doctrine under the Texas Constitution. Absent the prosecution of SB4 cases, El Paso County and the Organizational Plaintiffs will not sustain any injury by any act or omission of District Attorney Hicks in connection with SB4. Absent a cognizable, fairly traceable injury caused by District Attorney Hicks, El Paso County and the Organizational Plaintiffs lack standing to bring this action against him.

### C. EL PASO COUNTY AND THE ORGANIZATIONAL PLAINTIFFS DO NOT HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Finally, the district court erred in finding that Appellees have a likelihood of success on the merits regarding the constitutionality of SB4. SB4 is neither preempted by the Supremacy Clause nor stands in conflict with federal immigration laws. Absent a substantial likelihood of success, Appellees are not entitled to a preliminary injunction to enjoin the enforcement of SB4.

## ARGUMENT

### I. BILL HICKS IS ENTITLED TO SOVEREIGN IMMUNITY UNDER THE ELEVENTH AMENDMENT OF THE U.S. CONSTITUTION

District Attorney Hicks is a state official entitled to sovereign immunity under the Eleventh Amendment to the U.S. Constitution. However, the district

court erroneously determined that District Attorney Hicks is not entitled to sovereign immunity because he is allegedly a county—not state—official. (ROA.24-50149.499). The district court mistakenly arrived at this conclusion without conducting this Court's six-factor test in *Clark v. Tarrant County*, 798 F.2d 736 (5th Cir. 1986), to determine whether he is a state official subject to sovereign immunity. Because the district court failed to apply the *Clark* factors, its legal conclusion is incorrect and should be reversed.

## A.    DISTRICT ATTORNEYS ARE OFFICIALS OF THE STATE OF TEXAS

"The Eleventh Amendment has been interpreted by the Supreme Court to bar suits by individuals against nonconsenting states." *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 411–12 (5th Cir. 2004) (citing *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). Eleventh Amendment sovereign immunity "encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) (citations omitted). "[I]dentifying when the state is a real, substantial party in interest is often not an easy task." *Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999). Among state entities, there is a distinction between "arm[s] of the state" and those entities "possess[ing] an identity sufficiently distinct from that of the State . . . to place it beyond [the Eleventh Amendment's] shield."

9

*Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 131 (5th Cir. 1986). The question is "whether the defendant being sued is better described as an arm of the state partaking in the privileges of Eleventh Amendment immunity or whether the defendant is actually part of a political subdivision unprotected by the Eleventh Amendment." *Hudson*, 174 F.3d at 681.

"Whether a particular political entity is an arm of the state is a question of federal law." *Vogt v. Board of Com'rs of Orleans Levee Dist.*, 294 F.3d 684, 690 n.4 (5th Cir. 2002). "There is no bright-line test for determining whether a political entity is an 'arm of the state' for purposes of Eleventh Amendment immunity." *Id.* at 689. Rather, courts must make a "reasoned judgment" whether the suit is "effectively against the sovereign state" despite the nominal defendant. *Earles v. State Bd. of Certified Public Accountants of La.*, 139 F.3d 1033, 1037 (5th Cir. 1998). Courts must also consider "the particular nature of the entity, including its powers and duties, the nuances of its organizational structure, and its interrelationship with other organs of the state." *Id.*

"In this Circuit, [courts] use the six factors from *Clark v. Tarrant County* to guide [their] analysis." *Bonin v. Sabine River Auth.*, 65 F.4th 249, 253–54 (5th Cir. 2023). "*Clark* is one of this Circuit's foundational Eleventh Amendment cases which identified from [its] case law the factors relevant to determining whether an entity is entitled to Eleventh Amendment immunity." *Id.* (citing

*Daves v. Dallas Cnty.*, 22 F.4th 522, 533 (5th Cir. 2022) (en banc) (describing this Circuit's Eleventh Amendment case law). To determine whether an actor is a state official, *Clark* enumerated the following six factors:

1. Whether the state statutes and case law view the agency as an arm of the state;

2. The source of the entity's funding;

3. The entity's degree of local autonomy;

4. Whether the entity is concerned primarily with local as opposed to statewide problems;

5. Whether the entity has the authority to sue and be sued in its own name; and

6. Whether the entity has the right to hold and use property

*See, e.g.*, *Clark v. Tarrant Cnty.*, 798 F.2d 736 744–45 (5th Cir. 1986). "A defendant need not possess each of the above attributes to benefit from the Eleventh Amendment. Nor are these factors necessarily equal to one another." *Hudson*, 174 F.3d at 681-82.

District Attorney Hicks satisfies all six *Clark* factors. The laws of the State of Texas view district attorneys as state officials. Their funding and most of their salaries derive from the State. District attorneys are bound to judicial district— not county—lines in elections. As prosecuting officers, district attorneys are concerned with the prosecution of state—not local—laws and represent the State

of Texas in all criminal proceedings.  Because all *Clark* factors militate in favor of District Attorney Hicks, the Court should find that he is a state official entitled to sovereign immunity under the Eleventh Amendment.

### 1. *The Laws of the State of Texas Treat District Attorneys as State Officials*

District Attorney Hicks is a state official.  In determining whether a person or entity is entitled to Eleventh Amendment immunity, courts "must examine the particular entity in question and its powers and characteristics as created by state law[.]" *Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982).  "One of the factors [this Court] look[s] at in determining whether an agency is an arm of the state and thus entitled to Eleventh Amendment immunity is whether the state statutes and case law view the agency as an arm of the state." *Clark*, 798 F.2d 736 at 744 (citing *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 438-40 (5th Cir. 1985), *cert. denied*, 474 U.S. 1057 (1986)); *United Carolina Bank v. Bd. of Regents*, 665 F.2d 553 (5th Cir. 1982).  In fact, state law "concerning the relationship of the [actor] to the state may be 'an important, and under certain circumstances a controlling factor' in determining immunity under the Eleventh Amendment." *Jacintoport Corp.*, 762 F.2d at 439 (quoting *Blake v. Kline*, 612 F.2d 718, 722 (3rd Cir. 1979)).

