No. 24-50149

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STATE OF TEXAS; GREG ABBOTT IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; TEXAS DEPARTMENT OF PUBLIC SAFETY; STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF TEXAS DEPARTMENT OF PUBLIC SAFETY,

*Defendants-Appellants.*

LAS AMERICAS IMMIGRANT ADVOCACY CENTER; AMERICAN GATEWAYS; COUNTY OF EL PASO, TEXAS,

*Plaintiffs-Appellees,*

*v.*

STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF TEXAS DEPARTMENT OF PUBLIC SAFETY; BILL D. HICKS, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR THE 34TH DISTRICT,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
No. 1:24-CV-8-DAE (lead case)
No. 1:23-CV-1537-DAE (consolidated case)

## REPLY BRIEF OF APPELLANT BILL HICKS

**FRANCISCO J. ORTEGA**
Texas Bar No. 24060365
**SCOTTHULSE, P.C.**
One San Jacinto Plaza
201 E. Main Drive, Suite 1100
El Paso, Texas  79901
(915) 533-2493
(915) 546-8333 Telecopier
Attorney for Appellant Bill Hicks

## <u>TABLE OF CONTENTS</u>

**ARGUMENT** ............................................................. 1

**I.    BILL HICKS IS A STATE OFFICIAL ENTITLED TO IMMUNITY UNDER THE ELEVENTH AMENDMENT** .................................... 1

    **A.    THE DISTRICT COURT ERRED IN FAILING TO APPLY THE *CLARK* TEST TO DETERMINE THAT DISTRICT ATTORNEY HICKS IS A STATE OFFICIAL IMMUNE UNDER THE ELEVENTH AMENDMENT** .. 7

    **B.    THE *EX PARTE YOUNG* EXCEPTION TO IMMUNITY PROTECTION DOES NOT APPLY TO DISTRICT ATTORNEY HICKS** ..................... 11

**II.    ALTERNATIVELY, EVEN IF BILL HICKS IS NOT IMMUNE UNDER THE ELEVENTH AMENDMENT, APPELLEES LACK STANDING** .................................................................... 17

    **A.    APPELLEES FURTHER LACK STANDING BECAUSE THEIR ALLEGED INJURIES DO NOT JUSTIFY PRE-ENFORCEMENT REVIEW** .......... 20

**CONCLUSION** ......................................................... 24

**CERTIFICATE OF SERVICE** ..................................... 25

**CERTIFICATE OF COMPLIANCE** ............................... 26

# TABLE OF AUTHORITIES

## CASES

*Arnone v. Dall. Cty.*,
  29 F.4th 262 (5th Cir. 2022) ....................................................... 8

*Ass'n of Cmty. Orgs for Reform Now v. Fowler*,
  178 F.3d 350 (5th Cir. 1999) ..................................................18-19

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) ..................................................... 20, 22-23

*Biden v. Nebraska*,
  143 S. Ct. 2355 (2023)................................................................ 20

*Bruni v. Hughs*,
  468 F. Supp. 3d 817 (S.D. Tex. 2020) ...................................... 18

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) ..................................................... 17

*Clark v. Tarrant Cty.*,
  798 F.3d 736 (5th Cir. 1986) ..........................................*passim*

*Crane v. Texas*,
  759 F.2d 412 (5th Cir. 1985) ................................................. 1-3

*Crane v. Texas*,
  766 F.2d 193 (5th Cir. 1985) (per curiam) .........................1, 3, 7

*Daves v. Dallas Cty., Tex.*,
  22 F.4th 522 (5th Cir. 2022) (en banc) ...............................*passim*

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ................................................................. 20

*Diamond v. Charles*,
  476 U.S. 54 (1986)..................................................................... 24

*Ga. Latino All. for Hum. Rts. v. Governor of Ga.*,
  691 F.3d 1250 (11th Cir. 2012)............................................... 20

*Hollingsworth v. Perry,*
    570 U.S. 693 (2013) .................................................................. 24

*Hudson v. City of New Orleans,*
    174 F.3d 677 (5th Cir. 1999) ...................................................... 6

*In re Abbott,*
    956 F.3d 696 (5th Cir. 2020) ....................................... 11-13, 15

*Jackson v. Wright,*
    82 F.4th 362 (5th Cir. 2022) ....................................... 14-15, 17

*Jett v. Dallas Indep. Sch. Dist.,*
    491 U.S. 701 (1989) ................................................................... 5

*K.P. v. LeBlanc,*
    627 F.3d 115 (5th Cir. 2010) .............................................. 11-12

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ............................................................ 18-19

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978) ................................................................... 4

*Morris v. Livingston,*
    739 F.3d 740 (5th Cir. 2014) ..................................... 12, 14-15

*Nat'l Press Photographers Ass'n v. McCraw,*
    90 F.4th 770 (5th Cir. 2024) ..................................................... 8

*Okpalobi v. Foster,*
    244 F.3d 405 (5th Cir. 2001) (en banc)................................... 11

*Seals v. McBee,*
    898 F.3d 587 (5th Cir. 2018) ................................................... 23

