

# KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

Aaron L. Nielson
Solicitor General

Aaron.Nielson@oag.texas.gov
(512) 463-2100

April 29, 2025

**VIA CM/ECF**

Mr. Lyle W. Cayce, Clerk
Court of Appeals for The Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130-3408

　　　　Re:　　*United States v. State of Texas*, No. 24-50149

Dear Mr. Cayce:

　　　　Pursuant to Rule 28(j), counsel provides notice of two developments.

　　　　*First*, the district court acknowledged it lacked jurisdiction to issue a modified injunction and suggested at least some applications of S.B.4 are not preempted. On April 3, 2025, the court held a status conference where it stated: "I don't know why 'modification' got on there. It shouldn't have been. But it really wasn't intended to modify the order. I have no authority to modify my orders when it's on appeal. There's no dispute about that." Tr. at 10, No. 1:24-cv-08 (W.D. Tex. Apr. 3, 2025) (Attachment A). Texas agrees. *See* Suppl.Br.1-4. The court also stated that its preliminary-injunction decision "would have been very different" if today's federal-state collaboration had existed when the court issued its injunction and suggested that only a "portion of SB 4" is preempted. Tr. at 12; *see also id.* at 13 (agreeing "*this whole thing* would be moot" but for certain provisions) (emphasis added). Yet a facial challenge must fail so long as *any* application of S.B.4 is enforceable.

　　　　*Second*, the Eighth Circuit has vacated its prior decision after the United States dismissed a parallel challenge to Iowa's similar statute. *See United States v. Iowa*, No. 24-2265, 2025 WL 1140834 (8th Cir. Apr. 15, 2025) [Attachment B]. There, as here, a district court consolidated challenges by the United States and private plaintiffs, No. 4:24-cv-162, ECF No. 8 (S.D. Iowa May 13, 2024); and the court awarded a single preliminary injunction to both sets of plaintiffs, ECF No. 29 (S.D. Iowa June 17, 2024). The Eighth Circuit, after dismissing the private plaintiffs' appeal and

Letter to Mr. Cayce, Clerk
Page 2

affirming as to the United States, vacated its opinion affirming the preliminary injunction under *Munsingwear*. *See Iowa*, 2025 WL 1140834 at *1.[1] Here, the Court should reverse the district court's order on the merits, but, at a minimum, should vacate the motions panel opinion. *See, e.g.*, Suppl.Br.5-12.

Respectfully submitted,

/s/ Aaron L. Nielson
Aaron L. Nielson
*Counsel for the State of Texas*

cc: All counsel of record (via CM/ECF)

---

[1] On rehearing, the private plaintiffs and Iowa have been ordered to file supplemental briefing with special focus on standing and remedial issues. *See* Order, No. 24-2263 (8th Cir. Apr. 22, 2025).

# Attachment A:
# Hearing Tr., *American Gateways v. Texas*, No. 1:24-cv-8 (W.D. Tex. Apr. 3, 2025)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| AMERICAN GATEWAYS,<br>COUNTY OF EL PASO, TEXAS,<br>LAS AMERICAS IMMIGRANT ADVOCACY CENTER, | ) AU:24-CV-00008-DAE<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) AUSTIN, TEXAS<br>) |
| STATE OF TEXAS, GREG ABBOTT, *in his*<br>*official capacity as Governor of Texas,*<br>TEXAS DEPARTMENT OF PUBLIC SAFETY,<br>FREEMAN F. MARTIN, *in his official*<br>*capacity as Director of Texas Department*<br>*of Public Safety*, JAMES MONTOYA, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) APRIL 3, 2025 |

```
     ***********************************************
                TRANSCRIPT OF STATUS CONFERENCE
            BEFORE THE HONORABLE DAVID A. EZRA
     ***********************************************
```

APPEARANCES:

FOR THE PLAINTIFFS:  CODY WOFSY
                     AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                     IMMIGRANTS' RIGHTS PROJECT
                     425 CALIFORNIA STREET, 7TH FLOOR
                     SAN FRANCISCO, CALIFORNIA 94104

                     KATE GIBSON KUMAR
                     TEXAS CIVIL RIGHTS PROJECT
                     1405 MONTOPOLIS DRIVE
                     AUSTIN, TEXAS 78723

FOR THE DEFENDANTS:  MONROE DAVID BRYANT, JR
                     MUNERA AL-FUHAID
                     KYLE STEPHEN TEBO
                     MARK A. CSOROS
                     TEXAS ATTORNEY GENERAL'S OFFICE
                     SPECIAL LITIGATION DIVISION
                     P.O BOX 12548, CAPITOL STATION
                     AUSTIN, TEXAS 78711-2548

```
 1                           REBECCA ESTRADA QUINN
                            EL PASO DISTRICT ATTORNEY'S OFFICE
 2                          500 E. SAN ANTONIO, 2ND FLOOR
                            EL PASO, TEXAS 79901
 3
     COURT REPORTER:        ARLINDA RODRIGUEZ, CSR
 4                          501 WEST 5TH STREET, SUITE 4152
                            AUSTIN, TEXAS 78701
 5                          (512) 391-8791

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by computerized stenography, transcript

25   produced by computer.
```

