**No. 24-50149**
## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

STATE OF TEXAS; GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; TEXAS DEPARTMENT OF PUBLIC SAFETY; STEVEN C. MCCRAW, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF TEXAS DEPARTMENT OF PUBLIC SAFETY,

    Defendants-Appellants.

On Appeal from the United States District Court for the Western District of Texas

District Court Case Nos. 1:24-cv-8 1:23-cv-1537

---

## BRIEF OF *AMICI CURIAE* OHIO, SOUTH CAROLINA, AND 21 OTHER STATES SUPPORTING REHEARING *EN BANC*

---

ALAN WILSON
South Carolina Attorney General

THOMAS T. HYDRICK
Solicitor General
JOSEPH D. SPATE
Deputy Solicitor General
BENJAMIN M. MCGREY
Assistant Deputy Solicitor General
1000 Assembly St.
Columbia, SC 29201
803-734-3371
josephspate@scag.gov

DAVE YOST
Ohio Attorney General

MATHURA J. SRIDHARAN*
Solicitor General
 *Counsel of Record
TRANE J. ROBINSON
Deputy Solicitor General
30 E. Broad St., 17th Fl.
Columbus, Ohio 43215
614-466-8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for Amici Curiae States*
*Additional counsel listed alongside signature block*

## SUPPLEMENTAL CERTIFICATE OF INTERESTED PARTIES

*Amici Curiae* are governmental parties. Under Fifth Circuit Rule 28.2.1, a certificate of interested persons is not required.

# TABLE OF CONTENTS

**Page**

SUPPLEMENTAL CERTIFICATE OF INTERESTED PARTIES ..................... i

TABLE OF CONTENTS .......................................................................... ii

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF *AMICI* INTEREST AND SUMMARY OF ARGUMENT .... 1

ARGUMENT ........................................................................................... 3

    I.     The constitutional nature of preemption requires courts to interpret state and federal laws in harmony when possible. .............................................. 3

        A.     The Supremacy Clause constitutionalizes preemption. ...................... 4

        B.     Constitutional avoidance should guide preemption analysis. .............. 4

        C.     Constitutional avoidance curtails implied preemption. ...................... 8

        D.     The Texas law is not facially preempted. .......................................... 10

    II.    The district court and panel majority sought out conflict even though state and federal law are readily reconcilable. ......................................... 11

CONCLUSION ........................................................................................ 13

ADDITIONAL COUNSEL ....................................................................... 14

CERTIFICATE OF SERVICE .................................................................. 15

CERTIFICATE OF COMPLIANCE .......................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                                                                                           **Page(s)**

*Anderson v. Edwards*,
    514 U.S. 143 (1995) ........................................................................................... 10

*Arizona v. United States*,
    567 U.S. 387 (2012)........................................................................... 8, 11, 12

*Cal. Coastal Comm'n v. Granite Rock Co.*,
    480 U.S. 572 (1987) ............................................................................................3

*California v. Zook*,
    336 U.S. 725 (1945) ......................................................................................... 12

*English v. Gen. Elec. Co.*,
    496 U.S. 72 (1990) ..............................................................................................6

*Frisby v. Schultz*,
    487 U.S. 474 (1988) ...........................................................................................7

*GenBioPro, Inc. v. Raynes*,
    No. 23-2194, 2025 WL 1932936 (4th Cir. July 15, 2025)................................. 6, 8

*Gibbons v. Ogden*,
    22 U.S. 1 (1824) .................................................................................................4

*Granite Re, Inc. v. NCUA Bd.*,
    956 F.3d 1041 (8th Cir. 2020) ...........................................................................6

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991) ...........................................................................................7

*Hillsborough Cnty. v. Automated Med. Lab'ys, Inc.*,
    471 U.S. 707 (1985) ...........................................................................................9

*Hooper v. California*,
    155 U.S. 648 (1895) ...........................................................................................5

*INS v. St. Cyr*,
    533 U.S. 289 (2001) ...........................................................................................5

*Janvey v. Brown*,
   767 F.3d 430 (5th Cir. 2014) .................................................................9

*Jennings v. Rodriquez*,
   583 U.S. 281 (2018) ..............................................................................9

*Kansas v. Garcia*,
   589 U.S. 191 (2020) ................................................................ 9, 11, 12

