## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Docket No. 24-50149

UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

STATE OF TEXAS; GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS
GOVERNOR OF TEXAS; TEXAS DEPARTMENT OF PUBLIC SAFETY;
FREEMAN F. MARTIN, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF
TEXAS DEPARTMENT OF PUBLIC SAFETY,

*Defendants – Appellants.*

LAS AMERICAS IMMIGRANT ADVOCACY CENTER, AMERICAN
GATEWAYS, COUNTY OF EL PASO, TEXAS,

*Plaintiffs – Appellees,*

v.

FREEMAN F. MARTIN, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF
TEXAS DEPARTMENT OF PUBLIC SAFETY; JAMES MONTOYA, IN HIS
OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR THE 34TH DISTRICT,

*Defendants – Appellants.*

**On Appeal from**
United States District Court for the Western District of Texas,
Nos. 1:24-cv-00008-DAE (lead case), 1:23-cv-01537

**PLAINTIFFS-APPELLEES' OPPOSITION TO PETITION FOR
REHEARING EN BANC**

David A. Donatti
(TX Bar No. 24097612)
Adriana C. Piñon
(TX Bar No. 24089768)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 942-8146
Facsimile: (713) 942-8966
ddonatti@aclutx.org
apinon@aclutx.org

*For Plaintiffs-Appellees*
*Las Americas Immigrant Advocacy*
*Center, American Gateways, and*
*County of El Paso*

Daniel Hatoum
(TX Bar No. 24099136)
Erin D. Thorn
(TX Bar No. 24093261)
TEXAS CIVIL RIGHTS PROJECT
1017 W. Hackberry Ave.
Alamo, TX 78516
Telephone: (512) 474-5073, ext. 207
Facsimile: (956) 787-6348
daniel@texascivilrightsproject.org
erin@texascivilrightsproject.org

*For Plaintiffs-Appellees*
*Las Americas Immigrant Advocacy*
*Center and American Gateways*

Christina Sanchez
(TX Bar No. 2406298)
El Paso County Attorney
320 S. Campbell St., Suite 200
El Paso, Texas 79901

Cody Wofsy
Spencer Amdur
Hannah Steinberg
Morgan Russell
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0770
F: (415) 395-0950
cwofsy@aclu.org
samdur@aclu.org
hsteinberg@aclu.org
mrussell@aclu.org

Anand Balakrishnan
Omar Jadwat
Lee Gelernt
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
abalakrishnan@aclu.org
ojadwat@aclu.org
lgelernt@aclu.org

Kathryn Huddleston*
(TX Bar No. 24121679)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
915 15th Street, NW, 7th Floor
Washington, DC 20005
T: (212) 549-2500
khuddleston@aclu.org

Tel: (915) 273-3247
ch.sanchez@epcountytx.gov

Bernardo Rafael Cruz
(TX Bar No. 24109774)
Assistant County Attorney
320 S. Campbell St., Suite 200
El Paso, Texas 79901
Tel: (915) 273-3247
b.cruz@epcounty.com

*For Plaintiff County of El Paso*

*For Plaintiffs-Appellees*
*Las Americas Immigrant Advocacy*
*Center, American Gateways, and*
*County of El Paso*

*\*Barred in Texas and Arizona only;*
*supervised by a member of the D.C.*
*Bar*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| American Gateways | Cody Wofsy<br>Spencer Amdur<br>Hannah Steinberg<br>Morgan Russell<br>American Civil Liberties Union Foundation, Immigrants' Rights Project<br>San Francisco, CA<br><br>Anand Balakrishnan<br>Omar Jadwat<br>Lee Gelernt<br>American Civil Liberties Union Foundation, Immigrants' Rights Project<br>New York, NY<br><br>Kathryn Huddleston<br>American Civil Liberties Union Foundation, Immigrants' Rights Project<br>Washington, D.C.<br><br>David A. Donatti<br>Adriana Piñon<br>American Civil Liberties Union of Texas<br>Houston, TX |

| | Daniel Hatoum<br>Erin D. Thorn<br>Texas Civil Rights Project<br>Alamo, TX |
|---|---|
| County of El Paso, Texas | Cody Wofsy<br>Spencer Amdur<br>Hannah Steinberg<br>Morgan Russell<br>American Civil Liberties Union<br>Foundation, Immigrants' Rights<br>Project<br>San Francisco, CA<br><br>Anand Balakrishnan<br>Omar Jadwat<br>Lee Gelernt<br>American Civil Liberties Union<br>Foundation, Immigrants' Rights<br>Project<br>New York, NY<br><br>Kathryn Huddleston<br>American Civil Liberties Union<br>Foundation, Immigrants' Rights<br>Project<br>Washington, D.C.<br><br>David A. Donatti<br>Adriana Piñon<br>American Civil Liberties Union of<br>Texas<br>Houston, TX<br><br>Christina Sanchez<br>Bernardo Rafael Cruz<br>County Attorney's Office<br>El Paso, TX |
| Las Americas Immigrant Advocacy Center | Cody Wofsy<br>Spencer Amdur |

