No. 24-50149
## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | On Appeal from the |
| Plaintiff-Appellee, | : | United States District Court |
| | : | for the Western District of |
| v. | : | Texas |
| STATE OF TEXAS; GREG ABBOTT, | : | |
| IN HIS OFFICIAL CAPACITY AS GOV- | : | District Court Case Nos. |
| ERNOR OF TEXAS; TEXAS DEPART- | : | 1:24-cv-8 |
| MENT OF PUBLIC SAFETY; STEVEN | : | 1:23-cv-1537 |
| C. MCCRAW, IN HIS OFFICIAL CA- | : | |
| PACITY AS DIRECTOR OF TEXAS DE- | : | |
| PARTMENT OF PUBLIC SAFETY, | : | |
| Defendants-Appellants. | : | |
| | : | |

## BRIEF OF *AMICI CURIAE* OHIO, SOUTH CAROLINA, AND 19 OTHER STATES SUPPORTING DEFENDANTS-APPELANTS

ALAN WILSON
South Carolina Attorney General

THOMAS T. HYDRICK
Solicitor General
JOSEPH D. SPATE
Deputy Solicitor General
1000 Assembly St.
Columbia, SC 29201
803-734-4127
thomashydrick@scag.gov

DAVE YOST
Ohio Attorney General

MATHURA J. SRIDHARAN*
Solicitor General
 *Counsel of Record
LAYNE H. TIESZEN
Deputy Solicitor General
30 E. Broad St., 17th Fl.
Columbus, Ohio 43215
614-466-8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for Amici Curiae States*
*Additional counsel listed alongside signature block*

**SUPPLEMENTAL CERTIFICATE OF INTERESTED PARTIES**

*Amici Curiae* are governmental parties. Under Fifth Circuit Rule 28.2.1, a certificate of interested persons is not required.

# TABLE OF CONTENTS

**Page**

SUPPLEMENTAL CERTIFICATE OF INTERESTED PARTIES ..................... i

TABLE OF CONTENTS ..................................................... ii

TABLE OF AUTHORITIES .................................................. iii

STATEMENT OF *AMICI* INTEREST AND SUMMARY OF ARGUMENT ....1

ARGUMENT...............................................................3

    I.    The constitutional nature of preemption requires courts to interpret state and federal laws in harmony when possible. .............................3

        A.    The Supremacy Clause constitutionalizes preemption. ...................... 4

        B.    Constitutional avoidance should guide preemption analysis. .............. 4

        C.    Constitutional avoidance curtails implied preemption. ...................... 8

        D.    The Texas law is not facially preempted. .......................... 9

    II.    The district court and panel majority failed to apply the constitutional avoidance canon...................................................... 11

CONCLUSION............................................................ 15

ADDITIONAL COUNSEL ................................................ 17

CERTIFICATE OF SERVICE........................................... 18

CERTIFICATE OF COMPLIANCE .................................. 19

## TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Anderson v. Edwards,*
514 U.S. 143 (1995) .................................................................. 10

*Arizona v. United States,*
567 U.S. 387 (2012).............................................................*passim*

*Cal. Coastal Comm'n v. Granite Rock Co.,*
480 U.S. 572 (1987) .................................................................. 3

*English v. Gen. Elec. Co.,*
496 U.S. 72 (1990) .................................................................... 6

*Frisby v. Schultz,*
487 U.S. 474 (1988) .................................................................. 7

*GenBioPro, Inc. v. Raynes,*
144 F.4th 258 (4th Cir. 2025)................................................. 6, 8

*Gibbons v. Ogden,*
22 U.S. 1 (1824) ....................................................................... 4

*Granite Re, Inc. v. NCUA Bd.,*
956 F.3d 1041 (8th Cir. 2020) ................................................. 6

*Gregory v. Ashcroft,*
501 U.S. 452 (1991) .................................................................. 7

*Hillsborough Cnty. v. Automated Med. Lab'ys, Inc.,*
471 U.S. 707 (1985) .................................................................. 9

*Hooper v. California,*
155 U.S. 648 (1895) .................................................................. 5

*INS v. St. Cyr,*
533 U.S. 289 (2001) .................................................................. 5

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31,*
585 U.S. 878 (2018) .................................................................. 14

