No. 24-50149

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STATE OF TEXAS; GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; TEXAS DEPARTMENT OF PUBLIC SAFETY; FREEMAN F. MARTIN, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF TEXAS DEPARTMENT OF PUBLIC SAFETY,

Defendants-Appellants.

LAS AMERICAS IMMIGRANT ADVOCACY CENTER; AMERICAN GATEWAYS; COUNTY OF EL PASO, TEXAS,

Plaintiffs-Appellees,

v.

FREEMAN F. MARTIN, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF TEXAS DEPARTMENT OF PUBLIC SAFETY, et al.

Defendants-Appellants.

On appeal from the United States District Court for the Western District of Texas

## BRIEF OF THE AMERICAN IMMIGRATION LAWYERS ASSOCIATION AS *AMICUS CURIAE* SUPPORTING APPELLEES AND AFFIRMANCE

Jonathan Weinberg
Wayne State University Law School
471 West Palmer Street
Detroit, MI 48202
(313) 577-4015
weinberg@wayne.edu

Alexandra Lampert
Brooklyn Defender Services
177 Livingston St., 7th Floor

Justin Cox
Law Office of Justin B. Cox
P.O. Box 1106
Hood River, OR 97031
(541) 716-1818
justin@jcoxconsulting.org
*Counsel of record*

Brooklyn, NY 11201
(347) 977-7701
alampert@bds.org

Karen Tumlin
Justice Action Center
P.O. Box 27280
Los Angles, CA 90027
(323) 450 7271
Karen.Tumlin@justiceactioncenter.org

*Counsel for Amicus Curiae*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Private Appellees**

Las Americas Immigrant Advocacy Center
American Gateways

**Counsel for Private Appellees**

Cody Wofsy
Spencer Amdur
Hannah Steinberg
Morgan Russell
Kathryn Huddleston
Omar Jadwat
Anand Balakrishnan
Lee Gelernt
David A. Donatti
Adriana C. Piñon
Daniel Hatoum
Kate Gibson Kumar

American Civil Liberties Union Foundation
American Civil Liberties Union Foundation Of Texas
Texas Civil Rights Project

Appellants and Appellee County of El Paso are government officials and entities.

This brief is filed on behalf of the American Immigration Lawyers Association (AILA). Counsel for AILA are Karen Tumlin, Alexandra Lampert, Jonathan

Weinberg, and Justin Cox. AILA has no parent corporation, and no publicly held corporation owns ten percent or more of its stock.

/s/ Justin Cox
Justin Cox
justin@jcoxconsulting.org
*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE..................................................................1

STATEMENT OF THE CASE .......................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................2

ARGUMENT ..............................................................................................4

I.  S.B. 4's "presence after removal" crime criminalizes the presence of
    people with legal status or other federal permission to remain. ..............4

    A.  S.B. 4's "presence after removal" provision criminalizes the presence
    of people who have legally entered the U.S. on valid visas, if they were
    previously deported or denied admission. ...........................................5

    B.  S.B. 4's "presence after removal" provision criminalizes the presence
    of people to whom the federal government has granted asylum or
    other humanitarian relief, if they were previously deported or denied
    admission...............................................................................6

    C.  S.B. 4's "presence after removal" provision criminalizes the presence
    of Children with Special Immigrant Juvenile classification, if they were
    previously deported or denied admission. ...........................................7

    D.  S.B. 4's "presence after removal" provision criminalizes the presence
    of domestic violence survivors and other crime victims, if they were
    previously deported or denied admission. ...........................................9

    E.  S.B. 4's "presence after removal" provision criminalizes the presence
    of individuals with Temporary Protected Status or Deferred Enforced
    Departure, if they were previously deported or denied admission. ..............11

    F.  S.B. 4's "presence after removal" provision criminalizes the presence
    of immigrants with deferred action or parole, if they were previously
    deported or denied admission. ......................................................12

    G.  S.B. 4's "presence after removal" provision criminalizes the presence
    of people whose removal orders have been reversed......................................13

II. S.B. 4's "illegal presence" crime frustrates the federal immigration
    adjudication process. ...............................................................15

    A.  "Lawful presence" has no set meaning in federal law.......................16

iii

B.  S.B. 4's "illegal presence" provision criminalizes the presence of people with meritorious claims for immigration relief ..................................... 19

1.  S.B. 4's "illegal presence" provision criminalizes the presence of people in removal proceedings with meritorious claims for relief from removal, including cancellation of removal. ..................................... 20

2.  S.B. 4's "illegal presence" provision criminalizes the presence of victims of crime, domestic violence survivors, and juveniles with pending meritorious federal immigration applications. ............................ 20

3.  S.B. 4's "illegal presence" provision criminalizes the presence of people with meritorious claims for humanitarian relief. ............................ 22

4.  S.B. 4's "illegal presence" provision criminalizes the presence of people who would have meritorious claims for relief from removal, but who have not been placed in proceedings. ........................................... 23

CONCLUSION ................................................................................................. 26

CERTIFICATE OF COMPLIANCE ........................................................... 28

CERTIFICATE OF SERVICE ...................................................................... 28

# TABLE OF AUTHORITIES

## Cases

*Arizona v. United States,*
  567 U.S. 387 (2012) ................................................................ 26

*Estrada v. Becker,*
  917 F.3d 1298 (11th Cir. 2019) ........................................... 17

*Fernandez-Vargas v. Gonzales,*
  548 U.S. 30 (2006) ..................................................................6

*Johnson v. Guzman Chavez,*
  594 U.S. 523 (2021) .................................................................7

*Nken v. Holder,*
  556 U.S. 418 (2009) .............................................................. 13

*Plyler v. Doe,*
  457 U.S. 202 (1982) ......................................................... 16, 17

*Reno v. Am.-Arab Anti-Discrim. Comm.,*
  525 U.S. 471 (1999) .............................................................. 12

*Texas v. United States,*
  126 F.4th 392 (5th Cir. 2025) .............................................. 17

*United States v. Stevens,*
  559 U.S. 460 (2010) .............................................................. 15

*United States v. Texas,*
  -- F. Supp. 3d --, 2025 WL 2170007 (W.D. Tex. July 31, 2025) ............................. 17

*Velasquez-Castillo v. Garland,*
  91 F.4th 358 (5th Cir. 2024) ..................................................7