Here, Texas law recognizes district attorneys as state—not county—officials. Indeed, throughout the Texas Code of Criminal Procedure, the terms "[a]ttorney representing the **state**," "attorney for the **state**," and "active duty **state** attorney" all encompass a district attorney. TEX. CODE CRIM. PROC. ANN. arts. 2.024(a)(1), 2.07(d); 2.1397(a)(1) (emphasis added); *see* TEX. GOV'T CODE ANN. § 41.015(a). Pursuant to the Texas Constitution, district attorneys, such as District Attorney Hicks, are "commissioned by the Governor." TEX. CONST. art. V, § 21. "If a new office of district attorney . . . is created, the governor shall appoint a person to fill the office until the next general election." TEX. GOV'T CODE ANN. § 41.010. With certain exceptions, "[b]efore assuming the duties of the office," "a district attorney must give a bond that is payable to the governor" to be "deposited in the office of the comptroller of public accounts." TEX. GOV'T CODE ANN. § 43.002(a)-(b). At all times, the duties of a district attorney, like District Attorney Hicks, are "regulated by the [Texas] Legislature"—not counties. TEX. CONST. art. V, § 21. Accordingly, the Constitution and laws of the State of Texas reveal that district attorneys are state officials.

### 2. The State of Texas is a Source of Funding for District Attorneys

District Attorney Hicks receives funding and most of his salary from the State of Texas. Among the six *Clark* factors, this Court has "stated that the source of funding is the most important factor in the Eleventh-Amendment

analysis." *Daves v. Dallas Cnty., Tex.*, 22 F.4th 522, 532–33 (5th Cir. 2022) (citing

*Hudson*, 174 F.3d at 686-87). "That importance followed inexorably from [its]

earlier analysis that '[t]he Eleventh Amendment was fashioned to protect against

federal judgments requiring payment of money that would interfere with the

state's fiscal autonomy and thus its political sovereignty.'" *Daves*, 22 F.4th at

533 (quoting *Jagnandan v. Giles*, 538 F.2d 1166, 1176 (5th Cir. 1976)). This is

evidenced by sections 41.013(a) and 46.003(a) of the Texas Government Code:

> Except as otherwise provided by law, a district attorney . . . is
> entitled to receive from the **state** annual compensation in an amount
> equal to at least 80 percent of the state annual salary as set by the
> General Appropriations Act. . . ."

*See* TEX. GOV'T CODE § 41.013(a) (emphasis added); *see also id.* § 46.003(a)

(same).

For certain smaller counties, the Texas Comptroller of Public Accounts is

required to apportion and deposit state funds from available appropriations

made by the Texas Legislature to pay for the salary of prosecuting attorneys. *See*

TEX. GOV'T CODE ANN. § 41.202(a) ("On the first day of September, January,

and May of each fiscal year, the **comptroller** shall deposit the amount provided

by this subchapter in the officers' salary fund of each county to which this

subchapter applies from the available appropriations made by the legislature for

that purpose.") (emphasis added); *see also id.* § 41.203(a). Given this State

appropriation, a county cannot "reduce the county funds provided for the salary or office of the prosecutor" for funds provided by the State "to increase the effectiveness of law enforcement in this state." TEX. GOV'T CODE ANN. § 46.006(a)-(b).

A district attorney must answer to the State—not the county—if he fails to attend to his duties. "If a district attorney fails to attend any term of the district court of a county in the district, the district clerk shall certify that failure to **the [Texas] comptroller of public accounts**." TEX. GOV'T CODE ANN. § 43.003 (emphasis added). In fact, "[u]nless a satisfactory reason for the failure is shown to the comptroller, the district attorney may not receive salary [from the State] for the time the district attorney failed to attend." *Id.*

Aside from receiving most of his annual salary from the State, a district attorney is also entitled to receive reimbursement for expenses incurred for traveling and other related expenses under Chapter 660 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 43.004(a)-(b) ("A district attorney engaged in the discharge of official duties in a county other than the district attorney's county of residence is entitled to traveling and other necessary expenses, as provided by Chapter 660.") (emphasis added). Chapter 660 of the Texas Government Code pertains to travel expenses incurred by **state officers and employees**. *See generally* TEX. GOV'T CODE ANN. § 660.001 *et seq.* In

addition to reimbursement from the state for these expenses, "**[a] district attorney is entitled to receive from the state** the actual and necessary postage, telegraph, and telephone expenses incurred in the discharge of official duties." *Id.* § 43.004(a)-(b) (emphasis added). Because most of District Attorney Hicks' salary and funding derives from the State, he is a state official cloaked with sovereign immunity.

### 3. *The Autonomy of Texas District Attorneys is Not Confined to County Lines*

District Attorney Hicks's authority is not limited to the county lines of El Paso. Indeed, he serves as the top prosecuting attorney for three counties—El Paso, Hudspeth, and Culberson. Although District Attorney Hicks was appointed by Governor Abbott, his office serves and is elected by the voters of the 34th Judicial District—not El Paso County. This distinction is of critical importance.