*Shelby Cty., Ala. v. Holder,*
    570 U.S. 529 (2013) ................................................................. 20

*Sierra Club v. Morton,*
    405 U.S. 727 (1972) ................................................................. 20

*Steffel v. Thompson*,
   415 U.S. 452 (1974) ............................................................21-23

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
   37 F.4th 1078 (5th Cir. 2022) ........................................... 17

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ...................................................... 20-21, 23

*Tenth St. Residential Ass'n v. City of Dallas, Tex.*,
   968 F.3d 492 (5th Cir. 2020) ............................................. 19

*Tex. Alliance for Retired Americans v. Scott*,
   28 F.4th 669 (5th Cir. 2022) ............................................... 8

*Tex. Democratic Party v. Abbott*,
   978 F.3d 168 (5th Cir. 2020) ........................................*passim*

*United States v. Tex.*,
   No. 1:24-CV-8-DAE, 2024 WL 861526 (W.D. Tex. Feb. 29,
   2024) ................................................................................. 8

*Will v. Mich. Dep't of State Police*,
   491 U.S. 58 (1989) ............................................................. 5

## RULES

FED. R. APP. P. 32(a)(5) ....................................................... 26

FED. R. APP. P.  32(a)(6) ....................................................... 26

FED. R. APP. P. 32(a)(7)(B) .................................................. 26

FED. R. APP. P. 32(a)(7)(B)(iii) ............................................ 26

FED. R. APP. P. 32(a)(7)(C) .................................................. 26

## STATUTES

42 U.S.C. § 1983 ..........................................................*passim*

TEX. CODE CRIM. PROC ANN. art. 2.01 ................................. 10

TEX. CODE CRIM. PROC. ANN. arts. 2.024(a)(1), 2.07(d)................ 9

iv

TEX. GOV'T CODE ANN. § 41.006 ................................................................ 10

TEX. GOV'T CODE ANN. § 41.010 .................................................................. 9

TEX. GOV'T CODE ANN. § 41.013(a)-(b) ...................................................... 10

TEX. GOV'T CODE ANN. § 41.015(a) .............................................................. 9

TEX. GOV'T CODE ANN. § 43.002(a)-(b) ........................................................ 9

TEX. GOV'T CODE ANN. § 43.120(a)-(c) ...................................................... 15

**OTHER AUTHORITIES**

TEX. CONST. art. V, § 21 ......................................................................... 9-10

## **ARGUMENT**

## I.    BILL HICKS IS A STATE OFFICIAL ENTITLED TO IMMUNITY UNDER THE ELEVENTH AMENDMENT

In their Response, Appellees maintain that District Attorney Hicks is not entitled to immunity under the Eleventh Amendment because he is a county— not state—official.  (Apps. Br. p.23).  Relying on *Crane v. Texas*, 766 F.2d 193 (5th Cir. 1985) (per curiam), Appellees contend that this Court has previously held that "a Texas district attorney is properly viewed as a county official" not protected by the Eleventh Amendment.  (*Id.*) (quoting *Crane*, 766 F.2d at 194-95).  However, Appellees' reading of *Crane* is completely out of context.  Contrary to their interpretation, the precedential value of *Crane* is limited only to whether a Texas district attorney is a county official in **Section 1983 cases**.  *Id.*  "Whether state sovereign immunity [under] the Eleventh Amendment applies to bar suit," as here, "and whether an official is acting for the state and thus exempt from suit under Section 1983 involve **different analyses**."  *See, e.g.*, *Daves v. Dallas County, Texas*, 22 F.4th 522, 532 (5th Cir. 2022) (en banc) (emphasis added).  Because Appellees did not file suit under Section 1983, *Crane* is inapplicable.

In *Crane*, the plaintiffs brought a class action lawsuit against, among others, the Dallas County District Attorney under 42 U.S.C. § 1983.  *Crane v. Texas*, 759 F.2d 412, 413 (5th Cir. 1985).  Primarily, the plaintiffs complained

1

that Dallas County issued misdemeanor capias without a finding of probable cause by a neutral magistrate in violation of the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution. *Id.* The trial court agreed with the plaintiffs, finding that this misdemeanor capias practice violated the law. *Id.* As a result, the jury awarded monetary damages against Dallas County and the District Attorney. *Id.* However, the trial court determined that these damages should be paid by "the State of Texas because defendants were 'wearing their state hats' when they performed the acts complained of." *Id.* at 414. According to the trial court, "[t]he District Attorney was immune from liability for damages because he was primarily responsible to the State and breached no duty he owed to the County." *Id.* This Court disagreed.

As a preliminary matter, Section 1983 liability applies to municipalities, counties, and other local governmental bodies. But it does not extend to states or their officials. *Crane*, 759 F.2d at 427 (finding that "[t]he Eleventh Amendment . . . bars a private suit for damages brought under [Section] 1983 against a state official"). On appeal, this Court determined that the District Attorney was a county official subject to Section 1983 liability because "he selected the means by which [Dallas] County was to [use the] capias system." *Id.* at 430. His choice of an unconstitutional capias system "represent[ed] County policy for which the County [should be] liable." *Id.* Because the District

2

Attorney created this system and controlled it for Dallas County, this Court reversed the trial court's order and found that the District Attorney was a county official subject to liability under Section 1983. *Id.* at 431.