| | | |
|---|---|---|
| 13:38:53 | 1 | (Open court) |
| 13:38:53 | 2 | THE CLERK:  AU:24-CV-8, *Las Americas v. State* |
| 13:39:07 | 3 | *of Texas, et al.* |
| 13:39:10 | 4 | MR. WOFSY:  Good afternoon, Your Honor. |
| 13:39:11 | 5 | Cody Wofsy, ACLU, for the plaintiffs.  With me at counsel |
| 13:39:16 | 6 | table is Kate Gibson. |
| 13:39:18 | 7 | THE COURT:  All right.  Good afternoon. |
| 13:39:21 | 8 | MR. BRYANT:  Your Honor, David Bryant here for |
| 13:39:25 | 9 | Freeman Martin, Director of Texas Department of Public |
| 13:39:27 | 10 | Safety. |
| 13:39:29 | 11 | THE COURT:  Has he taken Steven McCraw's |
| 13:39:32 | 12 | position? |
| 13:39:32 | 13 | MR. BRYANT:  Yes, Your Honor.  He was -- |
| 13:39:35 | 14 | THE COURT:  We should -- |
| 13:39:36 | 15 | MR. BRYANT:  He was succeeded December 1st. |
| 13:39:42 | 16 | THE COURT:  All right.  Then by order -- by |
| 13:39:44 | 17 | minute order we'll substitute -- without objection, I'll |
| 13:39:47 | 18 | assume, we'll substitute him for Mr. McCraw, who is no |
| 13:39:50 | 19 | longer in that position. |
| 13:39:51 | 20 | MR. BRYANT:  That's correct.  And so I believe |
| 13:39:55 | 21 | that is actually the only defendant that we are here to |
| 13:39:58 | 22 | represent.  The United States only sued Governor Abbott, |
| 13:40:05 | 23 | the State of Texas, and Texas Department of Public |
| 13:40:07 | 24 | Safety.  That action has been dismissed. |
| 13:40:10 | 25 | THE COURT:  Right.  And Las Americas. |

```
13:40:11   1              MR. BRYANT:  And the other plaintiffs sued only
13:40:15   2  the Director of Texas Department of Public Safety in his
13:40:20   3  official capacity and the District Attorney of the
13:40:23   4  34th District.
13:40:24   5              THE COURT:  Right.
13:40:25   6              MR. BRYANT:  So those --
13:40:26   7              THE COURT:  Do we have that other case that is
13:40:29   8  still out there that's been stayed?  That's the -- just a
13:40:37   9  minute.  Let me get to it here.  La Union Del Pueblo?
13:40:44  10              MR. BRYANT:  That one has been stayed, I
13:40:46  11  believe, since right after it was filed.
13:40:47  12              THE COURT:  Well, we'll get to that here pretty
13:40:49  13  quickly.  So you can be seated, counsel.  Thank you.
13:40:55  14              MR. BRYANT:  And I -- would you like for me to
13:40:58  15  introduce my cocounsel?
13:40:59  16              THE COURT:  Sure.  I know who they are.
13:41:00  17              MR. BRYANT:  I know.  We've been here before.
13:41:03  18              THE COURT:  Many times.
13:41:04  19              MR. BRYANT:  Munera Al-Fuhaid, Mark Csoros, and
13:41:10  20  Kyle Tebo.
13:41:10  21              THE COURT:  Right.
13:41:11  22              MS. ESTRADA QUINN:  Your Honor, I'm Rebecca
13:41:12  23  Estrada Quinn, and I'm here representing -- now it's
13:41:15  24  James Montoya.  He's the 34th Judicial District Attorney.
13:41:19  25  I believe Bill Hicks was our prior district attorney, and
```

13:41:24  1  now I don't know if that needs to be substituted in.

13:41:26  2          THE COURT:  Yes.

13:41:28  3          MS. ESTRADA QUINN:  It's now James Montoya.

13:41:30  4          THE COURT:  Yes.  I believe that's correct, and

13:41:36  5  it should be.  That's correct.  Sure.

13:41:38  6          Okay.  Now, these two cases, the dismissed case

13:41:41  7  and the *Las Americas* case had been consolidated.  The

13:41:49  8  *La Union* case had not been consolidated, but it's my

13:41:53  9  intention to consolidate them.  There's no reason why we

13:41:56  10  need to have them floating around in the ether.

13:42:05  11          Now, the only difference, they do have some

13:42:10  12  additional claims and Governor Abbott is a defendant in

13:42:18  13  that case.  So you'll be representing him as well in that

13:42:22  14  case, obviously.

13:42:23  15          MR. BRYANT:  Yes, Your Honor.

13:42:24  16          THE COURT:  So my intention is to -- right now

13:42:27  17  that case is stayed, so I'm going to lift the specific

13:42:32  18  stay in that case for purposes of consolidating them with

13:42:40  19  this one, although this case is also stayed.  So it's not

13:42:47  20  like we're un-staying things.

13:42:53  21          But I need to get that case consolidated so we

13:42:56  22  have them all -- just it doesn't make any sense at all to

13:43:02  23  litigate this case and then that case.  Even if there

13:43:06  24  were a judgment in this case, regardless about how it

13:43:10  25  went, they have a couple of additional claims that are

```
13:43:13   1   not surprising claims.  But they would still have those
13:43:17   2   claims, and we'd then have a second lawsuit we would be
13:43:21   3   prosecuting.  Well, I wouldn't be prosecuting, but
13:43:24   4   somebody would be prosecuting, and their lawyers.  And
13:43:27   5   you'd be back here again and we'd be starting all over
13:43:30   6   again.  It makes no sense at all.  It's just an absolute
13:43:34   7   waste of time.
13:43:35   8           So I -- one thing I am a little disappointed
13:43:41   9   in, and it has nothing to do with the State of Texas or
13:43:45  10   the plaintiff, it has to do with the United States.  I am
13:43:49  11   not surprised at all that the Attorney General dismissed
13:43:57  12   this case.  I knew that was going to be coming because it
13:44:00  13   is consistent with the actions the Attorney General has
13:44:05  14   taken in other similar matters that I can't discuss on
13:44:09  15   the record, all right, because they're secret.
13:44:24  16           Suffice it to say -- suffice it to say that
13:44:27  17   this case was prosecuted by very dedicated Assistant
13:44:33  18   United States Attorneys and members of the Department of
13:44:36  19   Justice since 2024, with integrity and vigor.  A
13:44:47  20   considerable amount of taxpayer money was spent in their
13:44:52  21   bringing this case.  It certainly was not a frivolous
13:44:57  22   case by any stretch of the imagination.  We have not only
13:45:00  23   my ruling, but we also have a published opinion out of
13:45:04  24   the Fifth Circuit which makes that clear.  Now, I don't
13:45:08  25   know what the Fifth Circuit is going to do with the
```