*Kurns v. RR Friction Prods. Corp.*,
   565 U.S. 625 (2012) ..............................................................................9

*La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*,
   461 F.3d 529 (5th Cir. 2006) .................................................................6

*MediaOne Grp., Inc. v. Cnty. of Henrico*,
   257 F.3d 356 (4th Cir. 2001) .................................................................6

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024) ...................................................................... 3, 10

*Murphy v. NCAA*,
   584 U.S. 453 (2018) ..............................................................................4

*N.J. Payphone Ass'n v. Town of W. N.Y.*,
   299 F.3d 235 (3d Cir. 2002) ....................................................... 5, 7, 12

*Perez v. Campbell*,
   402 U.S. 637 (1971) ......................................................................... 4, 7

*Planned Parenthood v. Sanchez*,
   403 F.3d 324 (5th Cir. 2005) .................................................................6

*Sackett v. EPA*,
   598 U.S. 651 (2023) ..............................................................................5

*Spector Motor Serv., Inc. v. McLaughlin*,
   323 U.S. 101 (1944) ..............................................................................5

*Stenberg v. Carhart*,
   530 U.S. 914 (2000) ..............................................................................7

*Tafflin v. Levitt*,
   493 U.S. 455 (1990) ................................................................ 7

*Torres v. Precision Indus.*,
   938 F.3d 752 (6th Cir. 2019) .................................................. 5

*United States v. Hansen*,
   599 U.S. 762 (2023) ................................................................ 5

*United States v. Salerno*,
   481 U.S. 739 (1987) .......................................................... 3, 10

*Util. Air Regulatory Grp. v. EPA*,
   573 U.S. 302 (2014) ................................................................ 5

*Va. Uranium, Inc. v. Warren*,
   587 U.S. 761 (2019) ............................................................ 1, 9

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ...................................................... 4, 6, 8

**Statutes, Rules, and Constitutional Provisions**

U.S. Const., amend. X .................................................................. 7

U.S. Const., art. 1, §8 .................................................................. 7

U.S. Const., art. VI ................................................................. 2, 4

1 Pa. Cons. Stat. §1922 .............................................................. 7

8 U.S.C. §1325 ........................................................................ 10

8 U.S.C. §1326 ........................................................................ 10

29 U.S.C. §1144 ...................................................................... 11

Colo. Rev. Stat. §2-4-201 ............................................................ 7

Fed. R. App. P. 29 ...................................................................... 2

Iowa Code §4.4 .......................................................................... 7

Minn. Stat. §645.17 ........................................................................... 7

N.D. Cent. Code §1-02-38 ................................................................. 7

N.M. Stat. §12-2A-18A ..................................................................... 7

Ohio Rev. Code §1.47 ....................................................................... 7

Tex. Gov't Code §311.021 ................................................................ 7

Tex. Penal Code §51.01 .................................................................. 12

Tex. Penal Code §51.02 .............................................................. 10, 12

Tex. Penal Code §51.03 .............................................................. 10, 12

**Other Authorities**

Allison H. Eid, *Preemption and the Federalism Five*, 37 Rutgers L.J. 1 (2005) ................................................................................................ 4

Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. Rev. 109 (2010) .......................................................................... 5

Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ........................................................................... 6

Caleb Nelson, *Preemption*, 86 Va. L. Rev. 225 (2000) ............................ 4

The Federalist No. 45 (Madison) ...................................................... 7

U.S. Homeland Security Committee, *"Every State is Now a Border State": House Homeland Security Committee Hears Testimony from Colleagues on Impacts of the Border Crisis* (Dec. 7, 2023) ...................... 1

**STATEMENT OF *AMICI* INTEREST AND SUMMARY OF ARGUMENT**

Texas exercised its sovereign authority to combat the humanitarian crisis that afflicted its southern border, and indeed the entire Nation, in 2023. *See* U.S. Homeland Security Committee, *"Every State is Now a Border State": House Homeland Security Committee Hears Testimony from Colleagues on Impacts of the Border Crisis* (Dec. 7, 2023), https://perma.cc/HTS5-BP7U. Texas acted to stem the illegal entry of aliens into its State by mirroring federal laws enacted for the same purpose (in legislation the parties call S.B.4). That legislation plainly served Texans' health, safety, and welfare. Other States, suffering the effects of mass illegal immigration different from Texas's in degree but not kind, should retain the same legislative prerogative to wield their police powers.