| | Hannah Steinberg<br>Morgan Russell<br>American Civil Liberties Union Foundation, Immigrants' Rights Project<br>San Francisco, CA<br><br>Anand Balakrishnan<br>Omar Jadwat<br>Lee Gelernt<br>American Civil Liberties Union Foundation, Immigrants' Rights Project<br>New York, NY<br><br>Kathryn Huddleston<br>American Civil Liberties Union Foundation, Immigrants' Rights Project<br>Washington, D.C.<br><br>David A. Donatti<br>Adriana Piñon<br>American Civil Liberties Union of Texas<br>Houston, TX<br><br>Daniel Hatoum<br>Erin D. Thorn<br>Texas Civil Rights Project<br>Alamo, TX |
| --- | --- |

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Freeman Martin | Ken Paxton<br>Brent Webster<br>William R Peterson<br>William Francis Cole<br>Daniel Ortner<br>Munera Al-Fuhaid |

| | Monroe David Bryant |
| | Susanna Dokupil |
| | Amy Snow Hilton |
| | Danierl Ortner |
| | Jacob Przada |
| | Kyle Tebo |
| | Ryan Daniel Walters |
| | Office of the Attorney General |
| | Austin, TX |
| James Montoya | Francisco J. Ortega |
| | ScottHulse, P.C. |
| | El Paso, TX |

*/s/ Cody Wofsy*

Cody Wofsy


*Attorney of Record for*
*Plaintiffs-Appellees Las Americas*
*Immigrant Advocacy Center, American*
*Gateways, and County of El Paso*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................**Error! Bookmark not defined.**

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................2

I.   THE PANEL FAITHFULLY APPLIED ORGANIZATIONAL STANDING PRECEDENT ...............................................................................2

II.   THE PANEL ADHERED TO 150 YEARS OF SUPREME COURT PRECEDENT, REACHING THE SAME PREEMPTION CONCLUSION AS EVERY OTHER COURT AROUND THE COUNTRY. ......................................7

   A.   S.B.4 Is Field Preempted............................................................9

   B.   S.B.4 Is Conflict Preempted.......................................................12

CONCLUSION ..................................................................................18

CERTIFICATE OF COMPLIANCE ......................................................20

CERTIFICATE OF SERVICE .............................................................20

# TABLE OF AUTHORITIES

## Cases

*Arizona v. United States*,
567 U.S. 387 (2012)......................................................................*passim*

*Bond v. United States*,
564 U.S. 211 (2011)...........................................................................6

*Chy Lung v. Freeman*,
92 U.S. 275 (1875)............................................................................1

*Collins v. Yellen*,
594 U.S. 220 (2021)...........................................................................6

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)..........................................................................14

*Deep S. Ctr. for Env'tal Just. v. EPA*,
138 F.4th 310 (5th Cir. 2025) ....................................................1, 5, 7

*El Cenizo v. Texas*,
890 F.3d 164 (5th Cir. 2018) ............................................................15

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024)..................................................................*passim*

*FEC v. Cruz*,
596 U.S. 289 (2022)...........................................................................4

*Fla. Immigrant Coal. v. Att'y Gen.*,
No. 25-11469, 2025 WL 1625385 (11th Cir. June 6, 2025) .........................8, 11

*Fla. Immigrant Coal. v. Uthmeier*,
No. 25-21524-CV-WILLIAMS, 2025 WL 1423357 (S.D. Fla. Apr.
29, 2025) ........................................................................................8

*Fong Yue Ting v. United States*,
149 U.S. 698 (1893)...........................................................................9

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982)...........................................................................2

*Idaho Org. of Res. Councils v. Labrador*,
    No. 1:25-CV-00178-AKB, 2025 WL 1237305 (D. Idaho Apr. 29,
    2025) ................................................................................................8, 11

*Kansas v. Garcia*,
    589 U.S. 191 (2020)...........................................................................14

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004).............................................................................6

*Lozano v. City of Hazleton*,
    724 F.3d 297 (3d Cir. 2013) ................................................................8

*NAACP v. City of Kyle*,
    626 F.3d 233 (5th Cir. 2010) ..............................................................6

*Nishimura Ekiu v. United States*,
    142 U.S. 651 (1892)............................................................................9

*OCA-Greater Houston v. Texas*,
    867 F.3d 604 (5th Cir. 2017) ..............................................................6

*Padres Unidos de Tulsa v. Drummond*,
    No. CIV-24-511-J, 2025 WL 1573590 (W.D. Okla. June 3, 2025) ..............8, 11