*Janvey v. Brown,*
767 F.3d 430 (5th Cir. 2014) ................................................................. 9

*Jennings v. Rodriquez,*
583 U.S. 281 (2018) ............................................................................... 9

*Kansas v. Garcia,*
589 U.S. 191 (2020) .......................................................................*passim*

*Kurns v. RR Friction Prods. Corp.,*
565 U.S. 625 (2012) ............................................................................... 9

*La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.,*
461 F.3d 529 (5th Cir. 2006) ................................................................. 6

*MediaOne Grp., Inc. v. Cnty. of Henrico,*
257 F.3d 356 (4th Cir. 2001) ................................................................. 5

*Moody v. NetChoice, LLC,*
603 U.S. 707 (2024) ......................................................................... 3, 10

*Murphy v. NCAA,*
584 U.S. 453 (2018) ............................................................................... 4

*N.J. Payphone Ass'n v. Town of W. N.Y.,*
299 F.3d 235 (3d Cir. 2002) ......................................................... 5, 7, 15

*Payne v. Tennessee,*
501 U.S. 808 (1991) ............................................................................. 14

*Perez v. Campbell,*
402 U.S. 637 (1971) ............................................................................ 4, 7

*Planned Parenthood v. Sanchez,*
403 F.3d 324 (5th Cir. 2005) ................................................................. 6

*Sackett v. EPA,*
598 U.S. 651 (2023) ............................................................................... 5

*Spector Motor Serv., Inc. v. McLaughlin,*
323 U.S. 101 (1944) ............................................................................... 5

iv

*Stenberg v. Carhart*,
530 U.S. 914 (2000) ...................................................................... 7

*Tafflin v. Levitt*,
493 U.S. 455 (1990) ...................................................................... 7

*Torres v. Precision Indus.*,
938 F.3d 752 (6th Cir. 2019) ......................................................... 5

*United States v. Hansen*,
599 U.S. 762 (2023) ...................................................................... 5

*United States v. Rahimi*,
602 U.S. 680 (2024) ................................................................... 13

*United States v. Salerno*,
481 U.S. 739 (1987) ................................................................ 3, 10

*Util. Air Regulatory Grp. v. EPA*,
573 U.S. 302 (2014) ...................................................................... 5

*Va. Uranium, Inc. v. Warren*,
587 U.S. 761 (2019) ...................................................................... 8

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013) ..................................................... 15

*Wyeth v. Levine*,
555 U.S. 555 (2009) ............................................................... 4, 6, 8

**Statutes and Constitutional Provisions**

U.S. Const., amend. X ................................................................... 7

U.S. Const., art. 1, §8 ................................................................... 7

U.S. Const., art. VI .................................................................... 2, 4

1 Pa. Cons. Stat. §1922 ................................................................ 7

8 U.S.C. §1325 ........................................................................ 10

8 U.S.C. §1326 ........................................................................ 10

Colo. Rev. Stat. §2-4-201 .................................................................. 7

Iowa Code §4.4 ..................................................................................... 7

Minn. Stat. §645.17 .............................................................................. 7

N.D. Cent. Code §1-02-38 ................................................................... 7

N.M. Stat. §12-2A-18 ........................................................................... 7

Ohio Rev. Code §1.47 .......................................................................... 7

Tex. Gov't Code §311.021 ................................................................... 7

Tex. Penal Code §51.01 ..................................................................... 13

Tex. Penal Code §51.02 ............................................................... 10, 13

Tex. Penal Code §51.03 ............................................................... 10, 13

**Other Authorities**

Allison H. Eid, *Preemption and the Federalism Five*, 37 Rutgers L.J. 1
(2005) ................................................................................................. 4

Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U.
L. Rev. 109 (2010) ............................................................................ 5

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of
Legal Texts* (2012) ........................................................................... 6

Caleb Nelson, *Preemption*, 86 Va. L. Rev. 225 (2000) .......................... 4, 8

U.S. Homeland Security Committee, *"Every State is Now a Border
State": House Homeland Security Committee Hears Testimony from
Colleagues on Impacts of the Border Crisis* (Dec. 7, 2023) ...................... 1