*Villas at Parkside Partners v. City of Farmers Branch,*
  726 F.3d 524 (5th Cir. 2013) ........................................ 3, 19, 26

*Williams v. Taylor,*
  529 U.S. 362 (2000) .............................................................. 18

## Statutes and Regulations

8 C.F.R. § 204.11 ...................................................................................8

8 C.F.R. § 208.16 ................................................................................ 22

8 C.F.R. § 208.18 ..................................................................................7

8 C.F.R. § 212.16 ................................................................................ 10

8 C.F.R. § 212.17(b)(1) ........................................................................9

8 C.F.R. § 212.18 ................................................................................ 10

8 C.F.R. § 214.14(c)(5)(i) ................................................................... 10

8 C.F.R. § 214.204(o)(1) ..................................................................... 10

8 C.F.R. § 742a.12(a)(10) .....................................................................7

8 C.F.R. § 1003.18 .............................................................................. 24

8 C.F.R. § 1241.1 ................................................................................ 14

8 C.F.R. § 1241.8 ..................................................................................7

8 U.S.C. § 1101 (a)(42) .........................................................................6

8 U.S.C. § 1101(a)(15)(T) ................................................................... 10

8 U.S.C. § 1101(a)(15)(U) ....................................................................9

8 U.S.C. § 1101(a)(27)(J) ......................................................................8

8 U.S.C. § 1153(b)(4) ...........................................................................8

8 U.S.C. § 1158 .............................................................................. 6, 22

8 U.S.C. § 1182 (a)(9)(A)(i) .................................................................5

8 U.S.C. §§ 1182(a)(9)(A) (i)-(ii) ........................................................5

8 U.S.C. § 1182 (a)(9)(A)(iii) ..............................................................5

8 U.S.C. § 1182(a)(9)(C)(iii) .............................................................. 11

8 U.S.C. § 1182(d)(13) ............................................................. 10

8 U.S.C. § 1182(d)(14) ...............................................................9

8 U.S.C. § 1182(d)(3)(A)(ii) ..................................................... 10

8 U.S.C. § 1225(b)(1)(A)(ii) ..................................................... 22

8 U.S.C. § 1229a(a)(1) ..................................................................2

8 U.S.C. § 1229a(c)(7)(C)(iv) ................................................... 11

8 U.S.C. § 1229b ......................................................................... 23

8 U.S.C. § 1229b(b) ............................................................. 16, 20

8 U.S.C. § 1229b(b)(2) ............................................................... 11

8 U.S.C. § 1229c ........................................................................ 14

8 U.S.C. § 1241(b)(3) ...................................................................7

8 U.S.C. § 1252(a) ..................................................................... 13

8 U.S.C. § 1252(b)(2) ................................................................ 13

8 U.S.C. §§ 1254a(a)-(c) ........................................................... 11

8 U.S.C. § 1254a(a)(4) ............................................................... 23

8 U.S.C. § 1255(h) ........................................................................8

8 U.S.C. § 1325 ......................................................................... 25

8 U.S.C. § 1325(a) ........................................................................3

8 U.S.C. § 1326(a) ................................................................. 3, 5

8 U.S.C. § 1326(a)(2) ...................................................................5

8 U.S.C. § 1611(b)(2),(3),(4) .................................................... 19

42 U.S.C.A. § 18081 .................................................................. 18

Tex. Code Crim. Proc. §§ 5B.001-5B.003 ...................................1

Tex. Code Crim. Proc. § 5B.002 ................................................................2

Tex. Code Crim. Proc. § 5B.003 ............................................17, 21, 23

Tex. Penal Code §§ 51.01-51.04 ..............................................................1

Tex. Penal Code § 51.02 .....................................................................2, 4

Tex. Penal Code § 51.02(c)(1)(A) ....................................................... 18

Tex. Penal Code § 51.02(c)(3) ............................................................. 18

Tex. Penal Code § 51.03 .....................................................................2, 4

Tex. Penal Code § 51.04 ..........................................................................2

Tex. S.B. 4 ...................................................................................... passim

Tex. S.B. 4 § 2 .........................................................................................2

**Other Authorities**

Congressional Research Service, Temporary Protected Status and
    Deferred Enforced Departure,
    https://sgp.fas.org/crs/homesec/RS20844.pdf (updated May 28,
    2024) ...................................................................................... 12

Department of Justice, Office of the Inspector General, Review of the
    Department of Justice's Planning and Implementation of Its Zero
    Tolerance Policy, at 3 & n. 6 (Jan. 2021, rev. Apr. 2022),
    https://perma.cc/S96N-9B5U .................................................... 25

ICE Enforcement & Removal Operation Statistics, available at
    https://www.ice.gov/spotlight/statistics (last updated July 26, 2024).................... 14

Immigrant Legal Resource Center, A Step-By-Step Guide to Completing
    FOIA Requests with DHS,
    https://www.ilrc.org/sites/default/files/resources/
    a_step_by_step_guide_to_completing_foia_requests_with_dhs.pdf ..................... 14

U.S. Immigration and Customs Enforcement, FAQs: Facilitating Return
    for Lawfully Removed Aliens,
    https://www.ice.gov/remove/facilitating-return................................... 13

U.S.C.I.S, Discretionary Options for Military Members, Enlistees and Their Families, https://www.uscis.gov/military/discretionary-options-for-military-members-enlistees-and-their-families ...................................... 18

USCIS Policy Manual, Volume 3, Part B - Victims of Trafficking, *available at* https://www.uscis.gov/policy-manual/volume-3-part-b-chapter-1 ............................................................................................. 10

USCIS Policy Manual, Volume 3, Part C- Victims of Crimes, *available at* https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-1 ......................... 9

USCIS Policy Manual, Volume 6, Part J- Special Immigrant Juveniles, *available at* https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2 ................................................................................................. 8

USCIS Policy Manual, Volume 7, Part F- Special Immigrant Based Adjustment, *available at* https://www.uscis.gov/policy-manual/volume-7-part-f-chapter-7 ................................................................ 8

USCIS Policy Manual, Volume 7, part M, chap. 3, https://www.uscis.gov/policy-manual/volume-7-part-m-chapter-3 ........................ 6

USCIS, Deferred Enforced Departure, https://www.uscis.gov/humanitarian/deferred-enforced-departure (last updated July 26, 2024)........................................................................... 12