In *Clark*, this Court found that elections based on district—not county lines—demonstrate that an actor is a state official. 798 F.2d at 738. There, female employees of the Tarrant County Adult Probation Department ("Adult Probation") brought suit under Title VII and 42 U.S.C. § 1983 against Adult Probation and Tarrant County, Texas, claiming that they had been paid less than men who performed similar work and their promotion denials were

16

attributable to their sex.  *Id.*  The district court dismissed the action against Adult Probation for lack of subject-matter jurisdiction, finding, among other things, that the Eleventh Amendment barred their claims because Adult Probation was an arm of the state.  *Id.*

On appeal, the employees argued that Adult Probation was not an arm of the state because it was subject to local autonomy.  *Id.* at 744.  In support of their claim, the employees maintained that district judges, by statute, oversee probation departments.  *Id.*  Because district judges do not hold office as the result of statewide elections, the employees claimed that Adult Probation was an agency subject to local autonomy.  *Id.*  This Court summarily rejected this argument.  *Id.*  In reaching that conclusion, this Court reasoned that "the establishment of probation departments is tied to judicial districts and not county lines."  *Id.*  Indeed, as the Court noted in *Clark*, "[c]ounties are created by Article Nine of the Texas Constitution, while judicial districts are created under Article Five, which is the judicial article."  *Id.* (citing TEX. CONST. arts. V § 7 & IX § 1).  Therefore, because "district judges derive their power from the judicial article of the state constitution and not from the County," the Court found that Adult Probation was an arm of the state.  *Id.*

The same is true here.  In elections, Texas district attorneys are not tied to county lines.  Rather, just like the district judges in *Clark*, Texas district attorneys

are elected along judicial districts—not county lines.  Although District Attorney Hicks was appointed by Governor Abbott, his office serves and is elected by the voters of the 34th Judicial District—not solely by the voters of El Paso County.  This judicial district extends far beyond the county lines of El Paso County.  It covers Hudspeth and Culberson counties, as well.  As a state official, District Attorney Hicks derives his power from "the judicial article of the state constitution and not from the county."  *Clark*, 798 F.2d at 744.  Indeed, article 5, section 21 of the Texas Constitution provides that "[t]he Legislature may provide for the election of District Attorneys in **such districts**, as may be deemed necessary, **and make provision for the compensation of District Attorneys** and County Attorneys."  TEX. CONST. art. V § 21 (emphasis added).  Without more, the District Attorney, as the top prosecutor for the 34th Judicial District, is an official of the State of Texas.

### 4.     *Texas District Attorneys are Concerned with Statewide Problems*

Texas district attorneys enforce state laws.  In this capacity, they have the ability to handle matters with the Texas Attorney General.  As a state official, District Attorney Hicks also reports to and can work in tandem with the Texas Attorney General.  "At the times and in the form that the attorney general directs, the district . . . attorneys shall **report to the attorney general** the information from their districts and counties that the attorney general desires

**relating to criminal matters and the interests of the state**." Tex. Gov't Code Ann. § 41.006 (emphasis added). At the request of a district attorney or on its own, "[t]he attorney general may offer to a . . . district attorney the assistance of the attorney general's office in the prosecution" of certain offenses. Tex. Code Crim. Proc. Ann art. 2.021; Tex. Gov't Code Ann. § 41.0102(b)-(c) (noting that the attorney general may offer or a district attorney may request assistance from the attorney general "in the prosecution of all manner of criminal cases"). District attorneys, moreover, have the ability to receive any money collected for the State and pay the money to the treasury of the State. Tex. Gov't Code Ann. § 41.005(a). Thus, their prosecutorial concerns exceed county boundaries and have an impact on the State.

**5. *Texas District Attorneys Represent the State of Texas in All Criminal Cases***

As the district attorney for the 34th Judicial District in Texas, District Attorney Hicks only represents the State of Texas. Indeed, he "represents the **state** in all criminal cases before every district court having jurisdiction in El Paso County" and "represents the **state** in all criminal cases pending in the inferior courts having jurisdiction in El Paso County." Tex. Gov't Code Ann. §§ 43.120(a), (c) (emphasis added). Article 2.01 of the Texas Code of Criminal Procedure lends additional support:

> **Each district attorney shall represent the _State_ in all criminal cases** in the district courts of his district and in appeals therefrom, except in cases where he has been, before his election, employed adversely. When any criminal proceeding is had before an examining court in his district or before a judge upon habeas corpus, and he is notified of the same, and is at the time within his district, **he shall represent the _State_ therein**, unless prevented by other official duties.

TEX. CODE CRIM. PROC ANN. art. 2.01 (emphasis added).

All in all, Texas district attorneys are tasked with representing the State in the enforcement and prosecution of state criminal—not local—felonies and misdemeanors. Their prosecutions have a statewide impact designed to curtail crime, promote justice, and lower recidivism rates in the State.

> ### 6. Texas Law is Silent Over Whether District Attorneys Can Hold and Use Property in their Own Name

No mention is made in any statute regarding the ability of district attorneys in Texas to hold property in their own name or otherwise. Absent any contrary legal authority, this final _Clark_ factor is neutral.

In summary, after weighing the _Clark_ factors, District Attorney Hicks is a state official. The laws of the State of Texas view district attorneys as state officials. Their funding and most of their salaries derive from the State. District attorneys are bound to judicial district—not county—lines in elections. As prosecuting officers, district attorneys are concerned with the prosecution of state—not local—laws and represent the State of Texas in all criminal

proceedings. Because all *Clark* factors side in favor of District Attorney Hicks, the Court should find that the district court erred in failing to find that he is a state official entitled to sovereign immunity under the Eleventh Amendment.[1]

## B. ALTHOUGH DISTRICT ATTORNEY HICKS IS A STATE OFFICIAL, *EX PARTE YOUNG* DOES NOT APPLY TO HIM

Even though he is a state official, District Attorney Hicks is not subject to the sovereign immunity exception under *Ex parte Young*. "When the suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). The Eleventh Amendment bars a suit against state officials