On rehearing, Dallas County argued that Section 1983 did not apply to the District Attorney because he was an officer of the State of Texas, not of the county in which he serves. *Crane v. Texas*, 766 F.2d 193, 194 (5th Cir. 1985) (per curiam). Acknowledging that this "point [was] a nice one and fairly debatable," this Court, nevertheless, concluded that the District Attorney should be "properly viewed as a county official." *Id.* Appellees, here, rely on this finding on rehearing in support of their claim that District Attorney Hicks is a county official not entitled to Eleventh Amendment immunity. Yet, this Court's holding in *Crane* that Texas district attorneys are county officials is limited only to Section 1983 cases. Indeed, following its decision in *Crane*, this Court recognized in *Daves v. Dall. Cty., Tex.*, 22 F.4th 522 (5th Cir. 2022) (en banc), that there are different tests to determine whether an actor is a county official under Section 1983 versus a state official under the Eleventh Amendment.

In *Daves*, a class of plaintiffs challenged the bail system in Dallas County, Texas. *Id.* at 527. They filed suit against Dallas County; the sheriff; and several district, county, and magistrate judges under Section 1983, claiming that indigent arrestees in Dallas County were jailed without sufficient procedural safeguards

in violation of the Fourteenth Amendment of the U.S. Constitution. *Id.* at 529. Among other points, Dallas County, the sheriff, and the judges argued that none of them were county policymakers to give rise to municipal liability under Section 1983. *Id.* However, without addressing these issues, the trial court opted instead to enter a preliminary injunction to address Dallas County's suspect bail system. *Id.* at 527. On appeal, after a panel of this Court made certain revisions to the preliminary injunction, it ultimately decided to hear the case *en banc*. *Id.*

At the outset, this Court endeavored to resolve the jurisdictional questions left unaddressed by the trial court before reaching the merits of the case. *Id.* at 531. In doing so, it considered appropriate to analyze whether any of the defendant officials were acting on behalf of Dallas County. *Id.* "If none of them were, then there [would be] no subject-matter jurisdiction under Section 1983 against [Dallas] County, as it is only through the actions of these defendant officials that [Dallas] County itself could be liable to the [p]laintiffs." *Id.*

In undertaking this analysis, this Court recognized that Section 1983 allows suits for violations of federal rights committed by, among others, municipalities, counties, and certain other local governmental bodies and officials. *Id.* at 531 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.54 (1978). "Suit may properly be brought against 'those officials or governmental bodies who speak with final policymaking authority for the local governmental

actor concerning the . . . constitutional or statutory violation at issue.'" *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  However, states and their officials do not fall under the purview of Section 1983.  *Id.* (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Based on this distinction, this Court recognized that "[w]hether state sovereign immunity [under] the Eleventh Amendment applies to bar suit and whether an official is acting for the state and thus exempt from suit under Section 1983 involve **different analyses**." *Id.* at 532 (emphasis added).  Even though the case did not turn on Eleventh Amendment immunity, this Court considered it important in *Daves* to "contrast the analysis [it] would use for [Eleventh Amendment immunity] to that [it would] use in [its] Section 1983 inquiry."  *Id.* at 533.

As a starting point, this Court confirmed that, for Eleventh Amendment immunity purposes, courts must apply the following factors pronounced in *Clark v. Tarrant Cty.*, 798 F.3d 736 (5th Cir. 1986), when deciding if a governmental body acts for the state:

1.   Whether the state statutes and case law view the agency as an arm of the state;

2.   The source of the entity's funding;

3.   The entity's degree of local autonomy;

4.   Whether the entity is concerned primarily with local as opposed to statewide problems;

5.      Whether the entity has the authority to sue and be sued in its own name; and

6.      Whether the entity has the right to hold and use property

*Id.* at 532-33.

After identifying the *Clark* factors as the proper test to determine whether an actor is immune as a state official under the Eleventh Amendment, this Court contrasted the test in Section 1983 cases.[1]  *Daves*, 22 F.4th at 533.  In Section 1983 cases, courts must consider whether "an official with final policymaking authority as to the specific function involved in the litigation is acting for a local governmental official."  *Id.*  That analysis will depend on "the official's **functions** under relevant state law;" whereas in Eleventh Amendment cases, the analysis depends on "**funding**."  *Id.* (emphasis added).  This Court emphasized that the inquiries in these two cases simply involved "**two different tests**."  *Id.* (emphasis added) (holding that "though [courts] look at the function of the officer being sued in [Section 1983 cases], we do not in our Eleventh Amendment analysis").  Ignoring the difference between these two tests, the district court below committed harmful error in failing to apply the *Clark* factors

---

[1] Thirteen years after its holding in *Clark*, this Court reaffirmed these six factors in *Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999).  *See Daves*, 22 F.4th at 533 (identifying "the six factors that would be concisely restated in *Hudson*").

to determine whether District Attorney Hicks is a state official immune under the Eleventh Amendment.