| | | |
|---|---|---|
| 13:45:10 | 1 | preliminary injunction.  But regardless of what they do |
| 13:45:13 | 2 | with the preliminary injunction, it is going to terminate |
| 13:45:16 | 3 | the case. |
| 13:45:16 | 4 | I would have thought that, under normal |
| 13:45:19 | 5 | circumstances -- and I've been doing this job for a very |
| 13:45:23 | 6 | long time under attorneys general who were Republican and |
| 13:45:29 | 7 | Democrat, that there would have been some explanation to |
| 13:45:32 | 8 | the American public as to why this case was dismissed. |
| 13:45:36 | 9 | But there was no explanation, and it isn't |
| 13:45:43 | 10 | surprising to me as to why there was no explanation, |
| 13:45:46 | 11 | because the decision was not based on the law, it wasn't |
| 13:45:48 | 12 | based on facts, it was based on politics, period, plain |
| 13:45:52 | 13 | and simple.  It was a political decision.  Not a legal |
| 13:45:58 | 14 | decision, not a factual decision, nothing to do with the |
| 13:46:02 | 15 | merits of the case, or we would have heard about it. |
| 13:46:08 | 16 | So that's where we are.  But that has nothing |
| 13:46:11 | 17 | to do with Texas.  It has nothing to do with my rulings |
| 13:46:20 | 18 | in this matter.  I have no axe to grind for sure against |
| 13:46:35 | 19 | the State of Texas.  I -- even though now |
| 13:46:37 | 20 | Justice Sullivan never liked me to say it, I ruled for |
| 13:46:42 | 21 | the State of Texas many times.  I just ruled in a very |
| 13:46:47 | 22 | big case for Elon Musk, a big case, where he, along with |
| 13:46:55 | 23 | fellow members of the board of directors of Tesla were |
| 13:47:00 | 24 | being sued, and I granted their motion to dismiss the |
| 13:47:04 | 25 | case.  I'm sure that will go up on appeal, and we'll see |

| | | |
|---|---|---|
| 13:47:08 | 1 | what happens.  But my personal view of Mr. Musk one way |
| 13:47:13 | 2 | or the other doesn't play a role in my rulings.  I rule |
| 13:47:19 | 3 | based on the law and the facts as I see them, period, end |
| 13:47:24 | 4 | of story. |
| 13:47:24 | 5 | I just have never seen in a situation quite |
| 13:47:28 | 6 | like there, where a case so vigorously prosecuted, so |
| 13:47:36 | 7 | articulately brought, was just dismissed with no |
| 13:47:42 | 8 | explanation whatsoever.  Just goodbye. |
| 13:47:45 | 9 | Now, did the Attorney General have the right to |
| 13:47:48 | 10 | dismiss it?  Absolutely.  I don't question that.  Did |
| 13:47:53 | 11 | they owe me an explanation?  No.  Do they owe the |
| 13:47:58 | 12 | American people an explanation?  I think so.  But it |
| 13:48:02 | 13 | isn't going to happen, and there's no way that I can |
| 13:48:05 | 14 | compel them to do it.  I don't have the authority to put |
| 13:48:09 | 15 | any conditions on the dismissal, and I wouldn't, even if |
| 13:48:12 | 16 | I could. |
| 13:48:15 | 17 | But if I dismiss a case, I have to write an |
| 13:48:19 | 18 | order.  I have to lay out on the record why I'm doing it. |
| 13:48:26 | 19 | And one would hope that that would have been the standard |
| 13:48:31 | 20 | that would have been followed, but I wasn't.  So that's |
| 13:48:34 | 21 | where we are. |
| 13:48:35 | 22 | You know, I think I've said this before.  When |
| 13:48:43 | 23 | I was appointed as a federal judge in 1988, I had the |
| 13:48:47 | 24 | opportunity to speak with President Reagan personally, |
| 13:48:54 | 25 | the man that I worked for.  You know, I represent the |

| | | |
|---|---|---|
| 13:48:58 | 1 | Republican party.  He didn't appoint many liberal |
| 13:49:05 | 2 | Democrats to the bench.  And he said to me, Whatever you |
| 13:49:12 | 3 | do, you promise me that you will always uphold the law, |
| 13:49:17 | 4 | you will not act as a legislator from the bench, and you |
| 13:49:24 | 5 | will always play it straight up the middle. |
| 13:49:28 | 6 | And I said, Mr. President, I can assure you, |
| 13:49:30 | 7 | you have my word on that.  And I've done that to the best |
| 13:49:34 | 8 | of my ability, at least, for the 36-plus years I've been |
| 13:49:43 | 9 | on the bench.  And it's not going to change here. |
| 13:49:46 | 10 | So I don't know when we're going to hear from |
| 13:49:51 | 11 | the Fifth Circuit.  I mean, it's been, what, seven or |
| 13:49:54 | 12 | eight months?  How long has it been? |
| 13:49:56 | 13 | MR. BRYANT:  Your Honor, I think it was argued |
| 13:49:58 | 14 | back in -- close to a year. |
| 13:50:01 | 15 | THE COURT:  A year?  Oh, my God.  Now, I can |
| 13:50:04 | 16 | understand they were waiting for -- to see if |
| 13:50:11 | 17 | President Trump would be elected, because I assumed that |
| 13:50:15 | 18 | they predicted, as I did, that there was a good chance, |
| 13:50:20 | 19 | given Governor Abbott and President Trump's relationship, |
| 13:50:24 | 20 | that this case might go away from -- or at least one part |
| 13:50:28 | 21 | of it.  But that still doesn't take care of the rest of |
| 13:50:33 | 22 | the case which is still here, and that isn't really up. |
| 13:50:40 | 23 | Unlike the buoy case, where there were big |
| 13:50:43 | 24 | issues of law that might terminate part of the case, |
| 13:50:52 | 25 | unless something flips entirely and the Fifth Circuit |