In holding otherwise, this Court diminished every State's sovereignty. The divided panel held that the Immigration and Nationality Act facially preempts S.B.4. If that is right, then the full Court should say so. But the panel was incorrect. Its preemption decision "represents a serious intrusion into state sovereignty." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 773 (2019) (quotation omitted).

*Amici* States—Ohio, South Carolina, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Oklahoma, South Dakota, Tennessee, Virginia, West

Virginia, and Wyoming—are interested in ensuring their duly enacted laws remain enforceable. *Amici* States write to emphasize the first principles the panel ignored, and that the full Court should follow. Fed. R. App. P. 29(b)(2). At bottom, preemption analysis is a choice of law inquiry. When federal and state laws conflict, federal law controls. The Supremacy Clause provides that rule of decision. U.S. Const., art. VI, cl.2. Therefore, a state law irreconcilable with federal law is constitutionally unenforceable. The central question is whether state and federal laws collide, and the typical tools of judicial review should inform that contact-point in the preemption analysis.

Chief among those tools of judicial analysis is constitutional avoidance. That canon counsels courts to interpret statutes to avoid getting the Constitution involved to displace them. Because every preemption holding embroils the Constitution's Supremacy Clause in the controversy, courts should find state laws preempted, especially impliedly preempted, only if the state and federal statutory texts offer no permissible harmonious construction. If a statutory conflict is avoidable, then it should be avoided. Constitutional avoidance in preemption analysis honors the dual-sovereign structure that the States assented to in 1789.

The panel opinion relegated the constitutional-avoidance canon to an afterthought, despite wielding the Constitution to facially enjoin enforcement of a state

law.  In finding the Texas law both field and conflict preempted, it applied a rule that "positing a hypothetical non-preempted application is not sufficient to defeat a facial preemption challenge."  Panel.Op.46–47.  That plainly flouts *Moody v. NetChoice* and *Salerno*.  In a facial challenge, Texas "needed merely to identify a possible [application of S.B.4] not in conflict with federal law."  *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 593 (1987).  The Texas law can comfortably coexist with federal immigration law—indeed, aligning state law with federal law was Texas's conspicuous aim.

## ARGUMENT

### I.     The constitutional nature of preemption requires courts to interpret state and federal laws in harmony when possible.

Because preemption always presents a constitutional question—whether the Supremacy Clause negates state law—courts should apply constitutional avoidance in preemption analysis.  That canon instructs courts to read statutes to avoid embroiling the Constitution in the controversy.

Constitutional avoidance orients preemption analysis toward harmonizing state and federal law.  That way, the Supremacy Clause springs into action to void state law only as a last resort.  Disregard of constitutional avoidance principles leads courts to search for dissonance and conflict.  That approach wrongly enlarges

preemption doctrine and damages the constitutional balance of state and federal powers.

### A.    The Supremacy Clause constitutionalizes preemption.

Preemption is constitutionally prescribed by the Supremacy Clause.  U.S. Const., art. VI, cl. 2; *Gibbons v. Ogden*, 22 U.S. 1, 82 (1824); *Murphy v. NCAA*, 584 U.S. 453, 477 (2018).  That Clause provides a rule of decision when state and federal law conflict:  Federal law controls.  Because "the Supremacy Clause is the reason that valid federal statutes trump state law," Caleb Nelson, *Preemption*, 86 Va. L. Rev. 225, 234 (2000) ("Nelson"), preemption analysis presents a "constitutional question," *Perez v. Campbell*, 402 U.S. 637, 644 (1971).  The Clause is not an independent source of congressional power but "embeds a fundamental conflict of law rule in the text of the Constitution."  Allison H. Eid, *Preemption and the Federalism Five*, 37 Rutgers L.J. 1, 29 (2005) (quotation omitted).

### B.    Constitutional avoidance should guide preemption analysis.

Preemption analysis is an exercise of statutory interpretation.  Congress's textually manifest intent is the "touchstone" for that interpretation.  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quotation omitted).  But, as with all constitutional adjudication, the constitutional mooring of preemption influences that statutory

interpretation. Because the Constitution prescribes preemption of state laws that conflict with federal law, courts should read state laws to avoid their constitutional demise.