*PG&E Co. v. State Energy Res. Conservation & Dev. Comm'n*,
    461 U.S. 190 (1983)..........................................................................11

*Plyler v. Doe*, 457 U.S. 202 (1982)...........................................................9

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)..........................................................................13

*Tex. Tribune v. Caldwell County*,
    121 F.4th 520 (5th Cir. 2024) .............................................................6

*United States v. Abbott*,
    110 F.4th 700 (Douglas, J., dissenting) ............................................17

*United States v. Alabama*,
    691 F.3d 1269 (11th Cir. 2012) ..........................................................8

*United States v. Iowa*,
    126 F.4th 1334 (8th Cir. 2025) ...............................................8, 13, 15

*United States v. Iowa*,
    2025 WL 1140834 (8th Cir. Apr. 15, 2025) ......................................9

*United States v. Iowa*,
    737 F. Supp. 3d 725 (S.D. Iowa 2024) ..........................................8, 11

*United States v. Locke*,
    529 U.S. 89 (2000) ..................................................................8

*United States v. South Carolina*,
    720 F.3d 518 (4th Cir. 2013) ......................................................8

*United States v. Texas*,
    599 U.S. 670 (2023) ................................................................13

*Uthmeier v. FL. Immigrant Coal.*,
    No. 24A1269, 2025 WL 1890573 (U.S. 2025) ...............................2, 9

*Villas at Parkside Partners v. City of Farmers Branch*,
    726 F.3d 524 (5th Cir. 2013) (en banc) ......................................10, 11

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ................................................................16

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) ................................................................17

**INTRODUCTION**

Defendants seek en banc rehearing on two bases: organizational standing and preemption. But the Panel faithfully applied binding Supreme Court precedent as to both, in line with this Court's organizational standing caselaw and decisions enjoining other state entry laws from around the country. Rehearing en banc is unwarranted.

First, *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), confirms standing here. *Alliance* rejected standing to challenge a policy predicated on lobbying and advocacy against that policy. *Id*. at 394; *accord Deep S. Ctr. for Env't Just. v. EPA*, 138 F.4th 310, 319-20 (5th Cir. 2025) (same). But it reaffirmed standing where government action interferes with an organization's direct services. *Alliance*, 602 U.S. at 395. And here, as the Panel recognized, the evidence establishes that S.B.4—which creates an entire new state immigration system, cutting off access to asylum for Plaintiff Las Americas' clients and impacting some 80,000 people in the first year—would severely interfere with Las Americas' core functions providing immigration legal services.

Second, the Panel's preemption holdings are a direct application of longstanding Supreme Court precedent, stretching from *Chy Lung v. Freeman*, 92 U.S. 275 (1875), to *Arizona v. United States*, 567 U.S. 387 (2012). Indeed, *every* judge on *every* other court considering similar laws, including the Eighth and

Eleventh Circuits, has held them likely preempted. And recently, the Supreme Court denied a stay application advancing Texas's arguments, with no noted dissents. *See Uthmeier v. FL. Immigrant Coal.*, No. 24A1269, 2025 WL 1890573 (U.S. 2025).

In short, there is no conflict with precedent and no "error," much less one "of exceptional public importance." CA5 I.O.P. at 36 (2024).

## ARGUMENT

### I. THE PANEL FAITHFULLY APPLIED ORGANIZATIONAL STANDING PRECEDENT.

Defendants argue that the Panel's decision "expan[ded] organizational standing" and conflicts with the Supreme Court's decision in *Alliance*. Pet. 7-10. That is wrong.

*Alliance* explicitly reaffirmed *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), confirming that an organization has standing where the challenged action "directly affect[s] and interfere[s] with [the organization's] core business activities." *Alliance*, 602 U.S. at 395. Here, Las Americas' "core business activities" involve representing recent entrants and ensuring that they "have a fair opportunity to establish their eligibility for relief from removal." App.11-12. As the Panel explained, S.B.4 "directly affect[s] and interfere[s] with" these activities, *Alliance*, 602 U.S. at 395, by creating an "entirely new front that Las Americas must navigate to serve its clients." App.13-14. Unlike the federal system, S.B.4's

2

state immigration system threatens individuals into accepting removal in lieu of prosecution; requires state judges to order removal; and provides no defense to those seeking federal immigration relief. App.4, 19.