**STATEMENT OF *AMICI* INTEREST AND SUMMARY OF ARGUMENT**

Texas exercised its sovereign authority to combat the humanitarian crisis that afflicted its southern border, and indeed the entire Nation, in 2023. *See* U.S. Homeland Security Committee, *"Every State is Now a Border State": House Homeland Security Committee Hears Testimony from Colleagues on Impacts of the Border Crisis* (Dec. 7, 2023), https://perma.cc/HTS5-BP7U. The Texas legislature acted to stem the illegal entry of aliens into its State by mirroring federal laws enacted for the same purpose (the parties call this Texas legislation "S.B.4"). That legislation plainly served Texans' health, safety, and welfare. Other States, suffering the effects of mass illegal immigration different from Texas's in degree, but not kind, should retain the same legislative prerogative to wield their police powers.

In holding that S.B.4 is preempted by federal law, the district court and the panel majority diminished not only Texas's sovereignty but also the sovereignty of every State. Like Texas, *Amici* States—Ohio, South Carolina, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, South Dakota, Tennessee, West Virginia, and Wyoming—have a paramount interest in ensuring that their validly enacted state laws remain enforceable.

1

*Amici* states write to emphasize the first principles the district court and the panel majority ignored and that the full Court should follow—specifically, the proper rubric for preemption analysis.

At bottom, preemption analysis is a choice of law inquiry. When federal and state laws conflict, federal law controls. This rule of decision is provided by the Supremacy Clause. U.S. Const., art. VI, cl. 2. A state law that is irreconcilable with federal law is therefore constitutionally unenforceable. That means the key question is whether state and federal laws collide—and the typical tools of judicial review should inform that contact-point in the preemption analysis.

Chief among those tools of judicial analysis is constitutional avoidance. That canon counsels courts to interpret statutes in a way that avoids getting the Constitution involved to displace them. Because every preemption holding embroils the Constitution's Supremacy Clause in the controversy, courts should only find state laws preempted—especially impliedly preempted—if the state and federal statutory texts offer no permissible harmonious construction. If a statutory conflict is avoidable, then it should be avoided. Constitutional avoidance in preemption analysis honors the duel-sovereign structure that the States assented to in 1789.

The district court and the panel majority relegated the constitutional-avoidance canon to an afterthought, despite wielding Article VI of the Constitution to

facially enjoin enforcement of a state law. In finding the Texas law both field and conflict preempted, they applied a rule that "positing a hypothetical non-preempted application is not sufficient to defeat a facial preemption challenge." Panel.Op.46–47. That plainly flouts *Moody v. NetChoice* and *Salerno*. In a facial challenge, Texas "needed merely to identify a possible [application of S.B. 4] not in conflict with federal law." *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 593 (1987). The Texas law can comfortably coexist with federal immigration law—indeed, aligning state law with federal law was Texas's conspicuous aim.

## ARGUMENT

### I.    The constitutional nature of preemption requires courts to interpret state and federal laws in harmony when possible.

Because preemption always presents a constitutional question—whether the Supremacy Clause negates state law—courts should apply constitutional avoidance in preemption analysis. That canon instructs courts to read statutes to avoid embroiling the Constitution in the controversy.

Constitutional avoidance orients preemption analysis toward harmonizing state and federal law. That way, the Supremacy Clause springs into action to void state law only as a last resort. Disregarding constitutional avoidance principles leads courts to search for dissonance and conflict. That approach wrongly enlarges

preemption doctrine and damages the constitutional balance of state and federal sovereignty.

### A.   The Supremacy Clause constitutionalizes preemption.

Preemption is constitutionally prescribed by the Supremacy Clause.  U.S. Const., art. VI, cl. 2; *Gibbons v. Ogden*, 22 U.S. 1, 210–11 (1824); *Murphy v. NCAA*, 584 U.S. 453, 477 (2018).  That Clause provides a rule of decision when state and federal law conflict:  Federal law controls.  Because "the Supremacy Clause is the reason that valid federal statutes trump state law," Caleb Nelson, *Preemption*, 86 Va. L. Rev. 225, 234 (2000) ("Nelson"), preemption analysis presents a "constitutional question," *Perez v. Campbell*, 402 U.S. 637, 644 (1971).  The Clause is not an independent source of congressional power but "embeds a fundamental conflict of law rule in the text of the Constitution."  Allison H. Eid, *Preemption and the Federalism Five*, 37 Rutgers L.J. 1, 29 (2005) (quotation omitted).