USCIS, *Green Card Based on Special Immigrant Juvenile Classification*, *available at* https://www.uscis.gov/green-card/green-card-eligibility/green-card-based-on-special-immigrant-juvenile-classification .............................................. 8

USCIS, U Visa and Bona Fide Determination Process, https://www.uscis.gov/records/electronic-reading-room/national-engagement-u-visa-and-bona-fide-determination-process-frequently-asked-questions. ..................................................................................... 21

## INTEREST OF AMICUS CURIAE

The American Immigration Lawyers Association (AILA), founded in 1946, is a national, nonpartisan, nonprofit association with more than 18,000 members throughout the United States and abroad, including lawyers and law school professors who practice and teach in the field of immigration and nationality law. AILA seeks to promote justice, advocate for fair and reasonable immigration law and policy, and advance the quality of immigration and nationality law and practice. AILA's members practice regularly before the Department of Homeland Security, immigration courts, and Board of Immigration Appeals, as well as before the federal courts. AILA has participated as amicus curiae in numerous cases before the U.S. Courts of Appeals and the U.S. Supreme Court.[1]

## STATEMENT OF THE CASE

Texas Senate Bill 4 [S.B. 4], *codified in part* at Tex. Penal Code §§ 51.01-51.04 and Tex. Code Crim. Proc. §§ 5B.001-5B.003, creates two new criminal offenses applicable only to people who are not U.S. citizens.

First, S.B. 4 makes it a criminal offense for a noncitizen to be present in Texas after having entered the state outside a lawful port of entry. It provides an affirmative defense that the federal government has granted the noncitizen asylum, DACA benefits,

---

[1] All parties have consented to the filing of this brief. No party's counsel authored this brief in whole or in part, nor contributed money intended to fund preparing or submitting this brief. No person other than *amicus* or its counsel contributed money intended to fund preparing or submitting this brief.

or "lawful presence in the United States." S.B. 4 § 2, codified at Tex. Penal Code § 51.02. We will refer to this crime as "illegal presence."

Second, S.B. 4 makes it a criminal offense for a noncitizen to be present in Texas if that person has ever been denied admission to or been deported from the United States, or has departed the United States while a removal order was outstanding. S.B. 4 § 2, codified at Tex. Penal Code § 51.03. We will refer to this crime as "presence after removal."[2]

Persons convicted of either offense are subject to imprisonment, and in addition to "an order requiring [them] to return to the foreign nation from which [they] entered or attempted to enter." Tex. Code Crim. Proc. § 5B.002. Texas has represented that police will transport them to the border, *see* Defendants-Appellants' Supplemental En Banc Brief at 41 [hereafter, Texas Brief], and "monitor" their departure. Tex. Penal Code § 51.04. If they fail to depart, they will be guilty of an additional state-law felony. *Id.*

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs ably explain S.B. 4's invalidity in light of the federal government's occupation of the field of immigration law, and its fundamental conflict with Congress's choice to place removal decision-making power in the hands of the federal government.

---

[2]    In the federal immigration scheme, the term "removal" covers both denial of admission at the U.S. border, and deportation of an already-admitted person from the interior of the United States. *See* 8 U.S.C. § 1229a(a)(1).

We will not repeat those points. Rather, we here set out specific and concrete ways, rooted in our experience as immigration practitioners, in which S.B. 4 conflicts with federal law.

Texas argues that its immigration-specific crimes pose no conflict, because S.B. 4's provisions merely "complement[] and mirror[]" federal law. Texas says S.B. 4 prohibits "the exact same things" as 8 U.S.C. §§ 1325(a) and 1326(a). In addition, Texas argues, the availability of asylum, lawful presence, and DACA as affirmative defenses to one (but not the other) of the crimes means that S.B. 4 defers to federal determinations. Texas Brief at 41. Texas concedes that under *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524, 536 (5th Cir. 2013), it must defer to federal assessments relating to a person's immigration status even where the federal process has not reached a "conclusive" endpoint. *Texas Brief* at 43. It asserts, however, that S.B. 4 satisfies that requirement. *Id.*

Texas is badly wrong, for two reasons. First, S.B. 4's presence-after removal offense goes far beyond the prohibitions of 8 U.S.C. § 1326(a). It criminalizes the presence of large classes of individuals with explicit federal permission to remain in the United States. It thus countermands large swaths of federal immigration law.

Second, S.B. 4's illegal-presence offense frustrates federal immigration-law determinations and the process by which they are made. Its "lawful presence" defense has no set meaning in federal immigration law. It allows the state of Texas to imprison and deport noncitizens without regard to their entitlement to immigration relief under

federal law, and without regard to whether the federal government would allow them to stay.

**ARGUMENT**

I.    **S.B. 4's "presence after removal" crime criminalizes the presence of people with legal status or other federal permission to remain.**

S.B. 4's "presence after removal" provision makes it a crime for noncitizens to be present in the state of Texas, if at any point in the past the federal government has removed them from the United States or denied them admission. S.B. 4 § 2, codified at Tex. Penal Code § 51.03. But immigration status is not fixed permanently in time. An individual who did not have lawful immigration status a year ago may have it today.

S.B. 4's "presence after removal" provision does not include any language excluding people from the statute's coverage on the basis of their *current* immigration status. Unlike the provision creating S.B. 4's "illegal presence" crime, S.B. 4's "presence after removal" provision does **not** exempt people with asylum, DACA status, or so-called "lawful presence." *Compare* Tex. Penal Code. § 51.02 (listing affirmative defenses to illegal presence), *with id.* § 51.03 (listing no such defenses to presence after removal).

S.B. 4's "presence after removal" provision contains no language exempting from liability persons who re-entered the United States with the permission of the federal government. Nothing precludes its application to lawful permanent residents or other people with legal immigration status. Nothing precludes its application to persons who lack valid immigration status, but who nonetheless have a federally guaranteed

right to remain in this country. Nothing precludes its application to persons who have meritorious petitions for immigration relief pending with the federal government.

Texas argues that the "presence after removal" provision is just a state-law version of 8 U.S.C. § 1326(a). But there is a crucial difference. Section 1326(a) exempts from its coverage people who re-entered the United States *with the federal government's permission, or who were not required to seek such permission.* 8 U.S.C. § 1326(a)(2). S.B. 4's "presence after removal" provision contains no such exemption. S.B. 4 on its face criminalizes the presence in Texas of anybody who has previously been denied admission to or removed from the United States, whether they have legal immigration status or not.