---

[1] The district court also mistakenly relied on this Court's holding in *National Press Photographers Association v. McCraw*, 90 F.4th 770, 787 (5th Cir. 2024), finding that "Texas district attorneys are not protected by the Eleventh Amendment precisely because they are county officials, not state officials." (ROA.24-50149.499). The district court's reliance on *McCraw* is misplaced. This Court found that the Hays County District Attorney was a county—not state—official without sovereign immunity protection. *Id.* However, the only reason why this Court refused to recognize the Hays County District Attorney as a state official was because he **"[did] not otherwise argue [that the six factors in *Clark v. Tarrant County*, 798 F.2d 736 (5th Cir. 1986)] support his position that he is protected by the Eleventh Amendment."** *Id.* (emphasis added). Indeed, this Court recognized that it had previously held that "a district attorney's entitlement to Eleventh Amendment immunity may depend on whether he or she is performing in a local or state capacity" or satisfies the six-factor test in *Clark*. *Id.* However, because the district attorney did not raise this issue in *McCraw*, this Court did not consider whether he performed in a state capacity to garner sovereign immunity protection under the Eleventh Amendment. *Id.* For this overarching reason, the district court's reliance on *McCraw* was erroneous.

when "the state is the real, substantial party in interest." *Ford Motor Co. v. Dept.*

*of Treasury*, 323 U.S. 459, 464 (1945). Thus, "[t]he general rule is that relief

sought nominally against an officer is in fact against the sovereign if the decree

would operate against the latter." *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per

curiam ). "And, as when the State itself is named as the defendant, a suit against

state officials that is in fact a suit against a State is barred regardless of whether

it seeks damages or injunctive relief." *Halderman*, 465 U.S. at 102 (citing *Cory v.*

*White*, 457 U.S. 85, 91 (1982)).

However, under *Ex parte Young*, suits for injunctive or declaratory relief

are allowed against a state official acting in violation of federal law *if* there is a

"sufficient 'connection' to enforcing an allegedly unconstitutional law." *In re*

*Abbott*, 956 F.3d 696, 708 (5th Cir. 2020). However, as noted in *Texas Democratic*

*Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020), "[t]his circuit has not spoken

with conviction about all relevant details of the 'connection' requirement." *Id.*

"An en banc plurality of this court explained that the officers [must] have 'some

connection with the enforcement of the act' in question or be 'specially charged

with the duty to enforce the statute' and be threatening to exercise that duty."

*Id.* (quoting *Okpalobi v. Foster*, 244 F.3d 405, 414-15 (5th Cir. 2001) (en banc)

(plurality op.). "Without a majority, no controlling precedent was made." *Id.*;

*see also K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (declining to "resolve

whether *Ex parte Young* requires only 'some connection' or a 'special relationship' between the state actor and the challenged statute" because the defendant fell within the exception under either standard).

"Although the precise scope of the requirement for a connection has not been defined, the plaintiff at least must show the defendant has 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Abbott*, 978 F.3d at 179 (citing *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (internal quotation marks omitted)). That means the official must be "statutorily tasked with enforcing the challenged law." *In re Abbott*, 956 F.3d at 709. Enforcement typically means "compulsion or constraint." *K.P.*, 627 F.3d at 124. District Attorney Hicks is not subject to the *Ex parte Young* exception.

District Attorney Hicks does not have a "sufficient connection" with enforcing SB4. *In re Abbott*, 956 F.3d at 708. Despite his prosecutorial role, he is not "specially charged with the *duty* to enforce" SB4. *Abbott*, 978 F.3d at 179 (emphasis added). More importantly, the record is devoid of any evidence suggesting that District Attorney Hicks has threatened to enforce or prosecute any prospective defendant under SB4. Indeed, the complaint filed by El Paso County and the Organizational Plaintiffs alleges that Steven C. McCraw, the Director of the Texas Department of Public Safety "has stated that DPS will

enforce S.B.4." **However, no such allegation is made against District Attorney Hicks.** Appellees' motions for preliminary injunction and their exhibits are equally silent. El Paso County and the Organizational Plaintiffs must show that District Attorney Hicks has "a demonstrated willingness to exercise" his prosecutorial discretion to enforce SB4, but they have failed to do so. *See Abbott*, 978 F.3d at 179. In light of this failure, they cannot satisfy their burden of proof to show an actual or imminent injury caused by District Attorney Hicks for injunctive relief.

As a prosecutor, District Attorney Hicks has prosecutorial discretion to decline to prosecute SB4 cases. Texas district attorneys cannot be compelled by any other branch of government to determine which cases to prosecute. Their prosecutorial discretion is safeguarded by the separation-of-powers doctrine under the Texas Constitution. *See, e.g.*, *Baker v. Wade*, 743 F.2d 236, 242 & n.28 (5th Cir. 1984) ("The laws of Texas vest in district and county attorneys the **exclusive** responsibility and control of criminal prosecutions and certain other types of proceedings.") (emphasis added); *see also* TEX. CONST. art. 2, § 1 (separation of powers doctrine). "An obvious corollary to a district or county attorney's duty to prosecute criminal cases is the utilization of his own discretion in the preparation of those cases for trial." *See, e.g.*, *Meshell v. State*, 739 S.W.2d 246, 254-55 (Tex. Crim. App. 1987). Importantly, "under the separation of

powers doctrine, the Legislature may not remove or abridge a district or county attorney's exclusive prosecutorial function, unless authorized by an express constitutional provision." *Id.* Absent the prosecution of SB4 cases, El Paso County and the Organizational Plaintiffs will not be constrained or compelled by any act or omission of District Attorney Hicks in connection with SB4.