**A.    THE DISTRICT COURT ERRED IN FAILING TO APPLY THE *CLARK* TEST TO DETERMINE THAT DISTRICT ATTORNEY HICKS IS A STATE OFFICIAL IMMUNE UNDER THE ELEVENTH AMENDMENT**

As this Court stressed in *Daves*, Section 1983 and Eleventh Amendment cases involve two different tests.[2]  Here, Appellees heavily rely on *Crane* to claim that District Attorney Hicks is a county official; however, contrary to this case, *Crane* is a Section 1983 case.  *Crane*, 798 F.2d at 738.  As a Section 1983 case, *Crane* employed a different test to determine whether the Dallas District Attorney was a county official.  *See id*. But, as *Daves* emphasized, that test is completely different from the test that courts must employ to determine whether an actor, like District Attorney Hicks, is a state official immune under the Eleventh Amendment.  *See Daves*, 22 F.4th at 532-33.  Indeed, a cursory reading of *Crane* reveals that this Court did not consider the six-factor test in *Clark* *precisely* because it was a Section 1983 case.  *See generally Crane*, 798 F.2d at 738

---

[2] Indeed, Appellees concede this point in footnote 4 of their Response Brief. Citing *Daves*, Appellees acknowledge that a district attorney may be a state official in sovereign immunity analysis.  (*See* Apps. Br. p. 23 n.4).

(emphasis added). Instead, this Court should consider and apply the proper test under *Clark*.[3]

Just like Appellees, the district court below failed to consider the *Clark* factors to determine whether District Attorney Hicks is a state actor entitled to immunity under the Eleventh Amendment.[4] That error is fatal and subject to *de novo* review. *Tex. Alliance for Retired Americans v. Scott*, 28 F.4th 669, 671 (5th

---

[3] Similarly, the district court also mistakenly relied on this Court's holding in *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 787 (5th Cir. 2024), finding that "Texas district attorneys are not protected by the Eleventh Amendment precisely because they are county officials, not state officials." (ROA.24-50149.499). There, this Court found that the Hays County District Attorney was a county—not state—official without immunity protection. *McCraw, 90 F.4th at 787.* However, the only reason why this Court refused to recognize the district attorney as a state official was because he **"[did] not otherwise argue [that the six factors in *Clark v. Tarrant Cty*, 798 F.2d 736 (5th Cir. 1986)] support his position that he is protected by the Eleventh Amendment."** *Id.* (emphasis added). Indeed, this Court recognized that it had previously held that "a district attorney's entitlement to Eleventh Amendment immunity may depend on whether he or she is performing in a local or state capacity" or satisfies the six-factor test in *Clark*. *Id.* However, because the district attorney did not raise this issue in *McCraw*, this Court did not consider whether he performed in a state capacity to garner immunity protection under the Eleventh Amendment. *Id.* For this reason, the district court's reliance on *McCraw* was erroneous.

[4] Oddly, in attempting to distinguish *Arnone v. Dall. Cty*, 29 F.4th 262 (5th Cir. 2022), from this case, the district court below understood that there are two different tests to determine whether an actor is a state or county official under Section 1983 or the Eleventh Amendment. *See United States v. Tex.*, No. 1:24-CV-8-DAE, 2024 WL 861526, at *8 (W.D. Tex. Feb. 29, 2024). Yet, despite knowing that there are two different tests, the trial court still mistakenly failed to consider and apply the correct six-factor test in *Clark*. *See id.*

Cir. 2022).  In their Response Brief, Appellees did not even attempt to rebut or otherwise challenge District Attorney Hicks's application of the *Clark* factors.

Absent any challenge from Appellees, this Court should properly find that District Attorney Hicks is a state official under the Eleventh Amendment. District Attorney Hicks satisfies all *Clark* factors.  Indeed, Texas law recognizes district attorneys as state—not county—officials.  TEX. CODE CRIM. PROC. ANN. arts. 2.024(a)(1), 2.07(d); 2.1397(a)(1) (defining the terms "attorney representing the **state**," "attorney for the **state**," and "active duty **state** attorney" to include a district attorney) (emphasis added); *see* TEX. GOV'T CODE ANN. § 41.015(a) (same).

Moreover, pursuant to the Texas Constitution, district attorneys, such as District Attorney Hicks, are "commissioned by the Governor" who also has the authority to appoint a district attorney if a new office is created until the next general election.  *See* TEX. CONST. art. V, § 21; *see also* TEX. GOV'T CODE ANN. § 41.010.  With certain exceptions, "[b]efore assuming the duties of the office," "a district attorney must give a bond that is payable to the governor" to be "deposited in the office of the comptroller of public accounts."  TEX. GOV'T CODE ANN. § 43.002(a)-(b).  At all times, the duties of a district attorney, like District Attorney Hicks, are "regulated by the [Texas] Legislature"—not counties. TEX. CONST. art. V, § 21.  Like all district attorneys, District Attorney

Hicks receives 80 percent of his salary and funding from the Texas Legislature—not El Paso County—and is reimbursed from the State for expenses related to travel, postage, telegraph, and telephone. *See* TEX. GOV'T CODE ANN. § 41.013(a)-(b); *see also id.* § 46.003(a) (same).