| | | |
|---|---|---|
| 13:50:59 | 1 | goes beyond the pleadings, I don't think that their |
| 13:51:03 | 2 | ruling will terminate this case.  And, if it did, it |
| 13:51:09 | 3 | would go to the Supreme Court.  It's going to go to the |
| 13:51:14 | 4 | Supreme Court anyway.  It has to go to Supreme Court |
| 13:51:17 | 5 | because of the way SB 4 is written. |
| 13:51:19 | 6 | Now, let me say, I did issue a clarification |
| 13:51:22 | 7 | order.  My mistake.  I put "modification" on there.  I |
| 13:51:27 | 8 | don't know why "modification" got on there.  It shouldn't |
| 13:51:30 | 9 | have been.  But it really wasn't intended to modify the |
| 13:51:34 | 10 | order.  I have no authority to modify my orders when it's |
| 13:51:37 | 11 | on appeal.  There's no dispute about that. |
| 13:51:39 | 12 | You know, I -- I have sat as an appellate judge |
| 13:51:44 | 13 | by designation for over 30 years on a regular basis.  I |
| 13:51:48 | 14 | understand what jurisdiction is, and I taught federal |
| 13:51:51 | 15 | jurisdiction for 38 years.  I understand that I don't |
| 13:51:56 | 16 | have the authority to modify my orders. |
| 13:51:59 | 17 | But I did try to clarify it, to the extent that |
| 13:52:02 | 18 | there were rumors, at least, that certain of the sheriffs |
| 13:52:10 | 19 | and others who were being called upon to enforce |
| 13:52:18 | 20 | Operation Lone Star orders didn't want to find themselves |
| 13:52:25 | 21 | in cross-purposes with a federal court order and, |
| 13:52:29 | 22 | therefore, potentially in contempt. |
| 13:52:31 | 23 | And I wanted to be sure -- and regardless -- |
| 13:52:38 | 24 | regardless of whether the Fifth Circuit takes the |
| 13:52:41 | 25 | position that I overstepped my authority or whatever in |

13:52:45  1  writing that clarification order, it served its purpose,

13:52:53  2  because I made it clear that there will be no contempt

13:52:55  3  proceedings brought against any law enforcement officer

13:52:58  4  of the state of Texas, any officer or enlisted personnel

13:53:02  5  of the Texas Guard -- it's really the Texas National

13:53:07  6  Guard, although Governor Abbott likes to call it the

13:53:19  7  Texas Guard -- for following the orders of Governor

13:53:21  8  Abbott in conjunction with, and in support of, their

13:53:24  9  deputization by the President.

13:53:28  10       I wanted to be sure there was no mistake there,

13:53:32  11 and it certainly wasn't my intent to run afoul of the

13:53:39  12 Fifth Circuit when I did that order.  I was just trying

13:53:42  13 to alleviate any concerns that those people might have,

13:53:49  14 because they were put in a very difficult position.

13:53:55  15 They're between a rock and hard place.

13:54:00  16       They've got a federal court order that says

13:54:02  17 they can't engage in deportation proceedings, and they've

13:54:06  18 got a state order or a presidential order saying that

13:54:12  19 they can.  But which one do they abide by?

13:54:15  20       Now, if you are of the unitary executive theory

13:54:26  21 and think that the President can do whatever they want,

13:54:28  22 regardless of federal court orders, then you just abide

13:54:31  23 by the federal court order -- I mean, you abide by what

13:54:34  24 the President tells you to do.  If you believe there is a

13:54:37  25 separation of powers and an Article III branch of

13:54:40  1  government, then you would be concerned.  And I wanted to

13:54:45  2  be sure that I alleviated that concern.  That just isn't

13:54:53  3  fair.  It isn't fair, and it isn't right.

13:54:56  4        Had the orders been in place at the time that I

13:55:03  5  ruled on this motion initially -- I'm talking about

13:55:07  6  President Trump's order, and Governor Abbott's orders

13:55:12  7  that complied with President Trump's orders, or kind of

13:55:17  8  married in with his orders -- then my order would have

13:55:20  9  been very different.  Because there's no question in my

13:55:24 10  mind that the President has the authority to allow, in my

13:55:33 11  view at least, unless that view can be changed -- and

13:55:37 12  maybe the plaintiffs will change my view; I don't know.

13:55:41 13  But my off-the-cuff thought is that he has the authority

13:55:46 14  to enlist the assistance, at least on a temporary basis,

13:55:51 15  of state officials if they are properly deputized.  And

13:55:58 16  that's what they did.

13:56:01 17        Now, SB 4 purported to give them that authority

13:56:08 18  without the deputization, and that's where the problem

13:56:11 19  was.  But now that there's deputization, it's not a

13:56:15 20  problem.  What remains a serious problem is SB 4 giving

13:56:24 21  certain judges and others in the State of Texas the

13:56:29 22  authority to, on their own, deport people.  And that

13:56:35 23  is -- or order them deported.  That is the portion of

13:56:41 24  SB 4 that I suggested a long time ago should be revisited

13:56:47 25  by the State Legislature.  But, of course, they're not

13:56:50  1  listening to me.  One would have hoped that that the --

13:56:56  2  somebody at the State Legislature would have taken a look

13:57:00  3  at it, but, apparently, they didn't.  And I find it very

13:57:07  4  hard to believe that that's not something that could have

13:57:12  5  been rectified, and then this whole thing would be moot.