Classical constitutional avoidance is a centuries-old rule of statutory interpretation that courts should apply "every reasonable construction … in order to save a statute from unconstitutionality." *Hooper v. California*, 155 U.S. 648, 657 (1895); *see also INS v. St. Cyr*, 533 U.S. 289, 299–300 n.12 (2001). Constitutional avoidance dates to the Founding era, *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944); Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. Rev. 109, 139 (2010), and looms large to this day, *see United States v. Hansen*, 599 U.S. 762, 781 (2023); *Sackett v. EPA*, 598 U.S. 651, 679–80 (2023); *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 327–28 (2014). Constitutional avoidance appears in two forms: Courts prefer to resolve cases on non-constitutional grounds when available, and courts interpret statutes to avoid a conflict with higher law. Both reflect a healthy caution and humility before resort to the permanency of constitutional pronouncements. *See N.J. Payphone Ass'n v. Town of W. N.Y.*, 299 F.3d 235, 249 (3d Cir. 2002) (Alito, J., concurring).

Several circuits recognize that constitutional avoidance requires courts to avoid preemption holdings. *See, e.g.*, *Torres v. Precision Indus.*, 938 F.3d 752, 754–56

(6th Cir. 2019) (Thapar, J.); *MediaOne Grp., Inc. v. Cnty. of Henrico*, 257 F.3d 356, 361 (4th Cir. 2001); *see also Granite Re, Inc. v. NCUA Bd.*, 956 F.3d 1041, 1048 (8th Cir. 2020); *La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529, 532 & n.5 (5th Cir. 2006). This Court took that premise to its logical conclusion, applying constitutional avoidance to interpret state law when conducting preemption analysis. *Planned Parenthood v. Sanchez*, 403 F.3d 324, 341–42 (5th Cir. 2005). As Judge Wilkinson recently wrote for the Fourth Circuit, the "need for clarity in statutory preemption is grounded in the rudiments of constitutional structure," meaning preemption should be reserved for clear statutory conflicts reflected in the respective laws. *GenBioPro, Inc. v. Raynes*, No. 23-2194, 2025 WL 1932936, at *5 (4th Cir. July 15, 2025).

Constitutional avoidance aligns with the preemption and federalism canons, too. The presumption against preemption means courts must assess preemption with discipline, finding congressional intent to preempt state law only when it "clearly exists." *English v. Gen. Elec. Co.*, 496 U.S. 72, 90 (1990); Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 290 (2012). Courts presume against preemption "because respect for the States as independent sovereigns in our federal system leads us to assume that Congress does not cavalierly pre-empt" state laws. *Wyeth*, 555 U.S. at 565 n.3 (quotation omitted). The anti-preemption

canon could be understood as an application of constitutional avoidance to federal law and the Supremacy Clause. And constitutional avoidance provides a more holistic interpretive method that encompasses the state-law side of the preemption equation. *See Frisby v. Schultz*, 487 U.S. 474, 483 (1988); *Stenberg v. Carhart*, 530 U.S. 914, 941 (2000). Preemption analysis requires interpreting state and federal law; courts should welcome saving constructions from both. *See N.J. Payphone*, 299 F.3d at 249 (Alito, J., concurring); *Perez*, 402 U.S. at 644. Indeed, several states codify the presumption that their laws are intended to harmonize with federal law. Ohio Rev. Code §1.47(A); Tex. Gov't Code §311.021(1); Colo. Rev. Stat. §2-4-201(1)(a); Iowa Code §4.4(1); Minn. Stat. §645.17(3); N.D. Cent. Code §1-02-38(1); N.M. Stat. §12-2A-18A(3); 1 Pa. Cons. Stat. §1922(3).

Federalism likewise bolsters the wisdom of constitutional avoidance in preemption analysis. While federal powers are limited and enumerated, U.S. Const., art. 1, §8, the States retain a resplendent wellspring of reserved and concurrent powers, U.S. Const., amend. X; The Federalist No. 45 (James Madison). The Constitution split the atom of sovereignty, "subject only to limitations imposed by the Supremacy Clause." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). The "federalist structure of joint sovereigns preserves to the people" the benefit of "a decentralized government that will be more sensitive to the needs of a heterogenous society." *Gregory*

*v. Ashcroft*, 501 U.S. 452, 458 (1991).  As the Fourth Circuit now holds, federalism creates a clear statement rule for preemption:  "Unless a statute reveals a clear and manifest intent to the contrary, we must presume Congress does not intend to upend the historic relationship of the federal and state governments." *GenBioPro*, 2025 WL 1932936, at *5.  Such a clear statement rule is natural here, given States' history of "numerous laws restricting the immigration of certain classes of aliens." *Arizona v. United States*, 567 U.S. 387, 419 (2012) (Scalia, J., dissenting in part); Panel.Op.150 (Oldham, J., dissenting).