S.B.4 will thus plainly "perceptibly impair," *Alliance*, 602 U.S. at 395 (quoting *Havens*, 455 U.S. at 379), Las Americas' core operations. App.20-22 (Las Americas has shown "far more than simply a setback to the organization's abstract social interests"). Consistent with its organizational mission of assisting those in the most immediate danger of removal, Las Americas will have to set up "an entirely new operation" to reach, counsel, and represent noncitizens held under S.B.4. App.12-17. That will reduce "funding and staff time" available for existing programs and "the total number of immigrants Las Americas can serve." App.11, 17 (quoting ROA.948, ¶ 55); *see also* App.9-11, 20-21. And even with this new operation, S.B.4's state deportation regime will make Las Americas' representation of immigrant clients seeking asylum and other immigration relief "more difficult and time-consuming," App.15 (quoting ROA.947, ¶ 52), and in some instances prevent Las Americas from assisting individuals in seeking federal immigration relief before they are removed, App.10-11. This, too, will decrease "the total number of immigrants Las Americas can serve" as well as decrease "[i]ts success in assisting" clients "in obtaining relief under federal immigration laws." App.10-11.

Texas is wrong to suggest the Panel's opinion would establish standing for "*any* new criminal law." Pet. 9. S.B.4 is not just any crime; it would be a massive sea change with major implications for Las Americas' core operations, as described above. *See* App.25-26 (Texas estimated some 80,000 arrests the first year). These decisions are no more "voluntary" than in *Havens* itself. Pet. 8; *see* App.22 ("voluntary" analysis is controlled by *Havens*); *see also FEC v. Cruz*, 596 U.S. 289, 297 (2022) (rejecting asserted rule against standing based on "self-inflicted" harm that "could be described in some sense as willingly incurred"). Otherwise, Las Americas' clients would face summary removal with no opportunity to seek federal relief. App.10-11, 17.

Texas charges that the Panel applied "the diversion of resources and 'spend[ing] its way into standing' theory rejected in *Alliance*." Pet. 8. But the Panel *expressly* recognized that "standing is not demonstrated just because 'an organization diverts its resources'" and that an organization cannot "manufacture its own standing" "simply by expending money to gather information and advocate against the defendant's action." App.27 (quoting *Alliance*, 602 U.S. at 394-95). However, it correctly concluded that Las Americas had shown far more here. App.

17 (explaining that impacts "are far more detailed and at least as impactful as those the Supreme Court held to have established injury to an organization in *Havens*").[1]

Texas nevertheless argues that the Panel's decision conflicts with *Alliance* and *Deep South*. Pet. 7-8. But those cases involved *issue advocacy* spending, lobbying against particular public policy outcomes. In *Alliance*, the Supreme Court held that an "issue-advocacy organization" could not establish standing based on resources expended "drafting citizen petitions" and "engaging in public advocacy and public education." 602 U.S. at 394-95. Following *Alliance*, *Deep South* rejected a nearly identical claim based on "conducting research, preparing comments, lobbying EPA to disapprove the project, and creating an 'education campaign.'" 138 F.4th at 318.

By contrast, like the *Havens* organization, Las Americas provides direct services to individuals—services S.B.4 will impair. The Panel was breaking no new ground in highlighting that fact. Rather, this is precisely the distinction *Alliance* itself drew: "Critically, [the *Havens* organization] not only was an issue-advocacy organization, but also operated a housing counseling service." App.19

---

[1] The panel correctly noted that the mere "label" "diversion of resources" "cannot transmogrify" concrete economic injury that otherwise provides standing under *Alliance* and *Havens*. App.9-10.

(quoting *Alliance*, 602 U.S. at 395). *Alliance* thus "reinforces, rather than undermines" standing here. App.17.[2]

And even pre-*Alliance*, this Court drew the same line. *Compare NAACP v. City of Kyle*, 626 F.3d 233, 238-39 (5th Cir. 2010) (no standing for lobbying and commissioning study) *with OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (distinguishing *Kyle*: "Here, by contrast, OCA is not a lobbying group."). The Court has applied the same rule post-*Alliance*, finding standing to challenge denial of access to magistrations where the plaintiff organization "relie[d] on" such access "to bail people out of jail expeditiously" and provide other services. *Tex. Tribune v. Caldwell County*, 121 F.4th 520, 527 & nn.20, 22 (5th Cir. 2024) (citing *Havens* and *Alliance*). In short, the Panel's decision adheres to longstanding Supreme Court and Fifth Circuit precedent.[3]

---

[2] Texas asserts the "key fact" in *Havens* was "misrepresentation." Pet. 9. But the facts *Alliance* actually *said* were "[c]ritical[]" were that the plaintiff organization provided direct services beyond "issue-advocacy" work and that the defendant "perceptibly impaired" provision of those services. 602 U.S. at 395.