### B.   Constitutional avoidance should guide preemption analysis.

Preemption analysis is an exercise of statutory interpretation.  Congress's textually manifest intent is the "touchstone" for that interpretation.  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quotation omitted).  But, as with all constitutional adjudication, the constitutional mooring of preemption influences that statutory interpretation.  Because it is the federal Constitution that prescribes preemption of state laws

that conflict with federal law, courts should read state laws to avoid their constitutional demise.

Classical constitutional avoidance is a deeply rooted rule of statutory interpretation that courts should apply "every reasonable construction … in order to save a statute from unconstitutionality." *Hooper v. California*, 155 U.S. 648, 657 (1895); *see also INS v. St. Cyr*, 533 U.S. 289, 299–300 & n.12 (2001). Constitutional avoidance dates to the Founding era, *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944); Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. Rev. 109, 139 (2010), and looms large to this day, *see United States v. Hansen*, 599 U.S. 762, 781 (2023); *Sackett v. EPA*, 598 U.S. 651, 679–80 (2023) (federalism canon); *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 327–28 (2014) (major-questions doctrine). Constitutional avoidance appears in two forms: Courts prefer to resolve cases on non-constitutional grounds when available, and courts interpret statutes to avoid a conflict with higher law. Both reflect a healthy caution and humility before resort to the permanency of constitutional pronouncements. *See N.J. Payphone Ass'n v. Town of W. N.Y.*, 299 F.3d 235, 249 (3d Cir. 2002) (Alito, J., concurring).

Several circuits recognize that constitutional avoidance requires courts to avoid preemption holdings. *See, e.g.*, *Torres v. Precision Indus.*, 938 F.3d 752, 754–56 (6th Cir. 2019); *MediaOne Grp., Inc. v. Cnty. of Henrico*, 257 F.3d 356, 361 (4th Cir.

2001); *see also Granite Re, Inc. v. NCUA Bd.*, 956 F.3d 1041, 1048 (8th Cir. 2020); *La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529, 532 & n.5 (5th Cir. 2006). And this Court has taken that premise to its logical conclusion, applying constitutional avoidance to interpret state law when conducting preemption analysis. *Planned Parenthood v. Sanchez*, 403 F.3d 324, 341–42 (5th Cir. 2005). As Judge Wilkinson recently wrote for the Fourth Circuit, the "need for clarity in statutory preemption is grounded in the rudiments of constitutional structure," meaning preemption should be reserved for clear statutory conflicts reflected in the respective laws. *GenBioPro, Inc. v. Raynes*, 144 F.4th 258, 271 (4th Cir. 2025).

Constitutional avoidance aligns with the anti-preemption and federalism canons, too. The presumption against preemption means courts must assess preemption with discipline, finding congressional intent to preempt state law only when it "clearly exists." *English v. Gen. Elec. Co.*, 496 U.S. 72, 90 (1990); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 290 (2012). Courts presume against preemption "because respect for the States as independent sovereigns in our federal system leads us to assume that Congress does not cavalierly preempt" state laws. *Wyeth*, 555 U.S. at 565 n.3 (quotation omitted). The anti-preemption canon could be understood as an application of constitutional avoidance to federal law and the Supremacy Clause. And constitutional avoidance provides a more

6

holistic interpretive method that encompasses the state-law side of the preemption equation. *See Frisby v. Schultz*, 487 U.S. 474, 483 (1988); *Stenberg v. Carhart*, 530 U.S. 914, 941 (2000). Preemption analysis requires interpreting state and federal law; courts should welcome saving constructions from both. *See N.J. Payphone*, 299 F.3d at 249 (Alito, J., concurring); *Perez*, 402 U.S. at 644. Indeed, several states codify the presumption that their laws are intended to harmonize with federal law. Ohio Rev. Code §1.47(A); Tex. Gov't Code §311.021(1); Colo. Rev. Stat. §2-4-201(1)(a); Iowa Code §4.4(1); Minn. Stat. §645.17(3); N.D. Cent. Code §1-02-38(1); N.M. Stat. §12-2A-18(A)(3); 1 Pa. Cons. Stat. §1922(3).