**A.    S.B. 4's "presence after removal" provision criminalizes the presence of people who have legally entered the U.S. on valid visas, if they were previously deported or denied admission.**

A noncitizen who has once been removed from the United States has multiple avenues to return to the United States legally. Persons who have been removed from the United States are "inadmissible" for a five- or ten-year period, and cannot obtain a visa during that period. 8 U.S.C. §§ 1182(a)(9)(A) (i)-(ii).[3] But that inadmissibility is only temporary, and DHS can waive that temporary inadmissibility at any time. *Id.* § 1182 (a)(9)(A)(iii). Thousands of people every year get waivers of their § 1182(a)(9)(A)(iii)

---

[3]    A person who has been removed multiple times is inadmissible for twenty years, while a person who has been removed after conviction for an aggravated felony is inadmissible indefinitely. 8 U.S.C. § 1182 (a)(9)(A)(i).

inadmissibility. Others simply wait out their five- or ten-year periods of ineligibility. People in either category may return to the United States if they are otherwise entitled to a visa. They will have valid status and be legally in the United States.

Under the plain text of S.B. 4, all of those people will be subject to arrest and expulsion.

**B.      S.B. 4's "presence after removal" provision criminalizes the presence of people to whom the federal government has granted asylum or other humanitarian relief, if they were previously deported or denied admission.**

Similarly, the class of people subject to S.B. 4's "presence after removal" provision includes people whom the federal government has granted asylum, by virtue of persecution in their home countries. *See* 8 U.S.C. §§ 1101 (a)(42), 1158.

The fact that an asylum applicant was once deported from or denied admission to the United States is not relevant to, and plays no role in, the asylum process. *See* USCIS Policy Manual, Volume 7, part M, chap. 3, https://www.uscis.gov/policy-manual/volume-7-part-m-chapter-3. So if a noncitizen arrives at a U.S. port of entry and applies for asylum, the fact that he may have previously been removed from the United States is immaterial.[4] S.B. 4 empowers the state to prosecute such people even

---

[4] If a person reenters the United States illegally after having been removed, DHS may choose to reinstate the prior removal order, in which case the person is eligible for withholding of removal and protection under the Convention Against Torture, but not asylum. *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 n.4 (2006). But reinstatement is discretionary on DHS's part, and in any event is not appropriate when a person, once removed, simply approaches a port of entry seeking asylum. Indeed, even some people who are arrested in the interior of the U.S. after having been removed and having made

after they receive asylum. That contradicts the federal government's decision to honor its international-law obligations and protect individuals against return to countries where they face persecution.

Similarly, people who are not eligible for asylum, but fear persecution or torture if they were to be deported, are eligible to apply to the federal government for withholding of removal or Convention Against Torture (CAT) relief. *See* 8 U.S.C. § 1241(b)(3); 8 C.F.R. § 208.18; *Johnson v. Guzman Chavez*, 594 U.S. 523, 535–36 (2021). These applications are not barred by a prior removal order. On the contrary, they are the explicitly available protections for someone who has previously been removed and then illegally reenters the United States. *Id.* People receiving that protection may remain in the United States with work authorization. 8 C.F.R. § 742a.12(a)(10). But S. B. 4's "presence after removal" provision could force their imprisonment and removal, possibly to the very countries in which the immigration courts have found they face persecution or torture, in violation of our obligations under international treaties.

### C.    S.B. 4's "presence after removal" provision criminalizes the presence of Children with Special Immigrant Juvenile classification, if they were previously deported or denied admission.

Special Immigrant Juvenile is an immigration classification designed to protect

---

a subsequent illegal reentry may be exempt from reinstatement, allowing them to apply for asylum.    See *Velasquez-Castillo v. Garland*, 91 F.4th 358 (5th Cir. 2024) (unaccompanied minors); 8 C.F.R. § 1241.8(d).

vulnerable juveniles present in the United States. *See* 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11. In order to obtain SIJ classification, juveniles must first seek a predicate order from a state court. The court must find, among other things, that reunification with a parent is not possible due to abuse, neglect, or abandonment, and that return to the juveniles' home country is not in their best interest. *See generally* USCIS Policy Manual, Volume 6, Part J- Special Immigrant Juveniles, *available at* https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2.

Once juveniles obtain SIJ classification, they do not yet have legal immigration status. They can eventually apply to adjust status to that of a lawful permanent resident after waiting for an available visa number. *See* 8 U.S.C. § 1153(b)(4). The inadmissibility grounds that may be triggered by unlawful reentry are irrelevant to initially obtaining SIJ classification,[5] and at the time of the application to adjust status, are waivable.[6] It may take years, though, before an SIJ grantee can adjust status.[7]

A juvenile who has obtained SIJ classification may well have been removed from

---

[5] USCIS Policy Manual, Volume 6, Part J- Special Immigrant Juveniles, *available at* https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2.

[6] *See* 8 U.S.C. § 1255(h); USCIS Policy Manual, Volume 7, Part F- Special Immigrant Based Adjustment, *available at* https://www.uscis.gov/policy-manual/volume-7-part-f-chapter-7.

[7] Although the SIJ petition must be submitted before the juvenile turns 21, eligibility for SIJ and later for adjustment of status will continue even after the juvenile has turned 21. This is common, given long visa backlogs and processing delays. USCIS, *Green Card Based on Special Immigrant Juvenile Classification*, https://www.uscis.gov/green-card/green-card-eligibility/green-card-based-on-special-immigrant-juvenile-classification.

the United States at some point in the past and reentered unlawfully. S.B. 4's "presence after removal" provision criminalizes these vulnerable juveniles, despite the fact they are following the processes Congress established to protect them, and despite a Texas state court's having already found, in making the predicate findings, that their removal is not in their best interest.