Of note, this Court has repeatedly recognized that Texas district attorneys are shielded by Eleventh Amendment immunity in their exercise of prosecutorial discretion as state officials. Indeed, "Texas law makes clear . . . that when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted." *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997). This Court has "stated on numerous occasions that district attorneys and assistant district attorneys in Texas are agents of the state when acting in their prosecutorial capacities." *See, e.g.*, *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009) (collecting cases); *see Spikes v. Phelps*, 131 F. App'x 47, 49 n.1 (5th Cir. 2005) ("Texas district attorneys are shielded by Eleventh Amendment immunity for acts performed as state officers in the scope of criminal prosecution[.]"); *see also Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009) ("District attorneys . . . in Texas are agents of the state when acting in their prosecutorial capacities."). Prosecutors are likewise immune for all actions "intimately associated with the

judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see Cousin v. Small*, 325 F.3d 627, 631 (5th Cir. 2003); *see also Haddix v. Texas*, 448 F. App'x 498, 499 (5th Cir. 2011). Because there is no showing that District Attorney Hicks has a demonstrated willingness to exercise his prosecutorial discretion to enforce SB4, he is entitled to sovereign immunity under the Eleventh Amendment. *See Abbott*, 978 F.3d at 179. Accordingly, the Court should reverse the district court's order and dismiss District Attorney Hicks as a party to this case.

## II.  EL PASO COUNTY AND THE ORGANIZATIONAL PLAINTIFFS LACK STANDING

If the Court finds, as it should, that District Attorney Hicks is entitled to sovereign immunity as a state official under the Eleventh Amendment, the Court need not go any further. It should simply reverse the district court's order and dismiss District Attorney Hicks as a party. However, if the Court determines that he is not protected by sovereign immunity, this Court should still reverse the district court's order and dismiss District Attorney Hicks because El Paso County and the Organizational Plaintiffs lack standing to bring this case.

### A.  EL PASO COUNTY LACKS STANDING TO ASSERT A CLAIM FOR INJUNCTIVE RELIEF AGAINST DISTRICT ATTORNEY HICKS

Article III of the United States Constitution limits a federal court's judicial power to adjudicate only genuine "Cases" and "Controversies." U.S. CONST.

art. III, § 2, cl. 1; *see McCraw*, 90 F.4th at 781. The "case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). The fundamental inquiry is "whether the conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, *not hypothetical or abstract*." *McCraw*, 90 F.4th at 781 (emphasis added).

To invoke a federal court's jurisdiction, plaintiffs must establish three irreducible elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. The party invoking federal jurisdiction bears the burden of establishing these elements and must demonstrate standing for each claim asserted. *See McCraw*, 90 F.4th at 781; *see also FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). The elements of standing are "not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Thus, each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id*.

### 1. El Paso County Failed to Establish an Injury-in-fact That is Fairly Traceable to District Attorney Hicks

The district court found that "El Paso County does not need to predict the number of arrests with pressing exactitude" because the "inquiry is whether the additional costs amount to more than an "identifiable trifle." (ROA.24-50149.498). However, the inquiry does end there. The Fifth Circuit also requires that the alleged injury be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical" injury to pass constitutional muster. *Id.* Moreover, when the suit is a challenge to the legality of government action or inaction, the Supreme Court has expounded that standing is considerably contingent upon whether the plaintiff is an object of the action or inaction at issue. *Lujan*, 504 U.S. at 562. As a result, "when the plaintiff is not himself the object of the government action or inaction he challenges, *standing is not precluded, but it is ordinarily 'substantially more difficult' to establish.*" *Id.* (emphasis added). The district court neglected to apply the foregoing principles in its assessment of the standing of El Paso County.

El Paso County alleges SB4 will harm its "strategic vision" of serving its constituency by fostering inclusion and quality of life for local immigrants and refugees and programs created by El Paso County, including the Office of New Americans (ONA) and a migrant support services center. (ROA.24-50149.806-

07). El Paso County claims ONA will be required to develop new materials and resources to advise individuals of their rights under SB4 and its impact on them and will interfere with the operation of the migrant support service center because those who would be assisted through the center *might* be subjected to criminal prosecution and removal. (ROA.24-50149.806-07). According to El Paso County, SB4 will also frustrate its goal of justice reform by forcing it to incarcerate those who may not be a high risk to public safety. (ROA.24-50149.808). Lastly, because it funds and manages legal services to families who rely on public trust, El Paso County claims that SB4 "directly frustrates these efforts . . . by *diluting the trust* the El Paso County community has in its local government[.]" (ROA.24-50149.808).

The injuries asserted by El Paso County lack the necessary elements to establish a cognizable injury. For an injury to be "concrete," it cannot be "abstract," but "must actually exist." *Spokeo*, 578 U.S. at 338. The claimed injuries of a harmed strategic vision and the dilution of community trust do not constitute more than mere setbacks to El Paso County's abstract social interests. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (distinguishing injury to an "organization's activities" from "simply a setback to the organization's abstract social interests"). The subjective sentiments of the El Paso County community, a third party, do not confer a cognizable injury. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

418 (2013) (recognizing that the subjective fear of third parties does not give rise to standing).

Regarding El Paso County's alleged injury related to the creation of new materials and resources to inform individuals about their rights under SB4, it has been held that the "[f]rustration of an organization's objectives is the type of abstract concern that does not impart standing." *Nat'l Treasury Emps. Union*, 101 F.3d 1423, 1429 (D.C. Cir. 1996) (quotation omitted). El Paso County's claim that ONA will be required to develop new materials and resources to advise individuals of their rights under SB4 does not frustrate the purpose of the program; it merely requires adjustments that do not interfere with the purpose of the program. The passage of new laws often prompt adjustments in an organization's strategic approach to effectively fulfill its purpose. To construe any adaptation an organization takes in its strategic approach as a cognizable injury would effectively allow any plaintiff, with little effort, to have standing.