Equally important, in elections, Texas district attorneys are not tied to county lines. Rather, Texas district attorneys are elected along judicial district lines. Although District Attorney Hicks was appointed by Governor Abbott, his office serves and is elected by the voters of the 34th Judicial District, which includes Culberson and Hudspeth Counties—not solely El Paso County. *Clark*, 798 F.2d at 738 (holding that officers subject to elections under district lines are state officials subject to Eleventh Amendment immunity); *see also* TEX. CONST. art. V § 21 (noting that "[t]he Legislature may provide for the election of District Attorneys in **such districts**, as may be deemed necessary") (emphasis added). As state prosecutors, Texas district attorneys represent the State of Texas—not their counties—and can work in tandem with the Texas Attorney General. *See* TEX. GOV'T CODE ANN. § 41.006; *see also* TEX. CODE CRIM. PROC ANN. art. 2.01. Thus, their prosecutorial concerns exceed county boundaries and have an impact on the State. Accordingly, because all *Clark* factors side in favor of District Attorney Hicks, the Court should find that the district court below erred

in failing to hold that he is a state official immune under the Eleventh Amendment.

**B.    THE *EX PARTE YOUNG* EXCEPTION TO IMMUNITY PROTECTION DOES NOT APPLY TO DISTRICT ATTORNEY HICKS**

Even if District Attorney Hicks is a state official, Appellees contend that the *Ex parte Young* exception to immunity would still apply.  That is not correct.

Under *Ex parte Young*, suits for injunctive or declaratory relief are allowed against a state official acting in violation of federal law **if** there is a "sufficient 'connection' to enforcing an allegedly unconstitutional law."  *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020).  However, as noted in *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020), "[t]his circuit has not spoken with conviction about all relevant details of the 'connection' requirement."  *Id.*  "An en banc plurality of this court explained that the officers [must] have 'some connection with the enforcement of the act' in question or be 'specially charged with the duty to enforce the statute' and be threatening to exercise that duty."  *Id.* (quoting *Okpalobi v. Foster*, 244 F.3d 405, 414-15 (5th Cir. 2001) (en banc) (plurality op.).  "Without a majority, no controlling precedent was made."  *Id.*; *see also K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (declining to "resolve whether *Ex parte Young* requires only 'some connection' or a 'special relationship'

11

between the state actor and the challenged statute" because the defendant fell within the exception under either standard).

"Although the precise scope of the requirement for a connection has not been defined, the plaintiff at least must show the defendant has 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Abbott*, 978 F.3d at 179 (citing *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (internal quotation marks omitted)). That means the official must be "statutorily tasked with enforcing the challenged law." *In re Abbott*, 956 F.3d at 709. Enforcement typically means "compulsion or constraint." *K.P.*, 627 F.3d at 124. District Attorney Hicks is not subject to the *Ex parte Young* exception.

Appellees contend that District Attorney Hicks is "statutorily tasked with enforcing" SB4. (Apps. Br. p.23). But they offer no relevant statutory or caselaw support for their contention. (Apps. Br. p.23). Appellees cite *In re Abbott*; however, that case contradicts their point. *See* 956 F.3d 696 (5th Cir. 2020), *vacated on other grounds*, 141 S. Ct. 1261 (2021). In that case, a federal district court issued an injunction against Governor Abbott and the Texas Attorney General regarding GA-09, an executive order that postponed certain surgeries and medical procedures during the COVID-19 pandemic. *Id.* at 703-05. On appeal, this Court considered a mandamus petition by Governor Abbott and the

Texas Attorney General, claiming that they were state officials immune under the Eleventh Amendment. *Id.* at 708. Along these lines, they claimed that they were not subject to the *Ex parte Young* exception that allows suits for injunctive or declaratory relief against state officials, provided they have sufficient "connection" to enforcing an allegedly unconstitutional law. *Id.* Despite the Texas Attorney General's prosecutorial role, this Court found that the Texas Attorney General was not statutorily tasked with enforcing GA-09:

> As to the Attorney General, the district court reasoned that he has authority to prosecute violations of GA-09 at the request of local prosecutors, and that he has also publicly threatened enforcement against abortion providers. Neither rationale establishes the Attorney General's connection to enforcing GA-09 for *Ex parte Young* purposes. Nothing in GA-09 tasks the Attorney General with enforcing it. Speculation that he might be asked by a local prosecutor to "assist" in enforcing GA-09 is inadequate to support an *Ex parte Young* action against the Attorney General.

*Id.* at 709 (citations and internal quotation marks omitted). Therefore, despite cited by Appellees, *In re Abbott* actually favors District Attorney Hicks.