13:57:16  6        If there ever was a so-called invasion theory

13:57:28  7  of people coming across the border, and the justification

13:57:38  8  as I've seen Governor Abbott many times over the course

13:57:45  9  of this case and before say, that they needed to take

13:57:51  10 care of this themselves, is because the federal

13:57:53  11 government wasn't doing it, that has been rectified.  The

13:58:04  12 regular troops of the United States Army are at the

13:58:09  13 border.  State officers have been deputized.

13:58:19  14       Even under the broadest view of the law that

13:58:23  15 was cited to me by the State of Texas, the use of force

13:58:34  16 was only deemed to be temporary until sufficient national

13:58:37  17 resources could come into play.  Well, they're there now.

13:58:44  18 So one wonders where we go from here.  I assume that we

13:58:58  19 just simply have to wait.  It would be interesting if we

13:59:03  20 got an opinion out of the Fifth Circuit today.  I mean,

13:59:07  21 anything can happen.  But we have to wait until they

13:59:13  22 rule, because I'm stuck in the meantime.

13:59:18  23       Generally speaking, though, an appeal of a

13:59:21  24 preliminary injunction doesn't necessarily stay a case in

13:59:26  25 federal court.  It precludes the -- the district court

13:59:32  1   from modifying its order, but it doesn't preclude

13:59:35  2   proceedings, which is why I can move forward to get these

13:59:40  3   things consolidated.  But I don't want to put the parties

13:59:44  4   through all of the machinations of getting all ready for

13:59:52  5   trial and starting a trial or something, if we're going

13:59:57  6   to get an order out of the Fifth Circuit that -- that

13:59:59  7   plays some role in how we go forward.  And then that

14:00:04  8   would be troublesome.  So I'm just not going to do that.

14:00:11  9   I don't want to do that.

14:00:14  10          Now, some would say, oh, you're playing into

14:00:16  11   the State of Texas' hands.  I'm not playing into

14:00:19  12   anybody's hands.  I don't see this as a game.  This is

14:00:22  13   not a game to me.  It's a very serious lawsuit, and the

14:00:30  14   implications here are enormous.

14:00:32  15          I can't remember who wrote this, but -- or said

14:00:41  16   it.  It was relatively early on in SB 4.  When SB 4 was

14:00:47  17   either being considered or passed or maybe afterward,

14:00:50  18   they said something to the effect of SB 4 would make

14:00:55  19   Abraham Lincoln twist in his grave and Jefferson Davis

14:01:01  20   dance on top of it, because, in their view, it was a

14:01:10  21   resurrection of the powers that the Confederacy sought to

14:01:14  22   wrest from the federal government control of the borders

14:01:20  23   and brought about, in part -- slavery was the main

14:01:24  24   reason -- but brought about in part the Civil War.  And I

14:01:31  25   don't think the Supreme Court of the United States will

14:01:33  1  skip this one.  I think we will eventually end up -- and

14:01:40  2  I haven't been wrong yet.  I've had four cases up there.

14:01:48  3        And, you know, if there was ever any

14:01:49  4  suggestion -- and I've heard people say this, and I think

14:01:51  5  it's very derogatory to the Fifth Circuit and I don't

14:01:54  6  like to hear it, because I have many, many good friends

14:01:58  7  on the Fifth Circuit and I admire the Fifth Circuit.  And

14:02:06  8  so I don't like to hear it.  But a lot of people say,

14:02:10  9  well, the Fifth Circuit thinks they've got the Supreme

14:02:13  10  Court in their back pocket.  I don't believe that any

14:02:17  11  judge or -- of the Fifth Circuit thinks they have the

14:02:21  12  Supreme Court in their back pocket.

14:02:23  13        For heaven's sake, the Fifth Circuit has been

14:02:25  14  reversed in two big cases in two weeks by the Supreme

14:02:28  15  Court.  Just yesterday in the ghost gun case, where

14:02:33  16  Judge Southwick wrote a rousing opinion for the Fifth

14:02:36  17  Circuit and didn't -- I think they lost five to four on

14:02:41  18  that one.  And then they lost big time on another one

14:02:46  19  that was reversed.

14:02:47  20        But, that being said, they also get affirmed by

14:02:52  21  the Supreme Court.  And it's no different.  They're no

14:02:58  22  different than any other circuit.  I used to hear that

14:03:03  23  all the time by the Ninth Circuit.  Same thing.  So I'm

14:03:07  24  waiting for an opinion myself.  I've got one up there.