### C.    Constitutional avoidance curtails implied preemption.

The avoidance canon also mitigates the damage from more aggressive conceptions of preemption, like implied preemption.  Implied preemption doctrines wrongly invert the presumption against preemption, inviting conflict without any express indication in the federal statute.  Such a conflict-seeking approach that "wander[s] far from the statutory text" is "inconsistent with the Constitution." *Wyeth*, 555 U.S. at 583 (Thomas, J., concurring).  Implied preemption suffocates concurrent federal and state legislation, asphyxiating the vertical structure of the Constitution.  After all, "nearly every federal statute addresses an area in which the states also have authority to legislate." Nelson, at 225.

Accordingly, the Supreme Court has reoriented implied preemption analysis to "the text and structure of the statute at issue." *Va. Uranium*, 587 U.S. at 778 (quotation omitted); *see also Kansas v. Garcia*, 589 U.S. 191, 213 (2020) (Thomas, J., concurring); *Kurns v. RR Friction Prods. Corp.*, 565 U.S. 625, 640–41 (2012) (Sotomayor, J., dissenting). Freewheeling inferences of preemption "whenever an agency deals with a problem comprehensively" (as the panel majority displayed here) defies "the federal-state balance embodied in [the Supreme Court's] Supremacy Clause jurisprudence" and the Constitution. *Hillsborough Cnty. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 717 (1985). Courts should not *imply* absent conflicts; they should employ constitutional avoidance to seek harmony between the laws of separate sovereigns.

To be sure, constitutional avoidance has no application to statutes that lack a plausible constitutional construction. *See Jennings v. Rodriquez*, 583 U.S. 281, 286 (2018). That is equally true when state and federal law are truly irreconcilable. But, as the Restatement teaches, choice-of-law analysis applies only if "a true conflict exists." *Janvey v. Brown*, 767 F.3d 430, 435 (5th Cir. 2014) (applying Texas law). That should hold even more for preemption, given its constitutional mooring: If a permissible statutory interpretation exists that avoids conflict, courts should prefer that reading.

### D.    The Texas law is not facially preempted.

The rationale for interpreting state law through a conflict-avoidance lens applies with even greater force against a facial challenge.  The plaintiffs' argument *is not* the ordinary claim that federal law preempts some discrete application of Texas law against them.  Their argument is much bolder, that federal law preempts any application of the Act against *anyone*.  That litigation choice "comes at a cost." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024).

 Because this is not a First Amendment challenge, the plaintiffs shoulder a "heavy burden" to show "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).  That is, *any* non-preempted application of the statutes enacted in S.B.4 should suffice to defeat the plaintiffs' facial challenge. *Id.*; *see Anderson v. Edwards*, 514 U.S. 143, 155 n.6 (1995) (applying *Salerno* to preemption).

Appellees cannot meet their "heavy burden," not least because the challenged provisions mirror federal law.  Texas essentially has codified portions of federal immigration law as its state law. *Compare* Tex. Penal Code §§51.02–03, *with* 8 U.S.C. §§1325(a), 1326(a).  That leaves no basis to conclude Texas law facially contradicts the INA.  Coincidence of state and federal law makes conflict preemption

"impossible, and field preemption … no more likely." Panel.Op.152 (Oldham, J., dissenting) (citing *Garcia*, 589 U.S. at 211–12).

## II.   The district court and panel majority sought out conflict even though state and federal law are readily reconcilable.

The district court and panel majority failed to heed the principle of judicial restraint embodied in constitutional avoidance. At this *en banc* petition stage, the States focus on the panel decision. *See also* Panel *Amici* Br.18–20, 24–26. The panel held the Act is both field and conflict preempted facially. Neither holding is correct.