[3] Defendants invoke a third-party-standing case, *Kowalski v. Tesmer*, 543 U.S. 125 (2004), but Plaintiffs here do not invoke any third party's rights. Rather, because the "constitutional structure of our Government" protects everyone in the country, everyone "who suffer[s] otherwise justiciable injury" has their own "constitutional interests" to vindicate in asserting such claims. *Bond v. United States*, 564 U.S. 211, 223 (2011); *cf. Collins v. Yellen*, 594 U.S. 220, 245 (2021) ("any aggrieved party with standing may file a constitutional challenge" to separation-of-powers violation).

In the end, Texas relies on a single line from *Deep South*, asserting that *Alliance* "limited *Havens* to its facts." 138 F.4th at 319. But this language must be read in context, and the rest of the opinion applied the same inquiry as the Panel did here—whether there was "direct interference" with "core business activities." *Id.* (cleaned up). Indeed, there is no way to fairly read the Supreme Court's opinion—including its identification of the "[c]ritical[]" distinction between issue advocacy and service provision, 602 U.S. at 395—to have rendered *Havens* a "dead letter," App.24. In any event, *Deep South*'s statement was dicta, as that case presented an issue-advocacy theory squarely controlled by *Alliance*. 138 F.4th at 318 ("Even though Deep South's staff has 'dedicated approximately 850 hours to education and advocacy,' that claimed injury embodies the exact 'expansive theory of standing' that *Alliance* rejected.") (citation omitted).

## II.    THE PANEL ADHERED TO 150 YEARS OF SUPREME COURT PRECEDENT, REACHING THE SAME PREEMPTION CONCLUSION AS EVERY OTHER COURT AROUND THE COUNTRY.

"For nearly 150 years, the Supreme Court has recognized that the power to control immigration—the entry, admission, and removal of aliens—is *exclusively* a federal power." App.54 & n.267 (collecting cases). Exercising that power, "Congress established a comprehensive framework to identify *who* may enter, *how* they may enter, *where* they may enter, and *what* penalties apply for those who enter

7

unlawfully." App.57 (footnotes omitted). The Panel's straightforward application of controlling Supreme Court precedent does not warrant en banc review.[4]

Defendants claim that the Panel's preemption holdings are "novel," Pet. 10, but conspicuously omit that *every* other state entry and reentry law has been enjoined on preemption grounds. District courts within the Eighth, Ninth, Tenth, and Eleventh Circuits have all held that laws like S.B.4 intrude into an area of uniquely federal authority and strip federal officers of the discretion that Congress vested in them. *United States v. Iowa*, 737 F. Supp. 3d 725, 746-49 (S.D. Iowa 2024); *Idaho Org. of Res. Councils v. Labrador*, No. 1:25-CV-00178-AKB, 2025 WL 1237305, at *11 (D. Idaho Apr. 29, 2025) ("*IORC*"); *Padres Unidos de Tulsa v. Drummond*, No. CIV-24-511-J, 2025 WL 1573590, at *1 (W.D. Okla. June 3, 2025); *Fla. Immigrant Coal. v. Uthmeier*, No. 25-21524-CV-WILLIAMS, 2025 WL 1423357, at *10-11 (S.D. Fla. Apr. 29, 2025). The two other courts of appeals to have evaluated such laws have both unanimously agreed the statutes are likely preempted. *Fla. Immigrant Coal. v. Att'y Gen.*, No. 25-11469, 2025 WL 1625385 at *3 (11th Cir. June 6, 2025) (denying stay); *United States v. Iowa*, 126 F.4th

---

[4] There is no "presumption against preemption," Pet. 15, where, as here, "the State regulates in an area where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000); *see Lozano v. City of Hazleton*, 724 F.3d 297, 314 n.23 (3d Cir. 2013) (rejecting presumption); *United States v. South Carolina*, 720 F.3d 518, 529 (4th Cir. 2013) (same); *United States v. Alabama*, 691 F.3d 1269, 1296 (11th Cir. 2012) (same).

1334, 1353 (8th Cir. 2025) (affirming injunction).[5] Most recently, the Supreme

Court denied Florida's stay application with no noted dissents. *Uthmeier v. Florida*

*Immigrant Coalition*, 2025 WL 1890573 (July 9, 2025).

## A.     S.B.4 Is Field Preempted.

As the Panel correctly held, S.B.4 is field preempted. This holding invoked

no mere "brooding federal interest," Pet. 12 (citation omitted); rather, the powers

"to forbid the entrance of foreigners" to, and to expel them from, the United States

have long been recognized as *exclusively* federal authorities "inherent in [the]

sovereignty" of the nation. *Nishimura Ekiu v. United States*, 142 U.S. 651, 659

(1892); *see also* App.67 & n.337; *Fong Yue Ting v. United States*, 149 U.S. 698,

711 (1893); *Arizona*, 567 U.S. at 394-95. Indeed, *Plyler v. Doe*, 457 U.S. 202

(1982), on which Defendants rely, Pet. 12, *confirms* that "the State has no direct

interest in controlling entry into this country, that interest being one reserved by the

Constitution to the Federal Government," and recognizes "the exclusive federal

control of this Nation's borders." *Id.* at 228 n.23. Congress has accordingly

established an "intricate system of federal commands" regarding entry and

removal, establishing a "comprehensive—and likely exclusive—system for federal

---

[5] While that opinion was vacated as moot, 2025 WL 1140834, at *1 (8th Cir. Apr.
15, 2025), the private plaintiffs' injunction remains in place.

immigration officers to determine the admissibility and removability of aliens." App.56-61.