Federalism likewise bolsters the wisdom of constitutional avoidance in preemption analysis. While federal powers are limited and enumerated, U.S. Const., art. 1, §8, the States retain a resplendent wellspring of reserved and concurrent powers. U.S. Const., amend. X; The Federalist No. 45 (James Madison). The Constitution split the atom of sovereignty, "subject only to limitations imposed by the Supremacy Clause." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). The "federalist structure of joint sovereigns preserves to the people" the benefit of "a decentralized government that will be more sensitive to the diverse needs of a heterogenous society." *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991). As the Fourth Circuit now holds, federalism creates a clear statement rule for preemption: "Unless a statute reveals a

clear and manifest intent to the contrary, we must presume Congress does not intend to upend the historic relationship of the federal and state governments." *GenBioPro*, 144 F.4th, at 271.  Such a clear statement rule is natural here, given States' history of "numerous laws restricting the immigration of certain classes of aliens." *Arizona v. United States*, 567 U.S. 387, 419 (2012) (Scalia, J., dissenting in part); Panel.Op.150 (Oldham, J., dissenting).

### C.   Constitutional avoidance curtails implied preemption.

The avoidance canon also mitigates the damage from more aggressive conceptions of preemption, like implied preemption.  Implied preemption doctrines wrongly invert the presumption against preemption, inviting conflict without any express indication in the federal statute.  Such a conflict-seeking approach that "wander[s] far from the statutory text [is] inconsistent with the Constitution." *Wyeth*, 555 U.S. at 583 (Thomas, J., concurring).  Implied preemption suffocates concurrent federal and state legislation, asphyxiating the vertical structure of the Constitution. After all, "nearly every federal statute addresses an area in which the states also have authority to legislate." Nelson, *Preemption*, at 225.

Accordingly, the Supreme Court has curtailed implied preemption, reorienting all preemption analysis to "the text and structure of the statute at issue." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 778 (2019) (quotation omitted); *see also*

*Kansas v. Garcia*, 589 U.S. 191, 213 (2020) (Thomas, J., concurring); *Kurns v. RR Friction Prods. Corp.*, 565 U.S. 625, 640–41 (2012) (Sotomayor, J., dissenting in part). Freewheeling inferences of preemption "whenever an agency deals with a problem comprehensively" (as the panel majority displayed here) defies "the federal-state balance embodied in [the Supreme Court's] Supremacy Clause jurisprudence" and the Constitution. *Hillsborough Cnty. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 717 (1985). Courts should not *imply* absent conflicts; they should employ constitutional avoidance to seek harmony between the laws of separate sovereigns.

To be sure, constitutional avoidance has no application to statutes that lack a plausible constitutional construction. *See Jennings v. Rodriquez*, 583 U.S. 281, 286 (2018). That is equally true when state and federal law are truly irreconcilable. But, as the Restatement teaches, choice-of-law analysis applies only if "a true conflict exists." *Janvey v. Brown*, 767 F.3d 430, 435 (5th Cir. 2014) (applying Texas law). That should hold even more for preemption, given its constitutional mooring: If a permissible statutory interpretation exists that avoids conflict, courts should prefer that reading.

### D.    The Texas law is not facially preempted.

The rationale for interpreting state law through a conflict-avoidance lens applies with even greater force when the state law confronts a facial challenge. The

plaintiffs' argument *is not* the ordinary claim that federal law preempts some discrete application of Texas law against them. Their argument is much bolder—that federal law preempts any application of the Act against *anyone*. That litigation choice "comes at a cost." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024).

Because this is not a First Amendment challenge, the plaintiffs shoulder a "heavy burden" to show "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). That is, *any* non-preempted application of the statutes enacted in S.B.4 should suffice to defeat the plaintiffs' facial challenge. *Id.*; *see Anderson v. Edwards*, 514 U.S. 143, 155 n.6 (1995) (applying *Salerno* to preemption).