**D.    S.B. 4's "presence after removal" provision criminalizes the presence of domestic violence survivors and other crime victims, if they were previously deported or denied admission.**

S.B. 4's "presence after removal" provision also criminalizes crime victims, including domestic violence survivors. Individuals who have been the victims of qualifying criminal activity in the United States and who have been helpful to law enforcement may apply for U nonimmigrant status. *See* 8 U.S.C. § 1101(a)(15)(U). Congress created the U nonimmigrant status to strengthen law enforcement's ability to investigate and prosecute serious crimes. *See* USCIS Policy Manual, Volume 3, Part C-Victims of Crimes, *available at* https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-1. After four years, a person who receives U nonimmigrant status may apply for lawful permanent residence. *Id.*

A prior removal order or denial of admission is not a bar to receiving U nonimmigrant status. The federal government has broad discretion to waive nearly all grounds of inadmissibility for U applicants, including those that apply to individuals who are unlawfully present in the United States or who reentered after immigration violations. *See* 8 U.S.C. § 1182(d)(14); 8 C.F.R. § 212.17(b)(1). A prior removal order

issued by DHS is automatically cancelled upon approval of the U nonimmigrant petition. *See* 8 C.F.R. § 214.14(c)(5)(i).

Similarly, Congress created the T nonimmigrant status to protect victims of severe human trafficking. *See* 8 U.S.C. § 1101(a)(15)(T); USCIS Policy Manual, Volume 3, Part B - Victims of Trafficking, *available at* https://www.uscis.gov/policy-manual/volume-3-part-b-chapter-1. A person with T nonimmigrant status may also later apply for lawful permanent residence. *Id.* The inadmissibility ground of unlawful presence can be waived where trafficking was at least one central reason for the unlawful presence, and inadmissibility grounds related to unlawful presence after a prior removal can also be waived if they were caused by or incident to the trafficking victimization. *Id.*; *see also* 8 U.S.C. § 1182(d)(3)(A)(ii) & (d)(13); 8 C.F.R. §§ 212.16 & 212.18. As with U nonimmigrant status, approval of a T nonimmigrant petition automatically cancels a DHS-issued prior removal order. *See* 8 C.F.R. § 214.204(o)(1).

In addition, many domestic violence survivors may be eligible for protections under the Violence Against Women Act (VAWA). With the passage of VAWA in 1994, Congress created a process by which victims of abuse could "self-petition" for immigration status without relying on an abusive family member to file the petition — a process that abusive spouses could use to further abuse or threaten them.

A VAWA applicant is not barred from receiving VAWA status if she was previously removed. She can seek to waive the inadmissibility grounds that apply to unlawful presence after a removal if she can show a connection between the abuse and

the removal or departure from the United States, or the reentry. *See* 8 U.S.C. § 1182(a)(9)(C)(iii). An immigration judge can also grant special-rule cancellation of removal under VAWA, and thus lawful permanent residence, to victims of abuse if their removal would result in "extreme hardship" to them or their child or parent. *See* 8 U.S.C. §§ 1229a(c)(7)(C)(iv), 1229b(b)(2).

In sum, crime victims, including domestic violence survivors, who have previously been denied admission to the United States or removed, can still be eligible for and receive lawful status—whether U, T, or VAWA. They may later become lawful permanent residents. Yet Texas's law subjects them to criminalization, thwarting Congress's goals.

### E. S.B. 4's "presence after removal" provision criminalizes the presence of individuals with Temporary Protected Status or Deferred Enforced Departure, if they were previously deported or denied admission.

S.B. 4's "presence after removal" provision also criminalizes some immigrants legally allowed to stay in the United States under Temporary Protected Status (TPS) or Deferred Enforced Departure (DED). Both of those are temporary, non-final determinations of status. TPS is a type of status given to immigrants from certain countries facing civil war or armed conflict, environmental disasters, or other "extraordinary and temporary conditions." 8 U.S.C. §§ 1254a(a)-(c). Once the Secretary of Homeland Security designates a country for TPS, nationals of that country residing in the United States can apply for TPS, and are protected from removal for the period of designation. *Id.*

Similarly, Deferred Enforced Departure (DED) is a temporary benefit granted to foreign nationals from certain designated countries in crisis. An individual need not apply for DED; it is conferred on noncitizens automatically without application or adjudication. *See* USCIS, Deferred Enforced Departure, https://www.uscis.gov/humanitarian/deferred-enforced-departure (last updated July 26, 2024).

Over 147,000 people in Texas have TPS. *See* Congressional Research Service, Temporary Protected Status and Deferred Enforced Departure, https://sgp.fas.org/crs/homesec/RS20844.pdf (updated Aug. 28, 2025). Yet under S.B. 4, anyone with TPS (or DED) who was previously deported or denied admission is subject to imprisonment and expulsion.

**F.    S.B. 4's "presence after removal" provision criminalizes the presence of immigrants with deferred action or parole, if they were previously deported or denied admission.**

Federal immigration law authorizes executive branch agencies to issue deferred action to individuals who lack legal immigration status. *See generally Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 483–84 (1999). In recent years, the federal government has extended deferred action to noncitizens significantly impacted by Hurricane Katrina, immediate family members of military service members, persons with approved SIJ applications, and others, including a separate category of individuals who entered the United States as children (DACA). Any of these individuals may have previously been deported or denied admission.

Where deferred action is granted, that means that—even though the person in question has no legal status—the federal government has concluded that their presence in the United States is in the public interest. That is so even though the person may previously have been removed from the United States. S.B. 4's presence-after-removal provision would allow the state to countermand that determination.

### G.    S.B. 4's "presence after removal" provision criminalizes the presence of people whose removal orders have been reversed.

Finally, S.B. 4 by its terms applies to persons who are legally present in Texas despite a prior removal, because their removal orders have been overturned. Noncitizens can seek federal court-review of their removal orders, 8 U.S.C. § 1252(a), (b)(2), but their removal pending appeal is not automatically stayed, and they may continue to litigate after departing. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). If a federal court of appeals grants their petition for review, they may be able to return to the United States, either because the court's order restores them to legal status or because the federal government agrees to facilitate their return for further proceedings. *See generally* U.S. Immigration and Customs Enforcement, FAQs: Facilitating Return for Lawfully Removed Aliens, https://www.ice.gov/remove/facilitating-return. Texas's law by its terms criminalizes those individuals, ignoring the federal court order that lawfully permitted their return.