Adjustments in an organization's strategic approach to effectively fulfill its purpose do not amount to being at "loggerheads with the stated mission of the plaintiff" and therefore, do not constitute cognizable injuries. *Id.* It is well established that an injury to a plaintiff's principles is only an abstract harm and is insufficient to provide a basis for standing. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982) ("[S]tanding

is not measured by the intensity of the litigant's interest or the fervor of his advocacy."); *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) (explaining that "a mere 'interest in a problem,' no matter how longstanding the interest . . . is not sufficient" to confer standing). These are simply "setback[s] 'to the organization's abstract social interests'" that do not rise to the level to demonstrate a cognizable injury.[2] *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 361 (5th Cir. 1999).

El Paso County further fails to satisfy its Article III burden because the harm it alleges is too speculative and does not constitute a cognizable injury in fact. El Paso County contends that it will be compelled to allocate its limited resources towards the execution of SB4, asserting, that "upon information and belief," it

---

[2] Precedent also firmly establishes that local governments lack standing to sue their parent States. S*ee, e.g.*, *City of Trenton v. New Jersey*, 262 U.S. 182, 188 (1923); *Town of Ball v. Rapides Par. Police Jury*, 746 F.2d 1049, 1051 n.1 (5th Cir. 1984). For example, in *Rogers v. Brockette*, this Court recognized, at most, a narrow exception for claims under the Supremacy Clause vindicating a federally created statutory right, but El Paso County does not fit within that carve out. 588 F.2d 1057 (5th Cir. 1979). There, a school district "allege[d] that Congress [] made it the proper body to decide" certain questions under the federal breakfast program but that the State had deprived the school district of that federally conferred discretion. *Id.* at 1062. Here, in contrast, there is no claim that Congress "interfere[d] with a state's internal political organization" to create a federal statutory right, which Texas law then undermined. *Id.* at 1070. To the contrary, the heart of Organizational Plaintiffs' argument is that SB4 interferes with the discretion of federal immigration officers—not that of local officials.

"could*"* see an additional 8,000 arrests annually, requiring the accommodation of these individuals within its correctional facilities. (ROA.24-50149.806-07).

The affidavit of Melissa Carrillo, an Executive Director of Operations in El Paso County, suggests that the adjudicative ramifications of an "additional 8,000 prosecutions . . . *could* cost approximately $5 million per year based on $700 per case." However, the purported valuation of $700 per case lacks substantiation, and the equation of 8,000 arrests to 8,000 prosecutions renders the estimated $5 million annual expenditure unreliable.

Similarly, Carillo's assertion that "an increase of 8,000 cases per year would likely create a budget shortfall for the Public Defender's Office" is unfounded and unreliable, as nothing in SB4 mandates that every arrest will culminate in prosecution. (ROA.24-50149.959). Indeed, the Complaint is devoid of any allegation that District Attorney Hicks will, indeed, prosecute cases under SB4. El Paso County bases its claimed injuries from an estimate the Director of the Texas Department of Public Safety, Steven McCraw, provided during the House State Affairs Committee. The declaration provides that "[b]ased on that *general estimate*, El Paso County estimates there may be over 8,000 additional arrests under SB4 in the El Paso area." (ROA.24-50149-959-60). Yet again, these speculative figures are not based on any representation or

commitment made by District Attorney Hicks to prosecute SB4 cases. Any alleged injury caused by SB4 is not traceable to District Attorney Hicks.

In any case, SB4 has not taken effect and El Paso County's speculative injuries are premised on scenarios that may not even occur after enforcement of the law, especially if there is no widespread prosecution of these cases. For example, Castillo's assertions regarding the anticipated repercussions of heightened prosecutions are founded on speculative assumptions. The purported impacts, including an estimated reduction in federal revenue by approximately $20 million, increased expenditures for law enforcement training contingent upon crime escalation, elevated medical healthcare and judicial costs, and the projected need for an additional 400 jail beds at an estimated cost of $162 million, are premised solely on unsubstantiated claims. (ROA.24-50149.807-08). Notably, the reliance on an unspecified "most recent study completed in 2019" to calculate jail costs underscores the speculative nature of these projections. (ROA.24-50149.961). In all, there is no certainty that El Paso County's claimed injuries may occur. Because they are premised on speculation and are not impending, they are not sufficient to confer Article III standing. *See Bruni v. Hughs*, 468 F. Supp. 3d 817, 824 (S.D. Tex. 2020) ("Plaintiffs' alleged injuries fail to satisfy the imminence requirement of Article III because they are

premised on numerous predicted "effects" of HB 25 which are uncertain to occur.) (internal citations omitted). This is not enough.

El Paso County contends it will amass "nearly $24 million per year in additional costs" due to the "anticipated arrests" and predicts a need to allocate an additional $162 million for the construction of supplementary jail and bed space. (ROA.24-50149.808). El Paso County further alleges that SB4 will necessitate the collection of biometric data, training for peace officers funded by El Paso County, and funding for the legal defense of any county official sued under federal law for implementing SB4, all of which would incur additional expenses. (ROA.24-50149.808). The injuries claimed, however, would result only from a chain of events—the implementation of SB4, assessing the outcome of the implementation of SB4 as it unfolds, determining whether the occurrence of each of the claimed necessities is in fact, necessary, then, the occurrence of the injury as a result thereof. *See Bruni*, 468 F. Supp. 3d at 824 (emphasizing that "at times, a chain of events can be too remote to support a claim of standing."). If these "stars do not align," then El Paso County will not sustain the injury it predicts will occur with SB4. Absent concrete, reliable evidence, El Paso County has not shown that its alleged injury is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Fowler*, 178 F.3d at 358.

The district court further neglected to address whether these claimed injuries are traceable to District Attorney Hicks. Although District Attorney Hicks "represents the state in all criminal cases pending in the inferior courts having jurisdiction in El Paso County," District Attorney Hicks did not himself pass SB4, has not prosecuted a single violation of SB4, and has not expressed a willingness to do so. TEX. GOV'T CODE ANN. § 43.120(c). There is nothing in the record to confirm that District Attorney Hicks, who maintains prosecutorial discretion, would prosecute violations of SB4. *See e.g.*, *Renne v. Geary*, 501 U.S. 312, 321 (1991) (finding no injury because the party had not shown that it wished to endorse any particular candidate in the past—the proscribed conduct of the challenged law).