Furthermore, in support of this claim, Appellees also cited *Tex. Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020). Like its unwarranted reliance on *In re Abbott*, this case also contradicts Appellees' point. In *Tex. Democratic Party*, a district court enjoined, among others, Governor Abbott and the Texas Attorney General over the challenge of the constitutionality of a Texas statute requiring voters under age 65 to prove a disability in order to vote by mail during

the COVID-19 pandemic. 978 F.3d at 174-75. On appeal, this Court considered whether the defendants were subject to the *Ex parte Young* exception and thus not immune under the Eleventh Amendment. *Id.* at 179. The plaintiffs argued that the Texas Attorney General is statutorily tasked with enforcing this election law because he has a general "duty to enforce and uphold the laws of Texas." *Id.* This Court flatly rejected the argument, finding that "[a] general duty to enforce the law is insufficient for *Ex parte Young*." *Id.* Indeed, this Court recognized that it had "already held that '[t]he required connection is not merely the general duty to see that the laws of the state are implemented, but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Id.* (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). Therefore, this Court found that the Texas Attorney General "lack[ed] a requisite connection to the challenged law, and *Ex parte Young* does not apply to him." *Id.* 181. Therefore, this case lends no support to Appellees.

Left with little recourse, Appellees cite Section 43.120 of the Texas Government Code to attempt to demonstrate that District Attorney Hicks is statutorily tasked with enforcing SB4.[5] (Apps. Br. p.23). That statute merely

---

[5] Appellees also relied on *Jackson v. Wright*, 82 F.4th 362 (5th Cir. 2022), to argue that the *Ex parte Young* exception applies to District Attorney Hicks because he is statutorily tasked with enforcing SB4. (Apps. Br. p.23). However, *Jackson* is patently distinguishable. That case did not involve, as here, a state prosecutor. Instead, in that case, a professor of a public university filed a Section 1983 suit

states that the district attorney for the 34th Judicial District represents the state in all criminal cases pending in El Paso County. TEX. GOV'T CODE ANN. § 43.120(a)-(c). It is silent on SB4. This Court has already rejected this type of broad claim before. As this Court has repeatedly held, "[t]he required connection is not merely the general duty to see that the laws of the state are implemented, but **the particular duty to enforce the statute in question _and_ a demonstrated willingness to exercise that duty**." _See, e.g._, _Morris v. Livingston_, 739 F.3d 740, 746 (5th Cir. 2014) (emphasis added); _see also Tex. Democratic Party_, 978 F.3d at 181 (same); _In re Abbott_, 956 F.3d at 709 (same).

Appellees have not shown that District Attorney Hicks is required, compelled, or constrained to prosecute SB4 cases. In fact, a reading of SB4 does not reveal that Texas district attorneys "shall" or "must" prosecute cases under that law. District Attorney Hicks simply does not have a "sufficient connection" with enforcing SB4. _In re Abbott_, 956 F.3d at 708. Despite his prosecutorial role, he is not "specially charged with the _duty_ to enforce" SB4. _Abbott_, 978 F.3d at 179 (emphasis added). More importantly, the record is devoid of any evidence suggesting that District Attorney Hicks has threatened to enforce or prosecute any prospective defendant under SB4. Indeed, the complaint filed by Appellees

---

against members of the university's board of regents in their official capacities asserting a First Amendment retaliation claim. _Jackson_, 82 F.4th at 365. This case sheds no light to the salient issue before the Court.

alleges that Steven C. McCraw, the Director of the Texas Department of Public Safety "has stated that DPS will enforce S.B.4." **However, no such allegation is made against District Attorney Hicks.** Appellees' motions for preliminary injunction and their exhibits are equally silent. Appellees must show that District Attorney Hicks has "a demonstrated willingness to exercise" his prosecutorial discretion to enforce SB4, but they have failed to do so. *See Abbott*, 978 F.3d at 179.

Appellees contend that District Attorney Hicks "does not actually deny that he would enforce S.B. 4" and that he "cannot avoid suit by staying silent." (Apps. Br. pp.23-24). Appellees miss the point. District Attorney Hicks does not have the burden of proof. They do. He does not have to show that he is compelled or constrained by the law to enforce SB4. He does not, moreover, need to prove that he will decline to enforce SB4 cases, especially when Appellees' complaint is devoid of any allegation about District Attorney Hicks's intentions regarding SB4. That heavy burden falls exclusively on Appellees. In light of this critical omission, they cannot satisfy their burden of proof to show that District Attorney Hicks will cause them an actual or imminent injury to justify equitable relief. Accordingly, the Court should reverse the trial court's order and properly find that District Attorney Hicks is immune under the Eleventh Amendment.

## II.    ALTERNATIVELY, EVEN IF DISTRICT ATTORNEY HICKS IS NOT IMMUNE UNDER THE ELEVENTH AMENDMENT, APPELLEES LACK STANDING

If the Court finds that District Attorney Hicks is a state officer immune under the Eleventh Amendment, the Court does not need to address whether Appellees have standing.  However, if the Court were to determine that District Attorney Hicks is not immune, the Court should still dismiss this action against him because Appellees lack standing.

Before delving into the merits of standing, it is important to address the correct standard of review.  In their Response, Appellees assert that the district court's factual findings are subject to review for clear error.  (Apps. Br. p.19). Appellees are misguided.  It is well established that a district court's rulings on standing are reviewed *de novo*.  *Jackson v. Wright*, 82 F.4th 362, 366 (5th Cir. 2023); *see also City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019); *see also Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1083 (5th Cir. 2022).  Therefore, the district court is not afforded any deference on review.