14:03:17  25  My fourth one, I think.  Fourth one, right?  I've done

| | | |
|---|---|---|
| 14:03:25 | 1 | good on three of them.  No, fifth one.  I didn't do good |
| 14:03:28 | 2 | on the bump stock.  I lost on the bump stock. |
| 14:03:32 | 3 | And bump stocks were initiated by |
| 14:03:33 | 4 | President Trump, the ban on bump stocks.  He's the who |
| 14:03:37 | 5 | initiated the ban on bump stocks after that terrible |
| 14:03:40 | 6 | Las Vegas shooting.  It was President Trump.  And had I |
| 14:03:45 | 7 | been affirmed by a panel of the Fifth Circuit and then |
| 14:03:48 | 8 | was reversed in a very tight ruling.  And then it went |
| 14:03:54 | 9 | up, and the Supreme Court in another tight ruling |
| 14:03:57 | 10 | affirmed the Fifth Circuit.  And I -- that's fine.  So I |
| 14:04:01 | 11 | think that some people thought, well, for sure the Fifth |
| 14:04:04 | 12 | Circuit will get affirmed on the ghost gun, but it didn't |
| 14:04:08 | 13 | happen. |
| 14:04:09 | 14 | So we'll see what happens.  But this one I |
| 14:04:12 | 15 | think is going to the Supreme Court.  I would bet on it. |
| 14:04:17 | 16 | I don't have a lot of money.  But whatever I had, I think |
| 14:04:20 | 17 | I would bet.  I've been working for government too long. |
| 14:04:26 | 18 | So here's my -- here's where I think we need to |
| 14:04:30 | 19 | go:  Number one, we're going to unfreeze or un-stay |
| 14:04:41 | 20 | the -- what's name of that case? |
| 14:04:45 | 21 | THE CLERK:  AU:24-CV -- AU:23-CV-1537, *Las* |
| 14:04:51 | 22 | *Americas, et al. v.* -- it's not *McCraw* anymore. |
| 14:04:58 | 23 | THE COURT:  Right.  That's going to be |
| 14:04:59 | 24 | unfrozen, although we're not doing anything on it.  It's |
| 14:05:03 | 25 | going to be stayed. |

| | | |
|---|---|---|
| 14:05:04 | 1 | La Union is going to be un-stayed.  That's |
| 14:05:08 | 2 | stayed. |
| 14:05:10 | 3 | THE CLERK:  The *Las Americas* case is going to |
| 14:05:12 | 4 | be the lead case, and the other one is going to be |
| 14:05:13 | 5 | un-stayed an consolidated. |
| 14:05:15 | 6 | THE COURT:  Right.  Correct.  That's exactly |
| 14:05:17 | 7 | what's going to happen.  We're going to un-stay it for |
| 14:05:20 | 8 | purposes of consolidation, and then it's going to be |
| 14:05:24 | 9 | re-stayed until we hear from Fifth Circuit.  So don't |
| 14:05:31 | 10 | worry about having to go out and run around and do |
| 14:05:34 | 11 | something.  As I said, we can hear -- I mean, I can get |
| 14:05:38 | 12 | back to my chambers and open up my thing and see an |
| 14:05:42 | 13 | opinion.  Who knows.  You never know. |
| 14:05:43 | 14 | Has it really been over a year? |
| 14:05:52 | 15 | MR. BRYANT:  My recollection is that it was |
| 14:05:53 | 16 | argued at the -- |
| 14:05:54 | 17 | THE COURT:  See, I don't pay any attention to |
| 14:05:55 | 18 | the arguments.  I don't know when that happened.  I know |
| 14:05:58 | 19 | when the appeal was filed. |
| 14:05:59 | 20 | MR. WOFSY:  That's right, Your Honor.  It was |
| 14:06:01 | 21 | argued in April, so it's coming up on a year. |
| 14:06:03 | 22 | THE COURT:  Okay.  Well, I don't criticize the |
| 14:06:05 | 23 | Fifth Circuit for that because I can understand.  I mean, |
| 14:06:09 | 24 | I've been on Ninth Circuit panels where we've held things |
| 14:06:13 | 25 | because we're waiting for a Supreme Court decision or |

|  |  |  |
|---|---|---|
| 14:06:15 | 1 | we're waiting for another panel that was ahead of us to |
| 14:06:18 | 2 | rule.  And, you know, there's primacy.  If one panel |
| 14:06:24 | 3 | rules on something, a subsequent panel is bound by that |
| 14:06:28 | 4 | ruling.  So we had to wait, and, for whatever reason, we |
| 14:06:31 | 5 | had to wait a very long time. |
| 14:06:33 | 6 | And I'm in the process of writing an opinion |
| 14:06:37 | 7 | for the Ninth Circuit in a case that is very complicated |
| 14:06:42 | 8 | an it's been around a while because we had to wait |
| 14:06:46 | 9 | because there's an unsettled issue of California law. |
| 14:06:52 | 10 | It's nothing to do with this kind of stuff, though. |
| 14:06:54 | 11 | Nothing to do with immigration. |
| 14:06:55 | 12 | So that's what we'll do.  Is there any other |
| 14:07:01 | 13 | suggestions, counsel, that you might have? |
| 14:07:03 | 14 | MR. BRYANT:  Well, Your Honor, in at least |
| 14:07:08 | 15 | 1537. |
| 14:07:10 | 16 | THE COURT:  Which one is that? |
| 14:07:11 | 17 | MR. BRYANT:  We have a trial setting of |
| 14:07:13 | 18 | July 8th.  So I'm concerned that we have -- |
| 14:07:15 | 19 | THE COURT:  Don't worry. |
| 14:07:16 | 20 | MR. BRYANT:  -- cases that are stayed, we |
| 14:07:18 | 21 | haven't had a chance to answer or otherwise respond to. |
| 14:07:20 | 22 | THE COURT:  You haven't -- you haven't even |
| 14:07:23 | 23 | answered yet, have you? |
| 14:07:24 | 24 | MR. BRYANT:  It also happens that many of the |
| 14:07:26 | 25 | lawyers on our side are going to be trying the |