The panel held that the INA occupies the field of immigration law to the exclusion of State participation. But no provision of the INA says that. *Cf.* 29 U.S.C. §1144(a) (ERISA). Indeed, the INA itself invites State participation, as Judge Oldham explained, thus roundly refuting implied field preemption. Panel.Op.155 (Oldham, J., dissenting). And the States' historical participation in immigration legislation belies a field exclusive to Congress. *Id.* at 150.

The panel grounded field preemption in *Arizona*, but that position is untenable. In fact, that case held that a major component of the state immigration law— §2(B), requiring state officers to assess a subject's immigration status—*was not preempted*. *Arizona*, 567 U.S. at 415. *Arizona* actually refutes the proposition that the INA field preempts state immigration laws.

The panel's conflict preemption analysis was even more flawed. The panel managed to find conflict where Texas and federal law radically *align*. *See* Tex. Penal Code §§51.01(1), .02(c), .03(b). When state and federal law align, "[t]here is no conflict." *California v. Zook*, 336 U.S. 725, 738 (1945). A state law—one within traditional realms of state legislation—that duplicates a federal policy "does not mean the automatic invalidity" of the former. *Id.* at 730. The panel turned the "federal system … upside down" by finding implied conflict preemption between the Texas law and the INA on account that "they overlap." *Garcia*, 589 U.S. at 212. The panel should have looked instead to avoid conflict, recognizing that Texas law and the INA can coexist.

*    *    *

Constitutional avoidance should inform preemption analysis. That canon respects "the 'great gravity and delicacy' of judicial review, separation of powers, the paramount importance of constitutional adjudication, the case or controversy requirement, and principles of federalism." *N.J. Payphone*, 299 F.3d at 249 (Alito, J., concurring). Those principles prime this case for *en banc* review, lest the States lose their capacity to legislate in an area so "inherent in sovereignty" as immigration without the full Court's approval. *Arizona*, 567 U.S. at 417 (Scalia, J., dissenting in part).

## CONCLUSION

For these reasons, the Court should grant *en banc* review and reverse the district court.

| | |
|---|---|
| ALAN WILSON | DAVE YOST |
| South Carolina Attorney General | Ohio Attorney General |
| | |
| THOMAS T. HYDRICK | */s/ Mathura J. Sridharan* |
| Solicitor General | MATHURA J. SRIDHARAN* |
| JOSEPH D. SPATE | Solicitor General |
| Deputy Solicitor General | *Counsel of Record |
| BENJAMIN M. MCGREY | TRANE J. ROBINSON |
| Assistant Deputy Solicitor General | Deputy Solicitor General |
| 1000 Assembly St. | 30 E. Broad St., 17th Fl. |
| Columbia, SC 29201 | Columbus, Ohio 43215 |
| 803-734-3371 | 614-466-8980 |
| josephspate@scag.gov | Mathura.Sridharan@OhioAGO.gov |
| | |
| | *Counsel for Amici Curiae States* |

## ADDITIONAL COUNSEL

STEVE MARSHALL
Alabama Attorney General

TREG R. TAYLOR
Alaska Attorney General

TIM GRIFFIN
Arkansas Attorney General

JAMES UTHMEIER
Florida Attorney General

CHRISTOPHER M. CARR
Georgia Attorney General

RAÚL R. LABRADOR
Idaho Attorney General

THEODORE E. ROKITA
Indiana Attorney General

BRENNA BIRD
Iowa Attorney General

KRIS KOBACH
Kansas Attorney General

LIZ MURRILL
Louisiana Attorney General

LYNN FITCH
Mississippi Attorney General

ANDREW BAILEY
Missouri Attorney General

AUSTIN KNUDSEN
Montana Attorney General

MICHAEL T. HILGERS
Nebraska Attorney General

DREW H. WRIGLEY
North Dakota Attorney General

GENTNER DRUMMOND
Oklahoma Attorney General

MARTY JACKLEY
South Dakota Attorney General

JONATHAN SKRMETTI
Tennessee Attorney General
and Reporter

JASON MIYARES
Virginia Attorney General

JOHN B. MCCUSKEY
West Virginia Attorney General

KEITH G. KAUTZ
Wyoming Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2025, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Mathura J. Sridharan*
Mathura J. Sridharan
Ohio Solicitor General

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, that this brief complies with the type-volume requirements and contains 2,556 words. *See* Fed. R. App. P. 29(b)(4).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity font.

*/s/  Mathura J. Sridharan*
Mathura J. Sridharan
Ohio Solicitor General