Defendants assert that *Arizona* helps them, Pet. 11-13, but—as the Panel held—quite the opposite is true. *Arizona* found the field of noncitizen registration preempted, explaining that "federal law makes a single sovereign responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders." App.57 (quoting *Arizona*, 567 U.S. at 401-02). "This logic applies to the equally—if not more—sensitive topic of aliens entering and remaining in the country." *Id.* "If every state could regulate the unlawful entry, reentry, and removal of aliens, '[e]ach additional statute [would] incrementally diminish[] the [federal government]'s control over enforcement' and 'detract[] from the 'integrated scheme of regulation' created by Congress,'" App.68 (citation omitted), allowing prosecution "even in circumstances where federal officials in charge of the comprehensive scheme determine that prosecution would frustrate federal policies," *Arizona*, 567 U.S. at 402.

Indeed, in *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524 (5th Cir. 2013) (en banc), every member of this Court sitting en banc agreed with "the longstanding, unremarkable principle that the federal government's authority to exclude or remove foreign nationals . . . is necessarily exclusive of infringement by state or local legislation." *Id.* at 545 (Dennis, J., specially

10

concurring); *see id.* at 536-37 (plurality opinion); *id.* at 557, 559 & n.77 (Owen, J., concurring in part); *id.* at 567 (Jones, J., dissenting) (the Constitution "vests exclusive control over the authority to control immigration—to admit or exclude aliens— . . . solely in the federal government"). The Eleventh Circuit also recently determined that Florida's statute is likely field preempted "with respect to the field of alien entry into and presence in the United States." *Fla. Immigrant Coal.*, 2025 WL 1625385, at *3. All other courts evaluating field preemption have reached the same conclusion. *Iowa*, 737 F. Supp. 3d at 747; *IORC*, 2025 WL 1237305, at *12; *Padres Unidos*, 2025 WL 1573590, at *6-7.

Defendants claim that Congress's choice to allow limited federal-state cooperation in certain immigration enforcement tasks opens the door to state regulation of entry and removal. Pet. 12-13; *but see Arizona*, 567 U.S. at 410 (states may only assist in federal efforts "in specific, limited circumstances"). Not so. "[T]he fact that federal law permits such cooperation does not save from preemption a state law that allows its law enforcement officers to arrest and remove aliens, independent of federal law." App.80-81. After all, Congress may occupy a field even when it permits certain limited state involvement. *See PG&E Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 212 & n.25 (1983). Here, the federal government retains exclusive control over whether a person can enter and remain in the United States, and what penalties (if any) will

be applied to unlawful entry. App.60-66. Congress's choice to allow state officers to arrest for federal violations in "narrow circumstances" does not remotely authorize Texas to enact any "state crime" regarding entry or to create purported "authority under state law to state officials to arrest or remove someone." App.84.[6]

In sum, the Panel's decision is no "radical[] reshap[ing]" of the state-federal relationship. Pet. 13. Instead, it adheres to the black-letter principle established in consistent Supreme Court precedents stretching over 150 years, that the federal government has exclusive control over entry and removal.

## B.    S.B.4 Is Conflict Preempted.

The Panel also correctly held that "conflicts abound between S. B. 4 and a number of federal laws." App. 74; *see id.* at 74-88 (cataloguing numerous conflicts). Defendants barely address most of them.

Defendants assert that the Panel was wrong to focus on the role of federal discretion in the immigration laws, arguing that Congress did not intend to "steer a

---

[6] Defendants note that *Arizona* did not find Section 2(B) of the Arizona law preempted. Pet. 11-12. But the issue there was the scope of Congress's limited permission to assist—not a state-law program like registration or this parallel immigration scheme. Moreover, the Court explained that "it *would* disrupt the federal framework to put state officers in the position of holding aliens in custody for possible unlawful presence *without federal direction and supervision*." 567 U.S. at 413 (emphasis added). The Court declined to enjoin Section 2(B) only because it "could be read" solely to authorize state "communicat[ion] with ICE," expressly permitted under federal law. *Id.* at 411-13. There is no such way to save S.B.4.