Appellees cannot meet their "heavy burden," not least because the challenged provisions mirror federal law. Texas essentially has codified portions of federal immigration law as its state law. *Compare* Tex. Penal Code §§51.02–03, *with* 8 U.S.C. §§1325(a), 1326(a). That leaves no basis to conclude Texas law facially contradicts the INA. Coincidence of state and federal law should render conflict preemption "impossible, and field preemption … no more likely." Panel.Op.152 (Oldham, J., dissenting) (citing *Kansas*, 589 U.S. at 211–12).

## II. The district court and panel majority failed to apply the constitutional avoidance canon.

The district court and panel majority failed to heed the principle of judicial restraint embodied in the constitutional-avoidance canon. As an initial matter, it is worth noting that neither court substantively grappled with the canon itself. The district court employed the wrong lens from the start. Its preemption analysis opens with a sweeping sentence on congressional power, App.Op.29, but makes no mention of the Supremacy Clause or of any obligation to avoid interpreting state law as conflicting with federal law if possible. Tellingly, the district court addressed constitutional avoidance only briefly in a paragraph near the close of its preemption analysis. *Id.* at 56–57. And worse, the panel majority's analysis makes no mention of the canon at all.

Due at least in part to their failure to meaningfully grapple with the canon, the district court and the panel majority erred in their substantive analyses, holding that S.B.4 is facially field and conflict preempted.

In doing so, both the district court and the panel majority grounded much of their preemption analyses in an unduly broad reading of *Arizona v. United States*, 567 U.S. 387 (2012). *Arizona* itself does not support such a broad reading, and subsequent caselaw only further confirms the narrowness of its holdings.

With respect to field preemption, both the district court and the panel majority invoked *Arizona* for the proposition that the federal government has broad power over immigration and the status of citizens.  App.Op.29; Panel.Op.55.  Both courts read too much into *Arizona*.  *Arizona* merely "held that federal immigration law occupied the field of alien registration."  *Kansas*, 589 U.S. at 210.  It did not purport to address the States' concurrent power to regulate removal of illegal aliens, nor did it prophylactically hold that States may never enact legislation involving immigration issues.  In fact, *Arizona* held that a major component of the state immigration law—§2(B), requiring state officers to assess a subject's immigration status—*was not preempted*.  *Arizona*, 567 U.S. at 414–15.

Thus, to the extent the district court, the panel majority, or Appellees attempt to argue that a broad view of field preemption "follows directly" from *Arizona*, it is simply "not so."  *Kansas*, 589 U.S. at 210.  And for good reason:  Broad field preemption is not what the constitutional division of powers supports.

With respect to conflict preemption, the district court and the panel majority again leaned too heavily on *Arizona*.  App.Op.53; Panel.Op.74.  The Supreme Court's subsequent decision in *Kansas v. Garcia*, 589 U.S. 191 (2020) confirms that *Arizona* should not be read to endorse an overly broad view of conflict preemption.  As the Supreme Court recognized in that case, "[t]he mere fact that state laws like

the Kansas provisions at issue overlap to some degree with federal criminal provisions does not even begin to make a case for conflict preemption." *Kansas*, 589 U.S. at 211. Any attempt to suggest to the contrary is necessarily "unsound." *Id.*

Despite this admonition, the district court and the panel majority managed to find conflict where Texas and federal law plainly align. *See* Tex. Penal Code §§51.01(1), .02(c), .03(b). The district court and the panel majority turned the "federal system … upside down" by finding implied conflict preemption between the Texas law and the INA on account that "they overlap." *Kansas*, 589 U.S. at 212. Such an approach runs afoul of *Arizona* and its progeny. *See* Panel.Op.161 (Oldham, J., dissenting) ("But when federal and state statutes 'brush up against each other,' our 'task is to seek harmony, not to manufacture conflict.'") (quoting *United States v. Rahimi*, 602 U.S. 680, 701 (2024)).

Finally, to the extent that *Arizona* is as expansive as the district court and the panel majority apparently concluded, it is entitled to little-to-no stare decisis effect and is ripe for overruling.

In terms of its potential stare decisis effect, *Arizona* involved different state and federal statutes and legal issues. And in any event, as noted above, the Supreme Court has already rebuffed attempts to expand *Arizona* beyond its narrow holdings, implicitly rejecting the broad approach of the district court and the panel majority.