It's worth noting that it's often difficult to tell whether or not someone has been previously removed pursuant to a final removal order, as well as the current status of a removal order—particularly for a state police officer not familiar with the complexities

of immigration law. Such an assessment often requires obtaining a complete immigration file, sometimes from multiple immigration agencies, which can take significant time.[8] One must then be able to recognize the legally relevant documents that constitute a final removal order, any documents indicating whether the removal order has been effectuated, and any documents indicating whether a motion to reopen has been filed or granted. Even if an immigration court issues a removal order, the order may not be final given pending appeals. *See* 8 C.F.R. § 1241.1. An individual may also have departed the United States pursuant to processes that to a lay person appear to be removal, but are not, such as "voluntary departure," 8 U.S.C. § 1229c, or "voluntary return." *See* ICE Enforcement & Removal Operation Statistics, available at https://www.ice.gov/spotlight/statistics.

\* \* \*

Texas's sweeping presence-after-removal provision, in short, empowers the state to arrest, imprison, and expel huge numbers of people who have legal status or federal permission to remain. It contains no affirmative defenses that would exempt them from criminal liability. Texas may claim that it will exercise discretion not to prosecute in problematic cases. But courts should "not uphold an unconstitutional

---

[8]    *See, e.g.,* Immigrant Legal Resource Center, A Step-By-Step Guide to Completing FOIA Requests with DHS, https://www.ilrc.org/sites/default/files/resources/a_step_by_step_guide_to_completing_foia_requests_with_dhs.pdf (immigration files can be located in multiple DHS subunits as well as the Department of State (for passport records) and the Department of Justice (for immigration court records)).

statute merely because the Government promise[s] to use it responsibly." *United States v. Stevens*, 559 U.S. 460, 480 (2010).

## II.    S.B. 4's "illegal presence" crime frustrates the federal immigration adjudication process.

The state of Texas may argue that even if its "presence after removal" crime is unconstitutional, its "illegal presence" crime is not. After all, *that* crime has carve-outs: It lists as affirmative defenses that "the federal government has granted the defendant lawful presence in the United States," or alternatively has been granted the noncitizen asylum, or approved the noncitizen for DACA ("Deferred Action for Childhood Arrivals"). Texas argues that these carve-outs cause its illegal presence crime to "mirror[] federal immigration law." Tex. Br. at 41. For two reasons, though, they are insufficient.

First, the term "lawful presence" has no federal statutory definition and has no single, coherent meaning in U.S. immigration law. It is impossible to tell what sort of federal immigration relief Texas police might deem to confer "lawful presence"—and our Constitution does not empower state officials to make these federal determinations. S.B. 4's language, indeed, suggests that the scope of "lawful presence" under that state law makes some people subject to imprisonment and expulsion notwithstanding their federal permission to stay.

Second, even if the "lawful status" language in the Texas law exempted from prosecution everyone who had already received some form of federal immigration relief, that statute in any event explicitly allows the prosecution and expulsion of

persons whose meritorious claims for such relief are *pending*. It also allows the prosecution of persons whom the federal government has not sought to place in proceedings, but who would be able to bring meritorious claims for relief if they were placed in proceedings. That conflicts with Congress's plan.

### A.    "Lawful presence" has no set meaning in federal law.

Federal immigration law offers persons who have entered the United States without authorization a variety of routes by which they may secure federal permission to remain. To determine whether a person can take advantage of one of those federal-law avenues, federal authorities hear and adjudicate that person's status in accordance with a maze of federal statutory and regulatory provisions.

Is the person eligible for cancellation of removal under 8 U.S.C. § 1229b(b)? Is the person eligible for asylum, withholding of removal, or protection under the Convention Against Torture *see supra* Part I.B? Is the person eligible for Special Immigrant Juvenile status, *see supra* Part I.C? Is the person entitled to status as a VAWA self-petitioner, or to a T or U visa, *see supra* Part I.D? Is the person eligible for Temporary Protected Status or Deferred Enforced Departure, *see supra* Part I.E, or deferred action, *see supra* Part I.F?

"Until an undocumented alien is ordered deported by the Federal Government, no State can be assured that the alien will not be found to have a federal permission to reside in the country, perhaps even as a citizen." *Plyler v. Doe*, 457 U.S. 202, 240 n. 6 (1982) (Powell, J., concurring). Indeed, "even the [federal government] cannot predict

with certainty whether any individual alien has a right to reside in the country until deportation proceedings have run their course." *Id.*

According to Texas, S.B. 4's carve-out for "lawful presence" suffices to avoid conflict with all of that federal law. It does not. To begin, the Immigration and Nationality Act contains no definition of "lawful presence." "'[L]awfully present' is not a standalone immigration classification, and it is not defined anywhere in the Act." *Estrada v. Becker*, 917 F.3d 1298, 1304 (11th Cir. 2019). It has no agreed-upon definition in federal immigration law.

Courts have disagreed about whether a given immigration status is "lawful presence." In litigation regarding DACA, the parties and this Court have agreed that DACA "confer[s] lawful presence." *Texas v. United States*, 126 F.4th 392, 411 n.22 (5th Cir. 2025). But in other litigation, regarding eligibility to attend particular universities in Georgia, DACA recipients were found to be "not lawfully present." *Estrada*, 917 F.3d at 1301.

Similarly, in this litigation, courts have described individuals who are awaiting the adjudication of their asylum applications as "lawfully present." *United States v. Texas*, -- F. Supp. 3d --, 2025 WL 2170007 (W.D. Tex. July 31, 2025), at *14. Yet S.B. 4 is explicit that Texas can prosecute and expel them. *See* Tex. Code Crim. Proc. § 5B.003 (courts may not abate S.B. 4 prosecutions "on the basis that a federal determination regarding the immigration status of the defendant is pending"). So apparently they don't fall within the "lawful presence" carve-out after all.

S.B. 4's definition of "lawfully present" appears to exclude people with DACA. S.B. 4, after specifying lawful presence as an affirmative defense to an illegal presence charge, then lists DACA as a *separate* affirmative defense. *See* Tex. Penal Code § 51.02(c)(1)(A) ("lawfully present"); *id.* § 51.02(c)(3) (DACA). If people with DACA had "lawful presence" as that phrase is used in S.B. 4, then that category's inclusion in the statute would be surplusage. *See Williams v. Taylor*, 529 U.S. 362, 404 (2000) (courts "must give effect, if possible, to every clause and word of a statute").