District Attorney Hicks, like every Texas district attorney, has prosecutorial discretion and is not obliged to prosecute SB4 cases. Based on the evidence, he can select which, if any, SB4 cases he will prosecute in El Paso County. **It is worth repeating: El Paso County has neither alleged in its Complaint or motion for preliminary injunction nor proven that District Attorney Hicks will actually enforce and prosecute cases under SB4.** Texas district attorneys cannot be compelled by any other branch of government to determine which cases to prosecute. As previously noted, their prosecutorial discretion is safeguarded by the separation-of-powers doctrine under the Texas

Constitution.  *See, e.g.*, *Baker v. Wade*, 743 F.2d 236, 242 & n.28 (5th Cir. 1984) ("The laws of Texas vest in district and county attorneys the **exclusive** responsibility and control of criminal prosecutions and certain other types of proceedings.") (emphasis added); *see also* TEX. CONST. art. 2, § 1 (separation of powers doctrine).  The Legislature may not remove or abridge a district or county attorney's exclusive prosecutorial function, unless authorized by an express constitutional provision."  *Id.*  None is found in the Texas Constitution as it pertains to SB4.  Absent the prosecution of SB4 cases, El Paso County and the Organizational Plaintiffs will not be constrained or compelled by any act or omission of District Attorney Hicks in connection with SB4.  For these reasons, El Paso County has failed to satisfy a cognizable injury in fact that is fairly traceable to District Attorney Hicks.

> **a.** *El Paso County also Fails to Satisfy the Test for a Pre-enforcement Challenge*

To the extent El Paso County claims a pre-enforcement challenge, this claim also fails. The Supreme Court has recognized that threatened enforcement of a law may create an Article III injury.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).  However, the threatened enforcement must be sufficiently imminent and must be directly enforced against the plaintiff.  *See id*.  In pre-enforcement challenges, a plaintiff must show "an intention to engage in a

course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id*. at 160 (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)).

The injury must nevertheless be direct and, here, El Paso County cannot show, and has not shown, that its intended conduct is affected by a constitutional interest or that its intended conduct would arguably be proscribed by SB4. El Paso County is undisputedly not the object of SB4—SB4 will not be enforced against El Paso County, and El Paso County will not engage, and has not alleged it will engage, in any conduct that warrants a violation of SB4. All of El Paso County's alleged injuries pertain solely to the *suspected effects* of SB4, which do not implicate any constitutional interests. Because El Paso County has not alleged an intention to engage in conduct that is violative of SB4, and it is undisputed that SB4 will have no direct injury that would implicate any constitutional interests on El Paso County, it follows that El Paso County further lacks standing in a pre-enforcement challenge.

### 2. *El Paso County has Failed to Establish that a Favorable Decision will Remedy an Alleged Injury*

To satisfy the redressability requirement, a plaintiff must demonstrate that a favorable decision will likely remedy the alleged injury. *Lujan*, 504 U.S. at

560-61. The potential remedy must redress the specific injury alleged. *See California v. Texas*, 141 S. Ct. 2104, 2115–16 (2021) ("To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984))). Here, examining the relationship between the judicial relief requested and the claimed injury, it is undisputed that the claimed injury by El Paso County is indirect. The relief must remedy the plaintiff's injury, *not* an injury suffered by *another person*. *Warth*, 422 U.S. at 499 (explaining that judicial power "exists only to redress or otherwise to protect against injury to the complaining party"). Claims of indirect injury cannot satisfy either the injury in fact *or redressability* requirements of Article III standing. *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013) ("Article III standing 'is not to be placed in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests.'" (quoting *Diamond v. Charles*, 476 U.S. 54, 62 (1986)). Thus, El Paso County cannot satisfy the redressability requirement.

In sum, El Paso County has not sufficiently alleged a plausible set of facts to establish that it has suffered an injury in fact *caused by* District Attorney Hicks that is likely to be redressed by a favorable judicial decision. The district court failed to conduct an analysis of all three elements and did not apply the appropriate standard established by the Supreme Court. Each element must be

met to establish standing, as failure to satisfy any of the elements warrants dismissal by federal courts. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). The district court's finding that El Paso County possesses standing, based solely on the element of injury, was therefore erroneous. Accordingly, because it failed to adhere to the proper standard, the district court erred in finding that El Paso County had standing to sue District Attorney Hicks.

## B. THE ORGANIZATIONAL PLAINTIFFS EQUALLY FALL SHORT OF DEMONSTRATING STANDING

The Organizational Plaintiffs' claims against District Attorney Hicks are jurisdictionally barred. *See, e.g.*, *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329 (5th Cir. 2020) ("A preliminary injunction, like final relief, cannot be requested by a plaintiff who lacks standing to sue."); *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 964 (5th Cir. 2014) (reversing grant of preliminary injunction when the State defendants were immune and *Ex parte Young* did not apply).

None of the Organizational Plaintiffs has made a clear showing that they have the standing necessary to maintain a preliminary injunction.[3] Nonprofit

---

[3] The Organizational Plaintiffs do not have a private cause of action for any of their claims against District Attorney Hicks. As noted above, "the Supremacy Clause is not the source of any federal rights" and "certainly does not create a cause of action" either expressly or by implication, and "is silent regarding who may enforce federal

Plaintiffs do not describe themselves as having members; they therefore rely exclusively on organizational standing—not associational standing. Because this is a facial pre-enforcement challenge, the Organizational Plaintiffs must show an imminent judicially cognizable injury. In other words, they must show an "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [law], and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 158–59 (internal quotation omitted).