In its attempts to confer standing, Appellees vaguely claim that El Paso County will incur expenses related to the incarceration and prosecution of SB4 violators, staff, and officer training. (Apps. Br. pp.18-19).  They further maintain that SB4 will erode public trust of the community.  (Apps. Br. pp.18-19). Appellees seek to establish that "even a small injury would be sufficient for

standing" but cite to nothing in support of this unsubstantiated standard. Rather, this Court has consistently required plaintiffs to show a "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" injury to pass constitutional muster. *Ass'n of Cmty. Orgs for Reform Now v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999). Moreover, "when the plaintiff is not himself the object of the government action or inaction he challenges, **standing is not precluded, but it is ordinarily 'substantially more difficult' to establish**." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) (emphasis added).

According to Appellees, District Attorney Hicks's argument that not every arrest will lead to prosecution is "such nitpicking [that] does not establish clear error." (Apps. Br. p.19). However, the County cannot escape that its arrest and prosecution rate and expectant cost under SB4 is premised on gross estimates. (*See* ROA.24-50149-959-60) (noting that,"[b]ased on that *general estimate*, El Paso County *estimates* there may be over 8,000 additional arrests under SB4 in the El Paso area," *could* cost approximately $5 million per year" and *likely* create a budget shortfall for the Public Defender's Office). (ROA.24-50149.806-07, 959-60). This is all alarmingly speculative, does not constitute a cognizable injury in fact, and thus fails to confer Article III standing. *See Bruni v. Hughs*, 468 F. Supp. 3d 817, 824 (S.D. Tex. 2020). El Paso County's claims of injury are speculative, deprived of any reliable foundation or basis, and are premised on

scenarios that may not even occur after enforcement of the law. Standing requires more than mere conjecture.

Furthermore, the Organizational Plaintiffs, who assist immigrants navigate the immigration process, cannot claim injury simply by changes in their self-imposed processes. The Organizational Plaintiffs claim SB4 "alters the core of [its] work" but fail to overcome the burden of establishing a "concrete and particularized injury," as required by *Lujan*. 504 U.S. at 562. According to Appellees, SB4 is a "different, state-law 'immigration process'" because it creates a new system of "rapid deportation" and will result in "operational changes." (Apps. Br. p.13). Yet, Appellees have failed to plausibly articulate how these "operational changes" will prevent them from pursuing its organizational purpose or what significant resources, if any (beyond mere "operational changes") it will divert to counteract SB4. *See Tenth St. Residential Ass'n v. City of Dallas*, *Tex.*, 968 F.3d 492, 500 (5th Cir. 2020); *see also Fowler*, 178 F.3d at 358; *see also Tenth St. Residential Ass'n*, 968 F.3d at 500 (noting that time spent attending meetings does not constitute "significant resources"). Appellees merely allege adjustments that are simply "setback[s] 'to the organization's abstract social interests'" that do not rise to the level to demonstrate a cognizable injury. *Fowler*, 178 F.3d at 361. For these reasons, Appellees have failed to satisfy a cognizable injury in fact that is fairly traceable to District Attorney Hicks. Thus, this Court

19

should reverse and dismiss this case against District Attorney Hicks for lack of standing.

### A. APPELLEES FURTHER LACK STANDING BECAUSE THEIR ALLEGED INJURIES DO NOT JUSTIFY PRE-ENFORCEMENT REVIEW

Appellees' so-called injuries do not rise to the level of standing in a pre-enforcement challenge.[6]    To demonstrate standing in a pre-enforcement challenge, plaintiffs must show, among other things, a "credible threat of prosecution" by a statute that affects their constitutional interest. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) (quoting *Babbitt v. United Farm*

---

[6] Appellees argue that pre-enforcement review extends to parties who will suffer an indirect injury.  Appellees cite to several cases, none of which advance their position.  *See, e.g.*, *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972) ("The requirement that a party seeking review must allege facts showing that he is himself adversely affected does not insulate executive action from judicial review, nor does it prevent any public interests from being protected through the judicial process.  It does serve as at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a **direct** stake in the outcome.") (emphasis added); *Biden v. Nebraska*, 143 S. Ct. 2355, 2368 (2023) (finding that the Missouri Higher Education Loan Authority, a public corporation created by the State of Missouri, had standing because the contested law "**directly** harms the State that created and controls [it]") (emphasis added); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (finding standing because the prospective, threatened injury was "real, immediate, and **direct**") (emphasis added); *Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 536 (2013) (standing neither contested nor addressed by the Court); *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1260 (11th Cir. 2012) (emphasizing that "[w]hile it is unnecessary for a plaintiff to "expose himself to actual arrest or prosecution" to challenge a statute, . . . , we will not accept as plaintiffs 'persons having no fears of state prosecution except those that are imaginary or speculative.'").

*Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).   Appellees have failed to demonstrate that District Attorney Hicks will enforce or prosecute SB4 against them to confer them standing in this case.  (Apps. Br. p.39).