| | | |
|---|---|---|
| 14:07:29 | 1 | redistricting case out in El Paso to a three-judge court |
| 14:07:33 | 2 | in late May and in June, which would give very little |
| 14:07:40 | 3 | time to prepare for a July 8 trial.  And we happen to |
| 14:07:43 | 4 | know that the plaintiffs' lawyers in that *La Puebla* case |
| 14:07:49 | 5 | are the plaintiffs in those cases.  So they're going to |
| 14:07:52 | 6 | be extremely busy as well.  So we have to do something |
| 14:07:55 | 7 | with that trial setting. |
| 14:07:56 | 8 | THE COURT:  Counsel, I played baseball and I |
| 14:07:59 | 9 | used to be a trial lawyer.  So I -- we had something in |
| 14:08:03 | 10 | baseball we used to call a squeeze play.  I'm not going |
| 14:08:07 | 11 | to put the lawyers in this case in a squeeze play.  So |
| 14:08:10 | 12 | you don't need to worry about that.  We're going to |
| 14:08:12 | 13 | move -- we're going to vacate that trial date.  There's |
| 14:08:14 | 14 | no conceivable way that counsel for either side can be |
| 14:08:18 | 15 | adequately prepared. |
| 14:08:19 | 16 | I would like the State of Texas to file an |
| 14:08:24 | 17 | answer, though.  I think you need to file an answer and |
| 14:08:26 | 18 | get this case going.  So after I un-stay it, I think you |
| 14:08:29 | 19 | should file an answer and any affirmative defenses you |
| 14:08:32 | 20 | might have.  You don't need to wait for the ruling on |
| 14:08:38 | 21 | the -- on the preliminary injunction.  If there is a |
| 14:08:47 | 22 | ruling on the preliminary injunction in a way that would |
| 14:08:50 | 23 | impact your answer, you could always apply to file an |
| 14:08:54 | 24 | amended answer and I would be receptive to that.  So |
| 14:08:59 | 25 | don't worry about that. |

| | | |
|---|---|---|
| 14:09:01 | 1 | So I would like you to file an answer in this |
| 14:09:05 | 2 | case to both complaints, both this one and the -- well, |
| 14:09:12 | 3 | no.  Just file one answer within 30 days -- and by that |
| 14:09:21 | 4 | time we may have a ruling from the Fifth Circuit.  Who |
| 14:09:23 | 5 | knows? -- within 30 days of the entry of the order |
| 14:09:32 | 6 | consolidating the two cases, which will happen either |
| 14:09:36 | 7 | today or tomorrow.  Thirty days I think is plenty of |
| 14:09:41 | 8 | time.  It's not like you don't know what the case is |
| 14:09:44 | 9 | about. |
| 14:09:44 | 10 | We've burned a lot of paper on this case. |
| 14:09:55 | 11 | MR. WOFSY:  That approach makes sense to the |
| 14:09:57 | 12 | plaintiffs, Your Honor.  Thank you. |
| 14:09:58 | 13 | THE COURT:  Yeah.  I mean, we do need to do |
| 14:10:01 | 14 | that.  And it's not like I'm cutting you off from |
| 14:10:06 | 15 | dismissing the case, because you're not in a position to |
| 14:10:08 | 16 | dismiss a case. |
| 14:10:10 | 17 | MR. BRYANT:  Your Honor, we'd love to dismiss |
| 14:10:11 | 18 | this case, but -- |
| 14:10:13 | 19 | THE COURT:  You can file a motion. |
| 14:10:14 | 20 | MR. BRYANT:  -- it's beyond our power. |
| 14:10:15 | 21 | THE COURT:  So you can't do that.  Okay.  If |
| 14:10:26 | 22 | there's nothing else, she was -- who is handling this? |
| 14:10:36 | 23 | Judge Howell? |
| 14:10:41 | 24 | THE CLERK:  It will be Judge Hightower. |
| 14:10:43 | 25 | THE COURT:  Judge Hightower.  Okay.  Then what |

| | | |
|---|---|---|
| 14:10:44 | 1 | we'll do, as soon as you file your answer, we'll have |
| 14:10:49 | 2 | Judge Hightower meet with you to set a new scheduling |
| 14:10:58 | 3 | order, and you'll get a new trial.  I'm going to vacate |
| 14:11:01 | 4 | your trial date right now so you don't need to worry |
| 14:11:04 | 5 | about it.  And she'll give you a new trial date. |
| 14:11:07 | 6 | Yeah.  That would be silly.  I'm not going to |
| 14:11:11 | 7 | make you -- I mean, you didn't even need to tell me about |
| 14:11:15 | 8 | the other thing.  I don't think you would have had enough |
| 14:11:17 | 9 | time to prepare anyway.  But that adds fuel to the fire. |
| 14:11:23 | 10 | MR. BRYANT:  We didn't either.  We didn't think |
| 14:11:26 | 11 | we had time, even without the conflicting demand. |
| 14:11:29 | 12 | THE COURT:  No.  I was a trial lawyer long |
| 14:11:31 | 13 | enough.  I mean, you do have a good team with you.  But, |
| 14:11:35 | 14 | still, I mean, you don't have Justice Sullivan looking |
| 14:11:39 | 15 | over your shoulder, though.  Who are these two? |
| 14:11:42 | 16 | MR. BRYANT:  Your Honor, we do have |
| 14:11:44 | 17 | Trevor Ezell, who is now the general counsel to the |
| 14:11:47 | 18 | Governor, and Anthony Rodriguez, also with the office of |
| 14:11:50 | 19 | the Governor. |
| 14:11:51 | 20 | THE COURT:  You know, Mr. Ezell, I actually got |
| 14:11:54 | 21 | a call from someone who said, When did you get appointed |
| 14:12:00 | 22 | to the Federal Bench? |
| 14:12:03 | 23 | And I said in 1988. |
| 14:12:07 | 24 | What?  I thought you were working for the |
| 14:12:15 | 25 | Governor. |

```
14:12:16  1              And I said, No.  I did work for the Governor.
14:12:18  2   I did work for the Republican Party.
14:12:21  3              And they got "Ezell" and "Ezra" mixed up.  He
14:12:25  4   was looking for you.
14:12:34  5              Okay.  Anything else?
14:12:39  6              MR. BRYANT:  No, Your Honor.  I assume that the
14:12:41  7   issue with respect to the answer also applies to the El
14:12:45  8   Paso District Attorney.
14:12:46  9              THE COURT:  Oh, yes.
14:12:47 10              MR. BRYANT:  Because they will also answer.
14:12:48 11              THE COURT:  Yes.  Absolutely.
14:12:50 12              MR. BRYANT:  Thank you, Your Honor.
14:12:51 13              THE COURT:  Yeah.  Absolutely, yeah.
14:12:53 14              MR. WOFSY:  Nothing else from us.
14:12:54 15              THE COURT:  We want to at least have a clean
14:12:56 16   record.  And then when we do get started, you know, we
14:12:59 17   don't have -- I mean, it isn't going to be hard for you
14:13:04 18   to answer this complaint.  I could write your answer for
14:13:07 19   you.  I wouldn't try to do it, but I could.  I know
14:13:11 20   pretty much what you're going to argue.
14:13:13 21              Okay.  Thank you all very much.  It's good to
14:13:27 22   see all of you.  It's been a while.
14:13:30 23              MR. BRYANT:  Thank you, Your Honor.
14:13:30 24              MR. WOFSY:  Thank you, Your Honor.
14:13:31 25         (End of transcript)
```