middle path" when it comes to immigration enforcement. Pet. 13-14 (citation omitted). That misunderstands the immigration system and binding precedent. In reality, Congress enshrined "broad discretion" as a "principal feature" of the federal immigration system, *Arizona*, 567 U.S. at 396, as has been repeatedly recognized by the Supreme Court, *see, e.g.*, *United States v. Texas*, 599 U.S. 670, 679 (2023); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490-91 (1999); *Iowa*, 126 F.4th at 1347 (collecting cases). Congress provided federal officials with a range of tools—prosecutions, various kinds of removal proceedings, numerous forms of relief and prosecutorial discretion—so that federal officials could make enforcement decisions in a way that serves federal immigration priorities, domestic law enforcement, humanitarian concerns, and relations with other countries. *See* App.56-62. Congress accordingly affords *federal* officers the "discretion to decide whether to initiate criminal proceedings or civil immigration proceedings once an alien is apprehended." App.79. But S.B.4 "blocks this exercise of discretion" by instead "vest[ing] that discretion in a *state official*." *Id.*

Defendants attempt to minimize this fatal flaw by wrongly suggesting that the panel relied on a conflict with "federal prosecutorial discretion—not federal law itself." Pet. 2. But the opinion speaks for itself: "The challenged provisions are not preempted because they conflict with the policy preferences of a particular

13

administration—but because, inter alia, they rob every administration of the very discretion in alien removal matters that Congress granted to the federal executive and not to the States." App.80 (footnote omitted). Where Congress "ha[s] gone to such lengths to empower" Executive discretion in this way, States may not enact laws to "blunt the consequences of discretionary [Executive] action." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 376 (2000).

Defendants invoke *Kansas v. Garcia*, 589 U.S. 191 (2020), and the idea that (in general) "federal and state governments may administer" parallel crimes. Pet. 14. But *Garcia* is inapposite. There, Kansas prosecuted noncitizens under a generally applicable state identity theft statute for using fraudulent social security numbers on state tax withholding forms. 589 U.S. at 195, 198-99. The noncitizens based their preemption theory on the fact that the tax withholding process at the beginning of a job is typically conducted alongside employment verification, which is related to the immigration system. *Id.* at 197, 208-09. In contrast to that glancing relevance to immigration employment rules, S.B.4 does not merely "overlap to some degree" with federal law. *Id.* at 211. Instead, it asserts state control in derogation of the comprehensive federal system in which Congress "made a considered decision" to balance various interests by placing discretion in federal officials' hands. *Id.* "Nothing similar" was present in *Garcia*. *Id.*; *see also*

App. 87 (*Garcia* is inapposite because of "the many ways in which S. B. 4 conflicts with a variety of different statutes"); *Iowa,* 126 F.4th at 1348 (similar).

Next, Defendants seek to escape *Arizona*'s conflict analysis. Pet. 14. But *Arizona* firmly and repeatedly rejected unilateral state immigration enforcement. Section 6 was preempted because it allowed unilateral state arrests for presence without lawful immigration status; Section 3 was preempted in part because it allowed unilateral state prosecutions; and Section 2(B) would have been preempted if it allowed unilateral detention. *See supra* n.6; 567 U.S. at 402, 407-10, 413. This Court has accordingly underscored that federal law does not allow state "unilateral enforcement activity." *El Cenizo v. Texas*, 890 F.3d 164, 179-80 (5th Cir. 2018). And if unilateral arrests alone were enough for preemption in *Arizona*, then unilateral arrests, prosecutions, detentions, and removals under S.B.4 must be preempted as well. Otherwise, S.B.4 could accomplish what *Arizona* forbids, "allow[ing] the State to achieve its own immigration policy." App. 86-87 (quoting 567 U.S. at 408).

Finally, Defendants seek to distance themselves from S.B.4's removal provision. They suggest that there would be no conflict with federal law were state officers to merely "bring the individual to the port of entry" rather than physically effectuate removal. Pet. 15. But that person would still face 20 years in prison for failure to depart as ordered by a *state* judge, with no affirmative defenses available.

15

App.81. The panel's conclusion was common sense: "That is a removal scheme." App.82; *see* App.81-84 (rejecting contrary argument as "wholly divorced from the[] text and plain meaning"). It thus blatantly conflicts with "the system Congress created." *Arizona*, 567 U.S. at 408. Indeed, S.B.4 "grants Texas judges significantly more power" than the ordinance ten Members of this Court found impermissible in *Farmers Branch*. App.76 & n.378. And, in any event, the entry provisions alone conflict with federal law for the reasons discussed above—and without them, the whole statute falls. *See* App 83-86 (laying out conflicts "[e]ven setting aside S. B. 4's removal consequence").