13

With respect to its potential for overruling, there are strong grounds for overruling *Arizona*. In deciding whether to overrule a past decision, the Supreme Court considers a variety of factors, including the quality of the decision's reasoning, the workability of the rule it established, its consistency with other related decisions, developments since the decision was handed down, and reliance on the decision. *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 917 (2018).  The Court will also consider the margins of the decision, the rigor of the dissent, and the subsequent application of the decision.  *See Payne v. Tennessee*, 501 U.S. 808, 828–30 (1991) ("*Booth* and *Gathers* were decided by the narrowest of margins, over spirited dissents challenging the basic underpinnings of those decisions.").

These factors weigh in favor of overruling *Arizona*.  To start, *Arizona* was decided over three "spirited dissents."  *Id.* at 829; *Arizona*, 567 U.S. at 416 (Scalia, J., dissenting in part); *id.* at 437 (Thomas, J., dissenting in part); *id.* at 440 (Alito, J., dissenting in part).  Although the substance of the dissents differed in certain respects, all three envisioned a broader role for States in immigration than the majority found.  These dissenting opinions also reveal significant flaws in the legal reasoning of the *Arizona* decision itself.

Moreover, the *Arizona* decision has proved to be increasingly unworkable. States have struggled to determine what role they play in confronting the illegal

immigration crisis.  Unsurprisingly, this has led to splits within the federal courts of appeals.  *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1026 n.18 (9th Cir. 2013) (describing the circuit split).

Finally, *Arizona* does not create any traditionally recognized reliance interests. And even if it did, subsequent decisions have undermined those interests already. *See Kansas*, 589 U.S. at 210 (declining to extend the holding in *Arizona*).

*    *    *

Constitutional avoidance should inform preemption analysis.  That canon respects "the 'great gravity and delicacy' of judicial review, separation of powers, the paramount importance of constitutional adjudication, the case or controversy requirement, and principles of federalism."  *N.J. Payphone*, 299 F.3d at 249 (Alito, J., concurring).  Those principles counsel in favor of reversal, lest the States lose their capacity to legislate in an area so "inherent in sovereignty" as immigration without the full Court's approval.  *Arizona*, 567 U.S. at 417 (Scalia, J., dissenting in part).

## CONCLUSION

For these reasons, this Court should reverse the district court.

ALAN WILSON
South Carolina Attorney General

DAVE YOST
Ohio Attorney General

THOMAS T. HYDRICK
Solicitor General
JOSEPH D. SPATE
Deputy Solicitor General
1000 Assembly St.
Columbia, SC 29201
803-734-3371
josephspate@scag.gov

*/s/ Mathura J. Sridharan*
MATHURA J. SRIDHARAN*
Solicitor General
 *Counsel of Record*
LAYNE H. TIESZEN
Deputy Solicitor General
30 E. Broad St., 17th Fl.
Columbus, Ohio 43215
614-466-8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for Amici Curiae States*

## ADDITIONAL COUNSEL

STEVE MARSHALL
Alabama Attorney General

STEPHEN J. COX
Alaska Attorney General

TIM GRIFFIN
Arkansas Attorney General

JAMES UTHMEIER
Florida Attorney General

CHRISTOPHER M. CARR
Georgia Attorney General

RAÚL R. LABRADOR
Idaho Attorney General

THEODORE E. ROKITA
Indiana Attorney General

BRENNA BIRD
Iowa Attorney General

KRIS KOBACH
Kansas Attorney General

LIZ MURRILL
Louisiana Attorney General

LYNN FITCH
Mississippi Attorney General

CATHERINE L. HANAWAY
Missouri Attorney General

MICHAEL T. HILGERS
Nebraska Attorney General

DREW H. WRIGLEY
North Dakota Attorney General

GENTNER DRUMMOND
Oklahoma Attorney General

MARTY JACKLEY
South Dakota Attorney General

JONATHAN SKRMETTI
Tennessee Attorney General
and Reporter

JOHN B. MCCUSKEY
West Virginia Attorney General

KEITH G. KAUTZ
Wyoming Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2025, the foregoing was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

**CERTIFICATE OF COMPLIANCE**

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, that this brief complies with the type-volume requirements and contains 3,246 words.  *See* Fed. R. App. P. 29(a)(5), 32(a)(7).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity font.