But that casts doubt on other forms of federal protection from removal. DACA is a form of deferred action, but the federal government grants deferred action in a wide range of contexts. *See supra* Part I.F; *see, e.g.,* USCIS, Discretionary Options for Military Members, Enlistees and Their Families, https://www.uscis.gov/military/discretionary-options-for-military-members-enlistees-and-their-families. If DACA is not itself "lawful presence," then presumably other forms of deferred action granted by the federal government are not "lawful presence" either. This means that many people with federally-conferred protection against removal, including family members of military service members, are not "lawfully present" within the meaning of S.B. 4.

The term "lawful presence" appears in the U.S. Code in only two places. The first relates to participation in Affordable Care Act health exchanges. *See* 42 U.S.C.A. § 18081 (directing the HHS Secretary to decide what information individuals should provide respecting their immigration status, so that HHS can decide whether the individual, if a noncitizen, is "lawfully present in the United States"); *see also id.* (directing

DHS to verify that information). The second relates to eligibility for Social Security, Medicare, and Railroad Retirement Act benefits, *see* 8 U.S.C. § 1611(b)(2),(3),(4) (similarly directing the Attorney General to define a class of noncitizens who will be deemed not "lawfully present" for that purpose).

It is within the United States' purview to define lawful presence as needed in specific federal-law contexts. Congress directed the HHS Secretary to solve that problem in the specific context of the ACA, and the Attorney General in the context of the Social Security Act. But choices for the purpose of awarding health-care and social-security benefits do not carry over to immigration or criminal-law contexts. *See Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524, 532-34 (5th Cir. 2013) (en banc, plurality op.) (notwithstanding the existence of a definition in the Social Security Act context, the lawful-presence classification "does not exist in federal law" in a way that can give content to the city's ordinance).

### B. S.B. 4's "illegal presence" provision criminalizes the presence of people with meritorious claims for immigration relief

The ambiguity of S.B. 4's "lawful presence" exemption renders that statute unconstitutionally vague and incapable of coherent enforcement. But even if that were not the case—even if its exceptions were clear and were read as broadly as possible— the Texas statute would still criminalize the presence in the United States of large classes of people who are entitled to remain in this country under federal law. That is because it criminalizes the presence of individuals with viable *pending* claims, not yet finally adjudicated, for immigration relief. And it criminalizes the presence of individuals who

*would have* successful claims for relief if they were placed in removal proceedings, but who have not asserted those claims because the federal government has not chosen to place them in proceedings.

1. **S.B. 4's "illegal presence" provision criminalizes the presence of people in removal proceedings with meritorious claims for relief from removal, including cancellation of removal.**

Even if the federal government has placed someone in immigration court proceedings—and the person assuredly does not have "lawful presence" yet—the federal government may nonetheless grant that person the right to stay, lawfully, in the United States at the conclusion of those proceedings. After all, the *point* of holding federal removal proceedings before an immigration judge is to determine whether a noncitizen should be able to stay in the United States. Texas, which would jail and expel such noncitizens if it encounters them while their proceedings are ongoing, ignores that federal process.

Some people in removal proceedings—even if they entered illegally—are able to apply for cancellation of removal under 8 U.S.C. § 1229b(b), enabling them to legalize their status. A person in the process of seeking such relief does not yet have "lawful presence." Rather, that person has invoked a lawful means, established by Congress, of achieving legal status in the United States. But Texas would imprison and expel such a person before the federal government could grant their application.

2. **S.B. 4's "illegal presence" provision criminalizes the presence of victims of crime, domestic violence survivors, and juveniles with pending meritorious federal immigration applications.**

S.B. 4's "illegal presence" provision similarly criminalizes victims of crime, including domestic violence survivors, with meritorious claims to remain in the United States under federal law. Earlier in this brief, we discussed U and T nonimmigrant status and Violence Against Women Act protections, available to victim of crime, trafficking, and domestic violence. *See supra* Part I.D. Even if Texas deems everyone conclusively awarded these protections to be "lawfully present," S.B. 4 would still subject them to criminal penalties while their federal applications for immigration relief were *still in process. See* Tex. Code Crim. Proc. § 5B.003 (courts may not abate S.B. 4 prosecutions "on the basis that a federal determination regarding the immigration status of the defendant is pending").

But Congress did not create multiple routes for victims of crime, domestic violence survivors, and juveniles to get federal immigration relief only so that a state could jail and expel them while their applications were pending. On the contrary, the federal scheme grants explicit protection to people with pending applications. *See, e.g.,* USCIS, U Visa and Bona Fide Determination Process, https://www.uscis.gov/records/electronic-reading-room/national-engagement-u-visa-and-bona-fide-determination-process-frequently-asked-questions. Texas's law thwarts Congress's intention to strengthen law enforcement and protect victims of crime.

Elsewhere earlier in this brief, we discussed the "Special Immigrant Juvenile" (SIJ) classification designed to protect vulnerable juveniles present in the United States

who cannot be reunited with a parent due to abuse, neglect, or abandonment. *See supra* Part I.C. Children whom the Department of Homeland Security has designated as a Special Immigrant Juveniles do not, without more, have lawful status, so S.B. 4 empowers Texas to jail and deport them for illegal presence – notwithstanding that they are following the processes Congress established to protect them and provide a pathway to lawful status.

### 3. S.B. 4's "illegal presence" provision criminalizes the presence of people with meritorious claims for humanitarian relief.

The same defect resonates through the many forms of relief from removal that federal immigration law provides. Federal immigration law explicitly allows applicants for many types of status to remain in the United States while their applications are in process. S.B. 4's "illegal presence" provision thwarts fair adjudication of those applications and interferes with the federal government's legal obligations.

Asylum law, for example, establishes a process for evaluation and final determination of an applicant's claim. *See* 8 U.S.C. § 1158. By law, the federal government cannot deport people with unresolved asylum claims; it must *first* establish that they will not face persecution or torture in their home countries. *Id.*; *see also* 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16; 8 U.S.C. § 1225(b)(1)(A)(ii).

S.B. 4's "illegal presence" provision would frustrate the federal government's obligations toward these noncitizens. Texas law offers no suggestion that merely having filed an application for asylum – or withholding of removal, or protection under the Convention Against Torture–- causes a person to have "lawful presence." On the

contrary, S.B. 4 is explicit that the State can prosecute and deport noncitizens without regard to their pending asylum applications. Tex. Code Crim. Proc. § 5B.003. But these are individuals who under federal and international law have a right to remain in the United States while their federal process is ongoing.