The Organizational Plaintiffs describe themselves as non-profit organizations dedicated to providing legal services to immigrants. Neither has established that SB4 inflicts a cognizable harm on them sufficient to confer standing. To start with, the Organizational Plaintiffs are not "the object of the government action or inaction [they] challenge[]," making it "substantially more difficult to establish" an injury in-fact. *Lujan*, 504 U.S. at 562 (quotation

---

laws in court, and in what circumstances they may do so." *Armstrong*, 575 U.S. at 324-25 (holding there is no private cause of action to enforce the Supremacy Clause). Rather, "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Organizational Plaintiffs fail to identify a statute that contains any "'rights-creating' language" permitting their suit. *Id.* at 288. They therefore have no cause of action to enforce the supremacy of federal law against District Attorney Hicks. *See, e.g.*, *United States v. Texas*, No. 21-CV-173, 2022 WL 868717, at *5 (W.D. Tex. Feb. 17, 2022) (finding immigration groups lacked standing on this basis when challenging Texas immigration policy under Supremacy Clause).

omitted). Instead, they argue that SB4's effects on third parties not before this court will force them to divert resources from their routine activities.

However, as previously explained, though the diversion of resources can constitute a requisite injury under certain circumstances, "[n]ot every diversion of resources to counteract [a] defendant's conduct . . . establishes an injury in fact." *City of Kyle*, 626 F.3d at 238. "The change in plans must still be in response to a reasonably certain injury imposed by the challenged law." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018). Here, the Organizational Plaintiffs bring their claim pursuant to the Supremacy Clause, which is not the source of any rights. Hence, none of the consequences they seek to avoid are affected with a constitutional interest or constitute an injury in-fact.

Moreover, the Organizational Plaintiffs' diversion of resource theory fails as it stems from voluntary strategic and budgetary choices. *See Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012). For example, the Organizational Plaintiffs argue that they will need to develop a new service program to assist people in state facilities, which could siphon funds from other projects. However, nothing in SB4 necessitates that Organizational Plaintiffs take this action. They can continue to maintain their current programs without interference. Their real objection is that, after the effective date of SB4, some number of individuals, not yet known, may find themselves in a state court proceeding that the two

organizations deem weighty enough to provide advice and representation. Many statutes can spur changes to an organization's strategy on how to best achieve its mission. But a "unilateral and uncompelled response to shifting needs of its [constituents] cannot manufacture an Article III injury." *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 238 (4th Cir. 2020).

Furthermore, the Organizational Plaintiffs further argue that both need to educate staff as well as members of the immigrant community about the new law. But the "self-serving observation that it has expended resources to educate its members and others regarding [the challenged law] does not present an injury in fact." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995). If standing were so broad, legal groups would have standing whenever a statute changed the law in their practice area. "To determine that an organization that decides to spend its money on educating members . . . suffers a cognizable injury would be to imply standing for organizations with merely 'abstract concern[s] with a subject that could be affected by an adjudication.'" *Lane*, 703 F.3d at 675 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976)). That is not the case.

It is also not clear "how the activities" the Organizational Plaintiffs plan to "undertake[] in response to the defendant's conduct differ from its 'routine [] activities.'" *Def. Distributed v. U.S. Dep't of State*, No. 1:15-cv-372, 2018 WL

3614221, at *4 (W.D. Tex. July 27, 2018) (quoting *City of Kyle*, 626 F.3d at 238). Prior to the enactment of SB4, the Organizational Plaintiffs already offered immigrants help navigating the immigration process. The services they intend to offer immigrants detained pursuant to SB4 represent more of the same, even if it occurs in a state, as opposed to federal, facility. Furthermore, the Organizational Plaintiffs affirm that "a central feature of their mission is to engage and educate immigrant communities." Informing their constituents about their rights under the law is part and parcel of the routine activities of the Organizational Plaintiffs. There is no drastic change. Because the district court found otherwise, this Court should reverse and dismiss this case against District Attorney Hicks for lack of standing.

## III. EL PASO COUNTY AND ORGANIZATIONAL PLAINTIFFS DO NOT HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Finally, the district court erred in finding that Appellees have a likelihood of success on the merits regarding the constitutionality of SB4.[4] SB4 is neither preempted by the Supremacy Clause nor stands in conflict with federal immigration laws. Absent a substantial likelihood of success, Appellees are not entitled to a preliminary injunction to enjoin the enforcement of SB4.

---

[4] District Attorney Hicks fully references, adopts, and hereby incorporates all arguments and briefing by the State of Texas in this appeal on the constitutionality of SB4 and Appellees' likelihood of success on the merits.

## CONCLUSION

Accordingly, for these reasons, Appellant Bill D. Hicks, in his official capacity as the District Attorney for the 34th Judicial District of Texas, respectfully requests the Court to reverse the district court's order granting preliminary injunction, dismiss all claims against him, award him costs and fees, and grant him any other relief, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

By: */s/ Francisco J. Ortega*
    **FRANCISCO J. ORTEGA**
    Texas Bar No. 24060365
    **SCOTTHULSE, P.C.**
    One San Jacinto Plaza, Suite 1100
    P.O. Box 99123
    El Paso, Texas  79999-9123
    (915) 533-2493
    (915) 546-8333 Telecopier

## CERTIFICATE OF SERVICE

I hereby certify that I filed this document electronically through the CM/ECF system, which caused all parties and/or counsel of record to be served by electronic means as more fully reflected on the Notice of Electronic Filing on this 13th day of March, 2024.

*/s/ Francisco J. Ortega*
**FRANCISCO J. ORTEGA**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B), because it contains 10,380 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Calisto MT font.  This certificate is made in compliance with FED. R. APP. P. 32(a)(7)(C).

*/s/ Francisco J. Ortega*
**FRANCISCO J. ORTEGA**