For instance, in *Susan B. Anthony List v. Driehaus*, the Supreme Court addressed the burden of a plaintiff to show injury-in-fact by the "threatened enforcement of a law" that affects a constitutional interest when there is no "actual arrest, prosecution, or other enforcement action."  573 U.S. 149, 158-59 (2014).  In addressing this issue, the Court conducted a historical assessment of leading precedent beginning with its decision in *Steffel*.

In *Steffel*, the petitioner and his companion were threatened by police officers with arrest for distributing anti-Vietnam War handbills in violation of a trespass statute.   *Steffel v. Thompson*, 415 U.S. 452, 454-58 (1974).   The companion distributed prohibited handbills, was arrested, and charged with criminal trespass; while the petitioner left to avoid arrest and sought a declaratory judgment and injunctive relief, arguing that the statute was unconstitutional as applied to him.  *Id.*  The Court found that the petitioner had a "credible threat of enforcement." *Id.* at 459.  Because petitioner had twice been warned to stop handbilling and was told by the police that if he again handbilled he would likely be prosecuted, "it [was] not necessary that petitioner first expose

himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Id.*

Shortly after *Steffer*, the Court in *Babbitt* considered a pre-enforcement challenge to a statute that made it an unfair labor practice to encourage consumers to boycott an "agricultural product . . . by the use of dishonest, untruthful and deceptive publicity." 442 U.S. 289, 301 (1979). Expanding on *Steffel*, the Court in *Babbit* explained,

> When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief. But persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.  **When plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible, they do not allege a dispute susceptible to resolution by a federal court**.

*Id.* at 298 (internal quotation marks and citations omitted) (emphasis added).

Nearly ten years later, in *Virginia v. American Booksellers Ass'n, Inc.*, a statute made it unlawful to "knowingly display for commercial purpose" material that is "harmful to juveniles" as defined by the statute. 484 U.S. 383, 386 (1988). In that case, the Court held that the bookseller petitioners could seek pre-enforcement review because they had "alleged an actual and well-founded fear that the law will be enforced **against them**." *Id.* at 393 (emphasis added).

In *Susan B. Anthony*, an advocacy organization challenged an Ohio statute that criminalized statements made about candidates during political campaigns on constitutional grounds.    573 U.S. at 155.    In determining whether the advocacy organization had standing, the Court highlighted that "[j]ust as in *Babbitt* and *Steffel*, we determined that the 'pre-enforcement nature' of the suit was not 'troubl[ing]' because the plaintiffs had 'alleged an actual and well-founded fear that the law will be enforced **against them**.'" 573 U.S. at 160 (emphasis added).    The Court has since consistently reinforced this important principle.

Appellees lack an injury in this pre-enforcement challenge.    The conduct of Appellees is not subject to or prescribed by any provision of SB4.    Appellees simply do not face "a credible threat of prosecution" that is required to justify pre-enforcement review. *Babbitt*, 442 U.S. at 289.    To establish a "credible threat of prosecution" to confer Article III standing under SB4, Appellees must have "'alleged an actual and well-founded fear that the law will be enforced **against them**.'"    *Susan B. Anthony*, 573 U.S. at 160 (emphasis added); *see also Seals v. McBee*, 898 F.3d 587, 592 (5th Cir. 2018).    Appellees have not alleged or shown this. Appellees, moreover, have not alleged an intention to engage in conduct that is violative of SB4 and *cannot* do so because Appellees are not natural persons who can engage in conduct in violation of SB4.    Moreover, claims of indirect injury cannot

satisfy either the injury in fact *or redressability* requirements of Article III standing. *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013) ("Article III standing 'is not to be placed in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests.'" (quoting *Diamond v. Charles*, 476 U.S. 54, 62 (1986)). Accordingly, because they will not have an injury that implicates their constitutional interests, Appellees lack standing to bring this pre-enforcement challenge of SB4 against District Attorney Hicks.

## CONCLUSION

Accordingly, for these reasons, Appellant Bill D. Hicks, in his official capacity as the District Attorney for the 34th Judicial District of Texas, respectfully requests the Court to reverse the district court's order granting preliminary injunction, dismiss all claims against him, and grant him any other relief, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

By: */s/ Francisco J. Ortega*
    **FRANCISCO J. ORTEGA**
    Texas Bar No. 24060365
    **SCOTTHULSE, P.C.**
    One San Jacinto Plaza, Suite 1100
    P.O. Box 99123
    El Paso, Texas  79999-9123
    (915) 533-2493
    (915) 546-8333 Telecopier

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed this document electronically through the CM/ECF system, which caused all parties and/or counsel of record to be served by electronic means as more fully reflected on the Notice of Electronic Filing on this 26th day of March, 2024.

*/s/ Francisco J. Ortega*
**FRANCISCO J. ORTEGA**

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B), because it contains 5909 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Calisto MT font.  This certificate is made in compliance with FED. R. APP. P. 32(a)(7)(C).

*/s/ Francisco J. Ortega*
**FRANCISCO J. ORTEGA**