1  **UNITED STATES DISTRICT COURT        )**

2  **WESTERN DISTRICT OF TEXAS            )**

3      I, Arlinda Rodriguez, Official Court Reporter, United

4  States District Court, Western District of Texas, do certify

5  that the foregoing is a correct transcript from the record of

6  proceedings in the above-entitled matter.

7      I certify that the transcript fees and format comply with

8  those prescribed by the Court and Judicial Conference of the

9  United States.

10     WITNESS MY OFFICIAL HAND this the 8th day of April 2025.

11

12                              /S/ Arlinda Rodriguez
                                Arlinda Rodriguez, Texas CSR 7753
13                              Expiration Date:  10/31/2025
                                Official Court Reporter
14                              United States District Court
                                Austin Division
15                              501 West 5th Street, Suite 4152
                                Austin, Texas 78701
16                              (512) 391-8791

17

18

19

20

21

22

23

24

25

**Attachment B:**
*United States v. Iowa*, No. 24-2265,
2025 WL 1140834 (8th Cir. Apr. 15, 2025)

# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2265

_____

United States of America

*Plaintiff - Appellee*

v.

State of Iowa; Kimberly Reynolds, in her official capacity as Governor of Iowa;
Brenna Bird, in her official capacity as Attorney General of Iowa; Iowa
Department of Public Safety; Stephan Kenneth Bayens, in his official capacity as
Commissioner of Iowa Department of Public Safety

*Defendants - Appellants*

------------------------------

Immigration Reform Law Institute

*Amicus on Behalf of Appellant(s)*

American Immigration Lawyers Association; ASISTA Immigration Assistance;
Asian Pacific Institute on Gender-Based Violence; Esperanza United; Tahirih
Justice Center

*Amici on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: September 26, 2024
Filed: April 15, 2025

———————————

Before BENTON, ARNOLD, and KOBES, Circuit Judges.

———————————

## ORDER

The State of Iowa criminalized the presence within its boundaries of aliens who illegally reentered the United States. Aliens violating Iowa's Act are ordered to return to the country they reentered from. The Act forbids judges from abating a state prosecution due to a pending (or possible) federal determination of the alien's immigration status.

The United States sued to enjoin the enforcement of the Act. The district court granted the United States' motion for a preliminary injunction. The State of Iowa appealed. This court affirmed the district court's order granting the United States' motion for a preliminary injunction.

The mandate for this court's decision has not yet issued. The United States has filed a motion in the district court to unilaterally dismiss the case. Fed. R. Civ. P. 41(a)(1)(A)(i). Iowa petitions for rehearing and requests that this court vacate the prior panel decision and dismiss the appeal as moot. Iowa also requests that this court vacate the district court's order granting the United States a preliminary injunction and remand with instructions to dismiss the case.

A plaintiff may, without a court order, voluntarily dismiss an action in district court "before the opposing party serves either an answer or a motion for summary judgment." *Id.* Iowa never filed an answer, nor a motion for summary judgment. The United States may voluntarily dismiss its action in the district court. The effect of a voluntary dismissal without prejudice under Rule 41(a) "is to render the proceedings a nullity and leave the parties as if the action had never been brought."

-2-

*Williams v. Clarke*, 82 F.3d 270, 273 (8th Cir. 1996). Voluntary dismissal without prejudice "carries down with it previous proceedings and orders in the action." *In re Piper Aircraft Distribution System Antitrust Litigation*, 551 F.2d 213, 219 (8th Cir. 1977). This case thus will be dismissed in the district court, and the district court's order granting the United States' motion for a preliminary injunction will be vacated.

An appeal is moot when the requested judicial decree will no longer affect the rights of the parties. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Regardless of the outcome of Iowa's appeal, this case will be dismissed in the district court and the preliminary injunction for the United States will be vacated. Therefore, this court cannot render judicial relief that would affect the rights of either the United States or Iowa. The appeal is moot. *Cf. Hendrickson v. Secretary of Health and Human Services*, 774 F.2d 1355 (Mem) (8th Cir. 1985).

This court vacates the prior panel judgment and opinion. *Id.*, *applying United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950). Also, through "unilateral action of the party who prevailed below," the mootness of the appeal prevents Iowa from seeking review of the district court's ruling. *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 25 (1994). Therefore, this court dismisses Iowa's appeal, vacates the district court's order granting the United States' motion for a preliminary injunction, and remands to the district court with instructions to dismiss Case No. 4:24-cv-00162. *Hendrickson*, 774 F.2d at 1355. *Cf. Chapman v. Doe by Rothert*, 598 U.S. ___ (2023) (applying *United States v. Munsingwear* when a case was voluntarily dismissed according to Fed. R. Civ. P. 41(a)(1)(A)(ii)).

---