***

Defendants emphasize the facial relief standard. Pet. 2, 15-16. But, "[o]f course, if a law intrudes on a field occupied by Congress," as S.B.4 does, "every application of that law is preempted." App.46. And S.B.4 removes federal discretion and control, disrupting Congress's design in *every* case. *See* App.47 (Las Americas has "likely shown . . . *no* non-preempted applications."). It does not matter whether particular federal officers—or even an entire federal Administration—might "encourage[]" Texas's state-law arrests, prosecutions, and deportations. Pet. 16. "[T]he purpose of *Congress* is the ultimate touchstone in every preemption case.'" *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (emphasis added). And even if Defendants could hypothesize a valid application—which they

16

certainly have not done—*Arizona* found facial preemption despite just such arguments. App.47 & n.234.

Defendants also suggest that Governor Abbott's invocation of the State War Clause allows the State to ignore federal law. Pet. 10. To say the least, it would be "strange [if] a state could rely on this Clause—which, with limited exceptions, primarily divests states of power—as a defense to a suit seeking to vindicate the Supremacy Clause, especially in an area of regulation that the Supreme Court has consistently reiterated is exclusively a federal power." App.89. Indeed, even if that invocation were valid, and even if this kind of ongoing immigration legislation were a valid exercise of its limited war powers, *but see Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 642, 644 (1952) (Jackson, J., concurring); *United States v. Abbott*, 110 F.4th 700, 759 (Douglas, J., dissenting), the suggestion that the invocation renders preemption irrelevant "would amount to nullification of federal law and authority—a notion that is antithetical to the Constitution." ROA.480; *see id*. at 567-75.

Finally, Defendants suggest this Court should grant rehearing because "this case is important on its facts alone." Pet. 2. But that is not the en banc standard; the question is whether an *error* of exceptional public importance compels en banc rehearing. *See* CA5 I.O.P. at 36. The Panel committed no error, much less an exceptionally important one.

## CONCLUSION

This Court should deny rehearing en banc.

Dated: August 11, 2025

David A. Donatti
(TX Bar No. 24097612)
Adriana C. Piñon
(TX Bar No. 24089768)
AMERICAN CIVIL LIBERTIES
UNION OF TEXAS
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 942-8146
Facsimile: (713) 942-8966
ddonatti@aclutx.org
apinon@aclutx.org

*For Plaintiffs-Appellees*
*Las Americas Immigrant Advocacy*
*Center, American Gateways,*
*and County of El Paso*

Daniel Hatoum
(TX Bar No. 24099136)
Erin D. Thorn
(TX Bar No. 24093261)
TEXAS CIVIL RIGHTS PROJECT
1017 W. Hackberry Ave.
Alamo, TX 78516
Telephone: (512) 474-5073, ext. 207
Facsimile: (956) 787-6348
daniel@texascivilrightsproject.org

*For Plaintiffs-Appellees*

Respectfully Submitted,

*/s/ Cody Wofsy*
Cody Wofsy
Spencer Amdur
Hannah Steinberg
Morgan Russell
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0770
F: (415) 395-0950
cwofsy@aclu.org
samdur@aclu.org
hsteinberg@aclu.org
mrussell@aclu.org

Anand Balakrishnan
Omar Jadwat
Lee Gelernt
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
abalakrishnan@aclu.org
ojadwat@aclu.org
lgelernt@aclu.org

*Las Americas Immigrant Advocacy Center and American Gateways*

Christina Sanchez
(TX Bar No. 2406298)
El Paso County Attorney
320 S. Campbell St., Suite 200
El Paso, Texas 79901
Tel: (915) 273-3247
ch.sanchez@epcountytx.gov

Bernardo Rafael Cruz
(TX Bar No. 24109774)
Assistant County Attorney
320 S. Campbell St., Suite 200
El Paso, Texas 79901
Tel: (915) 273-3247
b.cruz@epcounty.com

*For Plaintiff County of El Paso*

Kathryn Huddleston*
(TX Bar No. 24121679)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
915 15th Street, NW, 7th Floor
Washington, DC 20005
T: (212) 549-2500
khuddleston@aclu.org

*For Plaintiffs-Appellees
Las Americas Immigrant Advocacy
Center, American Gateways, and
County of El Paso*

*Barred in Texas and Arizona only;
supervised by a member of the D.C.
Bar*

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the type-volume limitation of Rule 27(d)(2) because it contains no more than 3,898 words and complies with the typeface and style requirements of Rule 32(a)(5) and (a)(6) because it was prepared in Microsoft Word using 14-point Times New Roman typeface.

*/s/ Cody Wofsy*
Cody Wofsy

**CERTIFICATE OF SERVICE**

I certify that, on August 11, 2025, a true and correct copy of this document was transmitted to the Clerk of the United States Court of Appeals for the Fifth Circuit via the Court's CM/ECF document filing system, and on all counsel of record.

*/s/ Cody Wofsy*
Cody Wofsy