In the same way, S.B. 4's "illegal presence" provision criminalizes immigrants with pending Temporary Protected Status ("TPS") applications. S*ee supra* Part I.E. Congress has enacted explicit protection for TPS applicants while their applications are being considered. *See* 8 U.S.C. § 1254a(a)(4) (guaranteeing stay of removal for applicants showing prima facie eligibility). But S.B. 4's "illegal presence" provision would jail and expel individuals with pending TPS applications, even where their federal proceedings would ultimately grant them a right to remain in this country.

Once again, Congress chose to create TPS and a means to apply for it. A state has no power to jail applicants for that status on the basis of its position that it – unlike Congress – is unwilling to tolerate their immigration-law failings.

### 4. S.B. 4's "illegal presence" provision criminalizes the presence of people who would have meritorious claims for relief from removal, but who have not been placed in proceedings.

Finally, S.B. 4 authorizes the imprisonment and expulsion of people who do not have pending applications for immigration relief, but who could make meritorious claims for relief if they were put into immigration removal proceedings in the future. Federal law provides that noncitizens can seek some forms of relief only *after* being placed in proceedings. *See, e.g.,* 8 U.S.C. §§ 1231(b)(3) (withholding of removal), 1229b

(cancellation of removal).

Yet S.B. 4's "illegal presence" provision would criminalize people who have not been able to raise their meritorious claims for relief because the federal government has not sought to deport them. That cuts off Congressionally mandated avenues of relief.

S.B. 4 also ignores the fact that not all immigration proceedings come to completion. Immigration judges regularly exercise their discretion to terminate or administratively close immigration court proceedings. But if federal immigration proceedings against an individual are administratively closed, *see* 8 C.F.R. § 1003.18, Texas's law would still criminalize that individual's presence. The state law thus conflicts with federal immigration judges' determinations not to pursue individuals' removal from the United States.

* * *

Congress, in short, has provided many federal-law routes through which noncitizens can seek relief from removal. If noncitizens do not have the opportunity to raise their claims to remain, and federal immigration authorities do not have the opportunity to hear them, then the body of immigration law that Congress enacted will be frustrated. Yet S.B. 4 allows the state of Texas to imprison and deport noncitizens without regard to their ultimate entitlement to immigration relief under federal law, and without regard to whether the federal government would allow them to stay in the United States.

Texas argues that its illegal-presence crime poses no conflict with federal law, because federal law incorporates its own criminal penalty for unauthorized entry. *See* Tex. Br. at 41. But a crucial feature of federal law is that federal authorities can approach its criminal prohibitions so that they operate in harmony with the entire federal immigration scheme. Because both federal law governing relief from immigration removal and federal law providing for criminal sanctions are administered by the same government, they can be administered so as to be consistent and coherent. The federal government can limit its criminal prosecutions to instances that further the goals of federal immigration law. *See, e.g.,* Department of Justice, Office of the Inspector General, Review of the Department of Justice's Planning and Implementation of Its Zero Tolerance Policy, at 3 & n. 6 (Jan. 2021, rev. Apr. 2022), https://perma.cc/S96N-9B5U (CBP practice is not to refer for criminal prosecution persons whom it designates for administrative processing including asylum-related "credible fear" screening). That structure falls apart when Texas can bring prosecutions without regard to whether federal immigration relief processes are ongoing.

The Department of Justice currently approaches this case as if plaintiffs' sole claim were a conflict between S.B. 4 and the criminal prohibitions in 8 U.S.C. §§ 1325 & 1326. Brief for the United States at 19-21. But the unconstitutional conflict here does not derive solely from the fact that both state and federal law contain criminal prohibitions. It derives from Congress's enactment of many pathways through which

people who have entered unlawfully can seek relief under federal immigration law. Criminal prohibitions are a single, subsidiary part of Congress's scheme. For Texas to seize on criminal prosecution while subverting the rest of the federal immigration-law plan—imposing prison and expulsion on noncitizens notwithstanding that they have received, or are eligible to receive, some federal protection from removal—conflicts with federal law. *Arizona v. United States*, 567 U.S. 387 (2012).

The noncitizens Texas seeks to imprison and deport do not yet have a "conclusive" determination of protected status. But this Court has already made clear— and Texas concedes, *see* Tex. Br. at 43—that a state may not imagine that "a federal determination of a non-citizen's status binds the court only if it is 'conclusive.'" *Villas at Parkside Partners v. City of Farmers Branch, supra*, 726 F.3d at 536 (plurality op.); *see also id.* at 549 (Dennis, J., concurring); *id.* at 558-59 (Owen, J., concurring in part); *id.* at 584 (Jones, J., dissenting). Texas, in asserting the right to treat noncitizens as illegal whenever a federal agency has not conclusively determined otherwise, is doing exactly what this Court has forbidden.

## CONCLUSION

For the reasons articulated above, S.B. 4 conflicts with federal immigration law and is preempted.

DATE: November 25, 2025

Respectfully submitted,

/s/ Justin Cox
Justin Cox
Law Office of Justin B. Cox

P.O. Box 1106
Hood River, OR 97031
(541) 716-1818
justin@jcoxconsulting.org

Karen Tumlin
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7271
Karen.Tumlin@justiceactioncenter.org
*Counsel of record*

Jonathan Weinberg
Wayne State University Law School
471 West Palmer Street
Detroit, MI 48202
(313) 577-4015
weinberg@wayne.edu

Alexandra Lampert
Brooklyn Defender Services
177 Livingston St., 7th Floor
Brooklyn, NY 11201
(347) 977-7701
alampert@bds.org

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the type-volume limitation of Rule 27(d)(2) because it contains no more than 6493 words and complies with the typeface and style requirements of Rule 32(a)(5) and (a)(6) because it was prepared in Microsoft Word using 14-point Garamond typeface.

DATE: November 25, 2025                    /s/ Justin Cox
                                           Justin Cox
                                           justin@jcoxconsulting.org
                                           *Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that, on November 25, 2025, a true and correct copy of this document was transmitted to the Clerk of the United States Court of Appeals for the Fifth Circuit via the Court's CM/ECF document filing system, and on all counsel of record.

                                           /s/ Justin Cox
                                           Justin Cox
                                           justin@jcoxconsulting.org
                                           *Counsel for Amicus Curiae*